# EXHIBIT A

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY,
FLORIDA

CRIMINAL DIVISION

Case No.: 2008-CF-007611 FXX

**STATE OF FLORIDA,**
Plaintiff,

vs.

**DARRIN L. MCCRAY,**
Defendant, *pro se.*

_____/

ORIGINAL FILED
Circuit Civil Department

DEC 04 2019

SHARON BOCK
Clerk & Comptroller
Palm Beach County

## NOTICE OF REMOVAL TO FEDERAL COURT

COMES NOW, Alleged Defendant, DARRIN MCCRAY, *pro se*, "MCCRAY", and hereby files this Notice of Removal to Federal Court pursuant to 28 U.S.C. §1331, §1367,§1441 (a), § (1443) (1)(2), 1446 and §301 of the Labor Management Relations Act under the doctrine of Complete Preemption and Manifest Injustice, in that this action seeks to present a federal question and address the deprivation under color of the laws, statutes, regulations, customs, and usages of the Respondents-Defendants as they execute, administer and enforce the complained-of laws, of the rights, privileges or immunities secured by the United States Constitution and by Act of Congress.

Dated this Fifth day of December 2019.


Respectfully submitted,


DARRIN MCCRAY, pro se
P.O. Box 1172
West Palm Beach, Florida 33402

## CERTIFICATE OF SERVICE

MCCRAY certifies that, on December 05, 2019, a true and correct copy of this

NOTICE OF REMOVAL TO FEDERAL COURT has been furnished by Certified

U.S. Postal mail to the persons set out in the Service List below, and that, on this

same date, the original has been Certified Mail with Return Receipt.

**SERVICE LIST**
State Attorney Elect Dave Aronberg Certified Mail **7018-0360-001-8767-0215**
401 N Dixie Hwy
West Palm Beach, Florida 33401

Judge Daliah H. Weiss Certified Mail **7019-2280-0000-2537-1739**
205 N Dixie Hwy,
West Palm Beach, FL 33401

Certified Mail **7019-2280-2537-1746**
Mark J. Hamel, Assistant Attorney General 1515
North Flagler Dr.
West Palm Beach, Florida 33401







# EXHIBIT C

# PALM BEACH COUNTY
# SHERIFF'S OFFICE

RIC L. BRADSHAW, SHERIFF



**RECEIVED**

MAR 1 5 2007

COLONEL KEITH CHAMBERS
DIRECTOR OF CORRECTIONS

## INTER-OFFICE MEMORANDUM
### District 3050



**TO:** Maj. Christopher. Kneisley      **DATE:** March 09th, 2007

**FROM:** Lt. Eddie Jones (Executive Officer, District 3050)    **FILE:**

**SUBJECT:** Online Hospital Guard Duty Inquiry

---

Maj. Kneisley you recently provided me with the names of five (5) staff members, *who may have* committed acts of inappropriateness when utilizing the Online Hospital Guard Duty Program. Obviously if the concerns, which will be spelled out shortly, are substantiated with indisputable facts, the staff members' actions will have ran implicitly or moderately *counter* to established policy and procedures, to wit C.O.P 917.24 sec. C (4) (6) (7) (Hospital Security Duty) as well as Rules & Regs 2.11 (Code of Ethics), and Neglect of Duty Offenses VII (14) (Willful Violation of Official Procedures and/or Directives). The staff members in question are Lt. Sandra Nealy # 3444; Lt. Darrin McCray # 3447; Sgt. Kathy Dent #5606; D/S Tamika Jones #4760 and D/S Anthony Oats #2856 (Road Patrol).

More specifically, the concerns include the said staff members' possibly manipulating the Online Hospital Guard Duty Program by artfully registering to work multiple overtime details in which they had no true sincerity in actually reporting for duty. If this summation is factual, then the logic behind these staff members' actions rests with them reserving established overtime dates for each other and perhaps other sworn members of the agency, whom are assigned to both correctional and law enforcement districts.

Major in addressing this matter from the most objective and commonsensical approach possible, I find that it is not uncommon for staff members to volunteer to work overtime, but only to forego this obligation due to personal circumstances or unforeseen challenges emerging on the targeted dates. C.O.P 917.24 (C)(7) to some extent speaks of these events in that it makes mention of staff members being forbidden from foregoing voluntary hospital details, without obtaining permission from a shift supervisor. Conversely however some of the incidents involving the said staff members cancelling overtime details raise serious suspicions, as the Online Hospital Guard Duty Program Archive Forms provided by Mr. Paul Nash (Information Systems) reflect periods where some of the said staff members signed up for consecutive details, within a twenty-four (24) period, but only to forgo their obligations on the elected date(s). Some of these questionable incidents occurred on more than one occasion.

In addition to thoroughly reviewing the aforementioned Online Hospital Guard Duty Program Archive Forms, my inquiry of this matter also consisted of evaluating the employee time cards you provided me with on each of the said staff members.

Beginning with the emp    ee(s) whom my investigation, in the    cumstance of the concern(s) expressed, human error instances, mere happenstance, and program limitations with the Online Hospital Guard Duty System, the next section of this document provides a detail report of the actions of each identified staff member. Please note, the below referenced dates and transactions are based solely on the data reflected on the Online Hospital Guard Duty Program Archive Form. Further, the reports will only speak of questionable dates in which the Online Hospital Guard Duty Program may have been manipulated to overextend select members of the agency with the opportunity to secure additional funds through hospital related overtime details. It should be mentioned that the threshold I established to determine the definition of a questionable date(s), is a period in which three (3) or more entries for overtime were entered for the same date(s) and shifts, and by or for the same employee, and subsequently removed.

| Name | Questionable Shift Date (s) | Removal Date(s) Respectively | Findings |
|---|---|---|---|
| DS Tamika Jones | NA | NA | Inconsequential |
| DS Anthony Oats | NA | NA | Inconsequential |
| Lt. Darrin McCray | NA | NA | Inconsequential |
| Lt. Sandra Nealy | 07/06/2006 | 07/06/2006 | Upon interviewing Lt. Nealy, she advised me that she can not recall the events surrounding this date. Lt. Nealy also assured me that she did not purposely commit any inappropriate acts in regards to the hospital guard duty program being manipulated (see attached memo). |
| Sgt. Kathy Dent | 07/08/2006, 10/23/2006, 10/31/2006 & 11/10/2006 | 07/04/2006, 06/30/2006, 07/08/2006, 10/23/2006, 10/15/2006, 10/22/2006, 10/16/2006, 10/23/2006, 10/30/2006, 11/04/2006, 11/05/2006, 11/06/2006, 11/09/2006. | Based on the Hospital Guard Duty Archive Form, the C Shift detail on 07/08/06 was cancelled on 06/30/06, comments stating "not available was entered in justification section. B Shift detail on 07/08/06 was cancelled on 06/30/06, due to removal of 2nd post. A Shift detail on 10/23/2006 was cancelled on 10/23/06 due to removal of 2nd post. A Shift detail on 10/31/2006 was cancelled on 10/16/06, justification section states "removel." A Shift detail on 10/31/2006 was cancelled on 10/23/006 due to removal of 2nd shift according to justification |

| | | | tion. A Shift detail on 11-10-06 removed on 10-30-06 due to removal of 2nd post according to justification sec. B shift detail on 11/10/06 removed on 11/06/06 due to removal of 2nd post according to justification sec. Sgt. Dent as with Lt. Nealy also assured me that she did not purposely commit any unethical acts in regards to the hospital guard duty program. Furthermore, Sgt. Dent advised me that she had periodically exchanged details with co-workers to work at a hospital closer to her residence (Port St. Lucie) for convenience. Additionally, Sgt. Dent expressed to me that in those instances when staff members have relinquished overtime details, the supervisors were compelled to contact employees who are known to work numerous amounts of overtime to ensure coverage. |
|---|---|---|---|

After reviewing the aforementioned facts and information, as reflected by the Online Hospital Guard Duty Archive Forms, and generated within the scope of my inquiry, I am of the opinion that no definitive evidence exists which suggests Lt. Darrin McCray, Lt. Sandra Nealy, Sgt. Kathy Dent, DS Tamika Jones, or DS Anthony Oates violated C.O.P 917.24 sec. (C) (4) (6) (7) (Hospital Security Duty) as well as Rules & Regs. 2 II (Code of Ethics), and Neglect of Duty Offenses VII (14) (Willful Violation of Official Procedures and/or Directives), or otherwise collectively or single-handedly manipulated the Online Hospital Guard Duty Program for personal gains.

On the surface, the excessive amount of overtime details worked during the six (6) month observation period by some of the staff members named in this document appears to be exceptionally suspect. Moreover, the instances in which some of the staff members signed up for multiple hospital details which were to occur on the same date(s) and shift(s) was particularly alarming to me at the onset of my inquiry. However those suspicions were eventually quelled after statements obtained from both Lt. Nealy and Sgt. Dent were thoroughly considered and accepted. Said another way, in what I deem are forthright and factual statements provided by the concerned parties, coupled with inconclusive evidence, I find no justifiable or sound reason to construe that a preponderance of evidence exists which suggests Lt. Nealy or Sgt. Dent violated policy.

Based on the findings of this inquiry, I can not with clear conscious or reasonable judgment, recommend further inquiry or that a formal investigation be employed in this matter. However to forestall any future concerns about the Hospital Guard Duty Program being manipulated, as well as to ensure the process remains equitable to qualified employees of the agency to work hospital details, I submit to you the following suggestions:

1) Hold staff memb.  better accountable for failing to pr     e timely notification to forego working a voluntary overtime detail.
2) Mandate that an explanation be provided and entered into the Online Hospital Guard Duty Program when staff members forego reporting for hospital details.

LT. E. Jones 5043

Concur w/ Lt Jones' findings, although on the surface an appearance of manipulation exists and I believe it was done, not enough hard data exists to support further action in this venue. Further oversight should stem these incidents. 3/16/07

**EXHIBIT D**

IN THE FIFTEENTH JUDICIAL CIRCUIT COURT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CASE NO. 502008CF7611FXXMB

STATE OF FLORIDA,

        Plaintiff,

vs.

DARRIN L. MCCRAY,

        Defendant.

_____/



PROCEEDINGS BEFORE THE

HONORABLE LUCY BROWN

DATE:    October 16, 2008
PLACE:   Palm Beach County Courthouse
        West Palm Beach, Florida

FILED
NOV 12 2008
SHARON R. BOCK
Clerk & Comptroller
Palm Beach County
Circuit Criminal Department

LAWYERS' REPORTING, INC.
1655 Palm Beach Lakes Boulevard, Suite 405
West Palm Beach, Florida 33401
(561) 832-6456
(800) 326-9690
FAX (561) 659-9855
www.lawyersreporting.com

Copyright 2006 Lawyers' Reporting, Inc.
All rights reserved

2

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

PAUL ZACHS, ASSISTANT STATE ATTORNEY
401 North Dixie Highway
West Palm Beach, Florida 33401

ON BEHALF OF THE DEFENDANT:

JOHN M. HOWE, ESQUIRE
315 11th Street
West Palm Beach, Florida 33401

ON BEHALF OF THE PALM BEACH COUNTY SHERIFF'S OFFICE:

PETER SAMPO, ESQUIRE
121 Majorca Avenue, Suite 300
Coral Gables, Florida 33134

BE IT REMEMBERED that the following transcript of proceedings was taken in the above-entitled cause before the Honorable Lucy Brown, Judge of the above-styled Court, in the Palm Beach County Courthouse, County of Palm Beach, in the City of West Palm Beach, State of Florida beginning at 12:15 p.m., on Thursday, October 16, 2008, to wit:

P R O C E E D I N G S

THE COURT:  Okay.  So, we are here now on State of Florida vs. Darrin L. McCray.  I have set for today Darrin L. McCray's renewed motion for bill of particulars and I believe set for today is Darrin L. McCray's motion to compel State to produce discovery materials, Brady materials and demand for additional discovery.

I have other motions that came in but they weren't set for today and we're going to have to deal with that.  But does it make sense to take these in the order that -- oh, one other thing. There's been a problem with the -- a technical problem within case numbers.  I'm getting things with different case numbers on them and I don't

33

that the State Attorney's Office could have access to that file now.  Even if it could, I think it would be a violation of 112 for that information to band the disclosed beyond the State Attorney's Office and I'm not sure whether the Sheriff's Office would be liable if that were to happen.

THE COURT:  Now, Mr. Zachs, you would agree with the general proposition that if law enforcement has it, you have it, as a legal objection?

MR. ZACHS:  With very limited exceptions.

THE COURT:  Right.  You would agree with that. And you would agree that if there is Brady material in that material, the Internal Affairs case, which is apparently the correct number, 07046, that the defense would be entitled to it, right?

MR. ZACHS:  Well, it raises an issue because there's confidentiality, Your Honor.

THE COURT:  Well, let me ask you a question. Without regard to confidentiality, if there was exculpatory Brady material, you would agree that the defense would be entitled to it, right?

MR. ZACHS:  Exculpatory?  There's a sub-issue that makes it difficult for me to answer that directly because as the Court's aware, for example,

34

if the evidence was obtained by compulsion, they were ordered to give statements, there's a separate issue. There's Garrity issues which preclude me and I suppose anybody else from using that in court. But I don't know what's in those files. I assume some of this was compulsive.

THE COURT: But when you say that, it sounds like you're talking about inculpatory that precludes me from using it in court. But what if there's something in there that supports the defendant's position of innocence?

MR. ZACHS: Well, hopefully through the discovery process he has presumably all the same witnesses and he can obtain that information by taking statements. But that gets into the other issue of the timeliness of the depos. There's nothing showing he can't obtain that information without going into these confidential matters on his own. That's what discovery is about.

THE COURT: Okay. Anything else from the Sheriff's Office?

MR. SAMPO: No, Your Honor.

THE COURT: Any rebuttal from the defense?

MR. HOWE: There are a couple of things. First of all, there are no Garrity issues in this

00000394

**EXHIBIT E**

**ARREST / NOTICE TO APPEAR**
Juvenile Referral Report

| OBTS Number | | | 1. Arr.   3. Request for Warrant | Juvenile |
|---|---|---|---|---|
| | | | 2. N.T.   4. Request for Capias | 3 |

| Agency ORI Number | Agency Name | Agency Report Number (N.T.A 's only) |
|---|---|---|
| FLO 500000 | PALM BEACH COUNTY SHERIFF'S OFFICE | 0 6 - - |

Charge Type: Check as many as apply.
- ☒ 1. Felony
- ☐ 2. Traffic Felony
- ☐ 3. Misdemeanor
- ☐ 4. Traffic Misdemeanor
- ☐ 5. Ordinance
- ☐ 6. Other _____

If Weapon Seized Enter Type _____

Multiple Clearance Indicator: 0  1

Location of Arrest (Including Name of Business)

Location of Offense (Business Name, Address)
**3228 Gun Club Rd. West Palm Beach, FL. 33406**

| Date of Arrest | Time of Arrest | Booking Date | Booking Time | Jail Date | Jail Time | Location of Vehicle |
|---|---|---|---|---|---|---|

**DEFENDANT**

Name (Last, First, Middle)
**McCray, Darrin L.**

Alias (Name, DOB, Soc. Sec. #, Etc.)

| Race W - White I - American Indian B - Black 0- Oriental/Asian | Sex | Date of Birth | Height | Weight | Eye Color | Hair Color | Complexion | Build |
|---|---|---|---|---|---|---|---|---|
| B | M | 09/03/1967 | 5'8" | 150 | Brown | Black | Dark | Slim |

Scars, Marks, Tattoos, Unique Physical Features (Location, Type, Description)

| Marital Status | Religion Unk. | Indication of: | Y | N | Unk. |
|---|---|---|---|---|---|
| | | Alcohol Influence | ☐ | ☐ | ☒ |
| | | Drug Influence | ☐ | ☐ | ☒ |

| Local Address (Street, Apt. Number) | (City) | (State) | (Zip) | Phone | Residence Type: |
|---|---|---|---|---|---|
| 3228 Gun Club Rd. | West Palm Beach | FL | 33406 | (561) 688-3000 | 1. City  2. County  3. Florida  4. Out of State |

| Permanent Address (Street, Apt. Number) | (City) | (State) | (Zip) | Phone | Address Source |
|---|---|---|---|---|---|
| Same as Above | | | | (561) 688-3000 | Palms |

| Business Address (Name, Street) | (City) | (State) | (Zip) | Phone | Occupation |
|---|---|---|---|---|---|
| 3228 Gun Club Rd. | West Palm Beach | FL | 33406 | (561) 688-3000 | Deputy Sheriff |

| D/L Number, State | Soc. Sec. Number | INS Number | Place of Birth (City, State) | Citizenship |
|---|---|---|---|---|

**CO-DEF**

| Co-Defendant Name (Last, First, Middle) | Race | Sex | Date of Birth | ☐ 1. Arrested ☐ 2. At Large | ☐ 3. Felony ☐ 4. Misdemeanor ☐ 5. Juvenile |
|---|---|---|---|---|---|
| Co-Defendant Name (Last, First, Middle) | Race | Sex | Date of Birth | ☐ 1. Arrested ☐ 2. At Large | ☐ 3. Felony ☐ 4. Misdemeanor ☐ 5. Juvenile |

**JUVENILE**

☐ Parent ☐ Legal Custodian ☐ Other:

| Name (Last) | (First) | (Middle) | Residence Phone |
|---|---|---|---|

| Address (Street, Apt. Number) | (City) | (State) | (Zip) | Business Phone |
|---|---|---|---|---|

| Notified by: (Name) | Date | Time | Juvenile Disposition 1. Handled/ processed within Dept. and Released.  2. TOT HRS / DYS  3. Incarcerated |
|---|---|---|---|

| Released To: (Name) | Relationship | Date | Time |
|---|---|---|---|

The above address provided by ☐ defendant and / or ☐ defendant's parents The child and / or parent was told to keep the Juvenile Court Clerk (Phone 355-2526) informed of any change of address.
☐ Yes, by: (Name) _____  ☐ No: (Reason) _____

| School Attended | Grade |
|---|---|

Property Crime? ☐ Yes ☐ No   Description of Property

Value of Property

**CODE**

Drug Activity
N. N/A  S. Sell  R. Smuggle  K. Dispense/ Distribute  M. Manufacture/ Produce/ Cultivate  Z. Other
P. Possess  B. Buy  D. Deliver
T. Traffic  E. Use

Drug Type
N. N/A  B. Barbiturate  H. Hallucinogen  P. Paraphernalia/ Equipment  U. Unknown
A. Amphetamine  C. Cocaine  M. Marijuana  S. Synthetics  Z. Other
E. Heroin  O. Opium/Deriv.

**CHARGE**

| Charge Description **Organized Scheme to Defraud** | Counts 01 | Domestic Violence ☐Y ☒N | Statute Violation Number **817.034(4)(a)3** | Violation of ORD # |
|---|---|---|---|---|
| Drug Activity N | Drug Type N | Amount / Unit N/A | Offense # 07-117230 | Warrant I Capias Number | Bond |

| Charge Description **Official Misconduct** | Counts 01 | Domestic Violence ☐Y ☒N | Statute Violation Number **838.022** | Violation of ORD # |
|---|---|---|---|---|
| Drug Activity N | Drug Type N | Amount / Unit N/A | Offense # 07-117230 | Warrant / Capias Number | Bond |

| Charge Description **Conspiracy/Org. Scheme to Defraud** | Counts 01 | Domestic Violence ☐Y ☒N | Statute Violation Number **777.04(3)** | Violation of ORD # |
|---|---|---|---|---|
| Drug Activity N | Drug Type N | Amount I Unit N/A | Offense # 07-117230 | Warrant / Capias Number | Bond |

| Charge Description **Solicitation/Org. Scheme to Defraud** | Counts 01 | Domestic Violence ☐Y ☒N | Statute Violation Number **777.04(2)** | Violation of ORD # |
|---|---|---|---|---|
| Drug Activity N | Drug Type N | Amount / Unit N/A | Offense # 07-117230 | Warrant / Capias Number | Bond |

**NOTICE TO APPEAR**

☐ Instruction No. 1 Mandatory Appearance in Court
☐ Instruction No. 2 You need not appear in Court but must comply with instructions on Reverse Side.

Location (Court, Room Number, Address)

Court Date and Time

| Month | Day | Year | Time | A.M. ☒ | P.M. ☐ |
|---|---|---|---|---|---|

I AGREE TO APPEAR AT THE TIME AND PLACE DESIGNATED TO ANSWER THE OFFENSE CHARGED OR TO PAY THE FINE SUBSCRIBED. I UNDERSTAND THAT SHOULD I WILLFULLY FAIL TO APPEAR BEFORE THE COURT AS REQUIRED BY THIS **NOTICE TO APPEAR**, THAT I MAY BE HELD IN CONTEMPT OF COURT AND A WARRANT FOR MY ARREST SHALL BE ISSUED

| Signature of Defendant (or Juvenile and Parent /Custodian) | Date Signed |
|---|---|

**ADMIN**

HOLD for other Agency
Name:
☐ Dangerous  ☐ Resisted Arrest
☐ Suicidal  ☐ Other

| Signature of Arresting Officer X _____ | Name Verification (Printed by Arrestee) |
|---|---|
| Name of Arresting Officer (Print) **Detective Wayne Smith**  I.D. # **2561** | (PRINT) |

| Intake Deputy | I.D. # | Pouch # | Transporting Officer | ID # | Agency | Witness here if subject signed with an "-X" | PAGE 1 OF 1 |
|---|---|---|---|---|---|---|---|

DISTRIBUTION:   ORIGINAL TO COURT  /  COPY TO STATE ATTORNEY  /  COPY TO AGENCY  /  COPY TO JAIL  /  COPY TO DEF.(NTA ONLY)

**PALM BEACH COUNTY SHERIFF'S OFFICE**
**PROBABLE CAUSE AFFIDAVIT**

OBTS

Charge Type  [3] 1. Arrest 3. **Request for Warrant** Juvenile
2. N.T.A.        4. Request for Capias

Agency ORI Number: FL0500000        Agency Report: 07-117230
Charge Type  [X] Felony     [ ] Misdemeanor  [ ] Ordinance
[   ] Traffic Felony  [   ] Traffic Misdemeanor  [   ] Other
Special Notes  :
Defendant: McCray, Darrin L.  Race: B  Sex: M  DOB: 09/03/1967  Alias:

Charge(s):  1. **Organized Scheme to Defraud**
2. **Official Misconduct**
3. **Conspiracy to Commit Organized Scheme to Defraud**
4. **Solicitation/Organized Scheme to Defraud**

Victim: **Palm Beach County Sheriff's Office**
Local Address: **3228 Gun Club Rd. West Palm Beach FL 33406**
Local Phone: **561-688-3000**
Business Address: **3228 Gun Club Rd. West Palm Beach, FL. 33406**
Business Phone: **561-688-3000**


The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that the above named Defendant Committed the following violation of law.
The person taken into custody
[] Committed the below acts in my presence.
[] Confessed to _____
Admitting to the above facts.
[] Was observed by _____who told_____ that he/she saw
the arrested             person commit the below acts.
**[X] Was found to have committed the below acts, resulting from my
(described) investigation.**

On September 7, 2007, Detective Michael Ferrante and I were tasked with investigating possible criminal activity in regards to manipulation of the Corrections Division computerized hospital overtime signup and work procedures, within the Corrections Division of the Palm Beach County Sheriff's Office.

On or about December 20, 2006, Sgt. James Driscoll submitted an email to Palm Beach County Sheriff's Office Corrections Lieutenant Patricia Brown, who then forwarded it to Majors Tammy Waldrop and Christopher Kneisley. Additionally, a meeting was held

1

with Driscoll, Brown, Waldrop and Kneisley to outline Driscolls concerns in reference to the possible manipulation.

After this meeting there were several additional complaints made by various employees within the Sheriff's Office Corrections Division, which initiated this criminal investigation.

**The initial allegations were:**
Hospital overtime was being manipulated. The manipulation was being done by a select group of supervisors, who were monopolizing the overtime by preventing other employees from receiving their fair share of the overtime. It was alleged that passwords were being shared by employees to enable them to "lock" hospital overtime slots, preventing other employees from signing up for overtime. It was alleged that passwords were being solicited from deputies by supervisors, and that supervisors were administratively signing up employees of their choice prior to the overtime being available to the rank and file deputies.

**The methods of manipulations were:**
Lieutenants, who have administrative rights, were "blocking out" the sign-up sheets prior to the list being posted. It was further alleged that lieutenants would sign up employees, without that particular employee's knowledge or permission, to "block out" the sign-up sheets enabling them, or employees of their choice, to sign up, work, and be paid. Other allegations included lieutenants were signing up "predetermined" employees, then calling other employees of their choice and notifying them that there was overtime available. The predetermined employee is then removed to enable the employee of choice to sign up, work and be paid. Additionally, it was alleged that sergeants were using and or soliciting deputy's passwords to sign up for overtime when they were ineligible to sign up.

**The results of this manipulation were:**
A select few supervisors are receiving the majority of the hospital overtime money because of the manipulation. These select few supervisors are gaining monetarily, while other rank and file employees are being deprived of their fair share of overtime money. As a result of this manipulation, the Palm Beach County Sheriff's Office is being forced to pay out overtime money at a supervisors rate of pay versus a deputies rate of pay.

Information for this investigation was taken from hospital log books, timesheets for all employees from 09/01/06 to 09/01/07, data from PBSO payroll, forensic data gained by the PBSO Computer Crimes Unit, and data from PBSO Information Systems.

During the investigation, a list was compiled of approximately 416 employees, from which 216 employees were found with discrepancies. Interviews were conducted with 226 Palm Beach County Sheriff's Office employees.

2

The results of all investigative data collected as well as information/testimony obtained in sworn statements from 226 employees revealed criminal violations have been committed by the following current 7 employees and 1 retired employee.

Palm Beach County Sheriff's Office Corrections Division policy (COP 917.24) stipulates that a sworn employee is allowed to initially sign up 1 time, and then must wait 48 hours before signing up for another shift. Corrections Lieutenants are tasked as administrators of the hospital overtime signup system. During the time period of this investigation, all Corrections Lieutenants had administrative rights to the system. These administrative rights allow them to enter inmates and create new hospital signup posts. They additionally are allowed to sign up a deputy to the first post to cover the present shift. The initial signup is for a 2 week period, and every Sunday at 0001 a new week is automatically generated. These administrative rights also enable the lieutenants to add or remove deputies administratively as needed, without the use of the deputies' password. The rank and file deputy and sergeants, with basic rights, must use their assigned user name and password, and is allowed to only sign themselves up for overtime.

Through the investigation it was determined that approximately one (1) in five (5) inmates are discharged prior to the deputy reporting for their assigned hospital overtime shift. For this reason, it is imperative for deputies to sign up for these shifts within the first 48 hours of an inmate being admitted to the hospital. If this is not accomplished, the deputies' chance of working this overtime is highly diminished. For example, a deputy would have to sign up for 500 hours in order to work 100 hours. This is the sole reason why the supervisors were manipulating the hospital overtime system as outlined in this investigation.

The manipulation stems from the lieutenants having exclusive administrative rights to the overtime signup system and additionally being allowed to work the overtime that they are administrating (in essence "The Fox Watching the Henhouse").

## Lieutenant Darrin McCray
We found through investigation that from September 1, 2006, to September 1, 2007:
- Lt. Darrin McCray administratively signed up 260 hospital overtime shifts. Out of the total 260 shifts, McCray only worked 24 of the shifts.
- From the 260 shifts that he administratively signed up, 116 of the shifts he signed himself up for. McCray worked 14 of those shifts, Lt. Sandra Nealy worked 2 shifts, Lt. George Behar worked 3 shifts, and Sgt. John McCaffrey worked 2 shifts.
- McCray signed up for 24 shifts using his personal basic user name and password. Of these 24 shifts, he only worked 1 shift.
- McCray administratively signed up Lt. Jeffrey Jackson for 1 hospital overtime shift, without Jackson's permission.
- McCray signed up Deputy Robert Jones for 5 overtime shifts without his permission.

3

- McCray has signed multiple subjects to block spots that are no longer employed by the Palm Beach County Sheriff's Office. On January 14, 2007, McCray administratively signed up Rail Salabarria for one overtime shift, and removed him as a "conflict". Records show that Salabarria resigned from the agency over 1 year ago on December 5, 2005.

- On October 30, 2006, McCray administratively signed up Roshaundra Smelser for an overtime shift, and then removed her as a "conflict". Records show that Smelser was dismissed from the agency on November 8, 2005, which is over 1 year prior to McCray signing her up for the overtime shift.

- On January 14, 2007, McCray signed up Jose Salaman and removed him as a "conflict". Records show that Salaman resigned on February 10, 2006, which is over one year prior to McCray signing him up for an overtime shift.

- On November 8, 2006 and January 15, 2007, McCray signed up Patrick Thompson, who is an Information Systems civilian employee, and is not a certified corrections deputy, thus not eligible to work in that capacity. In a sworn statement from Thompson he stated that he did not give McCray permission to sign him up for overtime, nor would he be allowed to work this overtime.

- McCray administratively signed up Corporal Christa Brooks up for hospital overtime without her permission. When Brooks discovered that she was signed up for this shift, she told Lt. McCray and he told her "it's all taken care of". The following day, Brooks checked and found out that she was still on the roster to work an overtime shift. She then approached Sgt. John McCaffrey and asked him if she should report for duty to work the shift. McCaffrey told her that he would work the shift and generate an inter-office memorandum to Lt. McCray. McCaffrey worked the shift, and to date, record of the memorandum being generated has not been located.

- From September 1, 2006 to September 1, 2007 McCray has worked 42.25 hosptial overtime shifts, which equates to 338 hours, and has been paid $15, 210.79 in overtime.

- Lt. McCray routinely submitted his OTM (Oracle Time Management) sheets to time keeper Linda Kolpan who enters the overtime data into the Oracle Time Management system for payroll purposes without being properly authorized by a supervisor of at least one rank higher than him, (in his case, a Captain), which is Palm Beach County Sheriff's Office policy and procedure.

- On January 30, 2007, Colonel Keith Chambers took McCray's hospital overtime signup administrative privileges away, and then on February 23, 2007 he re-instated those privileges. In a sworn statement from Chambers, he indicated that the reason he took the privileges away was to "keep him from getting into trouble". After having his administrative privileges restored, McCray continued with the same type of manipulation tactics as he did prior to having the privileges removed.

- Although it would appear on the surface, from the above information that McCray worked a total of 0 shifts (0 hours), which were legitimate shifts signed up for with his password; however, he was paid for an additional 42.25 shifts (338

4

hours) that were available to him by the ongoing scheme to defraud created by Nealy, Dent, Kemph, Behar, McCaffrey, and Velasquez.

The totality of all of the above information revealed the following fraudulent practices by Lieutenant Sandra Nealy of the Palm Beach County Sheriff's Office Corrections Division:

There were a total of 305 Palm Beach County Sheriff's Office staff members that worked hospital overtime from September 1, 2006 to September 1, 2007. This totaled 28, 580 hours. From these 305 total employees, 272 were deputies, and 33 were supervisors. These 33 supervisors worked a total of 9, 219.27 hours. There were seven (7) supervisors, who worked 44% of these hours, which equates to 4,056.47 hours. The evidence outlined in this investigation confirms that these hours could not, or would not, have been able to be obtained, without the manipulation of the hospital overtime signup system and by the solicitation of other employees for their passwords. This manipulation includes such actions as using the solicited passwords and the use of deputies' names without their consent or knowledge for the sole purpose of "blocking spots" for the overtime signup. Using administrative sign up privilege to sign up for more overtime shifts than the system or policy will allow.

Due to the above outlined investigative findings, I believe probable cause to exist for the following Florida State Statute violations:

FSS 817.034(4)(a)2 The Defendant, Darrin McCray did engage in a scheme constituting a systematic, ongoing course of conduct with intent to defraud one or more persons, or to obtain property from one or more persons by false or fraudulent, representations, or promises, and did obtain property from one or more of such persons, contrary to Florida Statute.

FSS 838.022 The defendant, Darrin McCray while a public servant, did unlawfully, with corrupt intent to obtain a benefit for herself or another or caused unlawful harm to another, falsify or caused another to falsify any official record or official document; to conceal, cover up, destroy, mutilate, or alter any official record or official document or cause another person to perform such an act; or obstruct, delay, or prevent the communication of information relating to the commission of a felony that directly involves or affects the public agency or public entity served by her, contrary to Florida Statute.

5

FSS 777.04 (2) The defendant, Darrin McCray did unlawfully solicit numerous Palm Beach County Sheriff's Corrections employees to commit organized scheme to defraud, an offense prohibited by law and in the course of said solicitation commanded, hired, encouraged or requested numerous Palm Beach County Sheriff's employees to engage in specific conduct which would constitute said offense or offenses or an attempt to commit said offense or offenses, contrary to Florida Statutes 777.04(2).

FSS 777.04 (3) The defendant, Darrin McCray did unlawfully agree, conspire, combine or confederate with Faulton Kempf, Edy Velasquez, George Behar, Sandra Nealy, John McCaffrey, and Kathy Dent to commit organized scheme to defraud , a felony, contrary to Florida Statutes 777.04(3) and 817.034(4)9a)2 (2nd degree felony) (level 5).

I am therefore asking for an arrest warrant to be issued for the defendant on these stated violations of Florida State Statute.

State of Florida
County of Palm Beach

_____ Signature of Arresting /Investigative Officers

The foregoing instrument was sworn to or affirmed and subscribed before me this $27^{st}$ day of May 2008 by, Detective Wayne Smith I.D. 2561 and Detective Michael Ferrante I.D. 6731, who is personally known to me and/or produced identification. Type of identification produced_____

_____ Notary Public/Clerk of
Court/Officer (F.S.S. 117.10)

6

**EXHIBIT L**

**COLLECTIVE BARGAINING AGREEMENT**

**BETWEEN**

**PALM BEACH COUNTY SHERIFF'S OFFICE**

**AND**

**PALM BEACH COUNTY**

**POLICE BENEVOLENT ASSOCIATION**

**<u>CORRECTIONS</u>**

**<u>AGREEMENT- SEPTEMBER 30, 2006</u>**

## TABLE OF CONTENTS

| ARTICLE | TITLE | PAGE |
|---|---|---|
| 1 | PREAMBLE | 3 |
| 2 | RECOGNITION | 4 |
| 3 | NON-DISCRIMINATION | 5 |
| 4 | DUES DEDUCTION | 6 |
| 5 | MANAGEMENT RIGHTS | 8 |
| 6 | PBA REPRESENTATION/UNION BUSINESS | 9 |
| 7 | NO SOLICITATION AND USE OF BULLETIN BOARDS | 11 |
| 8 | DISCIPLINE | 12 |
| 9 | SENIORITY | 13 |
| 10 | COMMUNICATIONS POLICY | 15 |
| 11 | LEAVE POLICY | 16 |
| 12 | SICK LEAVE | 18 |
| 13 | MILITARY | 19 |
| 14 | HOLIDAYS | 20 |
| 15 | COURT APPEARANCES | 22 |
| 16 | CALL BACK, ON-CALL AND EMERGENCIES | 23 |
| 17 | OUT OF CLASSIFICATION PAY | 24 |
| 18 | ASSIGNMENT PAY | 25 |
| 19 | PERSONNEL RECORDS | 26 |
| 20 | HEALTH INSURANCE | 27 |
| 21 | UNIFORMS AND EQUIPMENT | 28 |
| 22 | TAKE HOME VEHICLES | 29 |
| 23 | TUITION REIMBURSEMENT | 30 |
| 24 | EXTRA DUTY EMPLOYMENT | 31 |
| 25 | WORKWEEK AND OVERTIME | 32 |
| 26 | TRANSFERS AND SHIFT EXCHANGES | 34 |
| 27 | SALARY PLAN | 35 |
| 28 | CAREER PATH | 39 |
| 29 | LONGEVITY | 40 |
| 30 | PROMOTIONS | 41 |
| 31 | WORKER'S COMPENSATION AND DUTY DISABILITY | 44 |
| 32 | ALTERNATE DUTY ASSIGNMENT | 45 |
| 33 | FUNERAL EXPENSES | 46 |
| 34 | SAVINGS CLAUSE | 47 |
| 35 | MAINTENANCE OF CONDITIONS | 48 |
| 36 | GRIEVANCE AND ARBITRATION PROCEDURE | 49 |
| 37 | WORK STOPPAGES | 53 |
| 38 | INDOOR AIR QUALITY | 54 |
| 39 | POLICE BILL OF RIGHTS/RECORDS RETENTION | 55 |
| 40 | DURATION OF AGREEMENT | 60 |

## ARTICLE 1
## PREAMBLE

THIS AGREEMENT is entered into by and between the SHERIFF OF PALM BEACH COUNTY, FLORIDA, located within the County of Palm Beach, State of Florida (hereinafter referred to as "PBSO"), and the PALM BEACH COUNTY POLICE BENEVOLENT ASSOCIATION, INC. (hereinafter referred to as the "PBA" or the "Association"), as the sole and exclusive bargaining representative of the employees within the certified bargaining units.

It is the purpose of this Agreement to promote and maintain harmonious relations between the Sheriff and the employees within the certified bargaining units; to provide for equitable and peaceful means of resolving grievances which may arise; and to establish fair wages, hours, terms and conditions of employment.

## ARTICLE 2
## RECOGNITION

The Sheriff recognizes the PBA as the sole and exclusive bargaining agent for the bargaining units of employees as certified by the Public Employees Relations Commission, Certifications #1487 and #1486, with respect to the working conditions, rates of pay and other conditions of employment for those employees of the Sheriff working within the certified unit, to-wit;

## INCLUDED:

All full-time certified and sworn corrections personnel of the Palm Beach County Sheriff's Office assigned to the corrections department with the rank of deputy sheriff, and all full-time certified corrections officers of the Palm Beach County Sheriff's Office assigned to the corrections department with the ranks of sergeant and lieutenant, and the classification of jail inspector.

## EXCLUDED:

All other appointees or employees, including appointees or employees of the law enforcement and administration, and all managerial or confidential employees.

4

## ARTICLE 3
## NON-DISCRIMINATION

Section 1.

No employee covered by this Agreement will be discriminated against by the PBSO because of membership in the PBA, or authorized activity as required in this Agreement on behalf of the PBA.

Section 2.

Both the PBSO and the PBA oppose discrimination in the basis of age, race, creed, color, national origin, sex, handicap/disability, marital status or religion. However, the Parties also recognize that the PBSO has established an internal procedure to investigate and resolve alleged cases of discrimination, which is in addition to existing and adequate procedures established by Palm Beach County, the State of Florida and the Federal government. Accordingly, it is agreed that allegations of employment discrimination cannot be processed through the contractual grievance/arbitration procedure.

## ARTICLE 4
## DUES DEDUCTION

### Section 1.

Upon receipt of a lawfully executed written authorization from a bargaining unit member, the PBSO agrees to deduct the current regular association dues on a semi-monthly basis and remit such deductions to the treasurer of the PBA.  The PBA will notify the PBSO, in writing, thirty (30) days prior to any change in the regular PBA dues structure.  The employer is expressly prohibited from any involvement in the collection of fines, penalties or special assessments and shall not honor any request of this nature other than for association dues.

### Section 2.

Any employee may, at any time, revoke his/her dues deduction and shall submit such revocation form to the PBSO Payroll Section with a copy to the PBA.

### Section 3.

The PBA agrees to provide necessary Dues Deduction Authorization forms and Notice to Stop Dues Deduction forms for its members.  These forms shall be at least 8-1/2" wide and 5-1/2" tall in dimension.  The information entered on the forms, with the exception of the member's signature, must be either typed or legibly printed.  These forms shall read as follows:

## AUTHORIZATION CARD FOR DEDUCTION OF UNION DUES

I hereby authorize the PBSO to deduct from my wages each pay period, the current regular pay period PBA dues and to transmit this amount to the treasurer of the Palm Beach County Police Benevolent Association.

Date:
Name:
PBSO ID Number:
Social Security Number:
Address:
Signature:

## INSTRUCTION TO STOP DEDUCTION OF UNION DUES

I hereby instruct the PBSO to stop deducting from my wages each pay period the current regular pay period PBA dues of the Palm Beach County Police Benevolent Association. A copy of this revocation has been forwarded to the treasurer of the PBA.

Date:
Name:
PBSO ID Number:
Social Security Number:
Address:
Signature:

## ARTICLE 5
## MANAGEMENT RIGHTS

The PBA recognizes the right of the Sheriff to operate, manage, and direct all affairs of his office, including the following:

A.      To manage and direct all employees of the Sheriff's Office.

B.      To hire, rehire, reinstate, promote, transfer, schedule, assign and retain employees in positions with the Sheriff's Office.

C.      To suspend, demote, discharge, or take other disciplinary action against employees for just cause.

D.      To maintain the efficiency of the operation of the Sheriff's Office.

E.      To determine the structure and organization of the Sheriff's Office, including the right to supervise, subcontract, expand, consolidate or merge any division thereof.

F.      To determine the number of all employees who shall be employed by the Sheriff, the job makeup, activities, assignments, and the number of shifts to be worked per week, including starting and quitting times of all employees.  Notwithstanding the foregoing, the Sheriff's Office agrees to comply, as may be feasible, with National Institute of Corrections recommendations regarding deputy-to-inmate Direct Supervision ratios in direct supervision areas.

G.      To determine the number, types, and grades of positions or employees assigned to an organizational unit, department or project, and the right to alter, combine, reduce, expand, or cease any position not prohibited by law.

H.      To establish internal security practices.

I.      The exercise of the above-defined rights by the Sheriff shall not preclude employees or the PBA from raising grievances should decisions on the above matters have the practical consequences of violating the terms of this Agreement and/or affecting any other conditions of employment.

J.      The PBA acknowledges that PBSO may make reasonable amendments, revisions, additions, deletions and/or changes to PBSO General Orders, S.O.P.'s, Rules and Regulations and Policy Statements.

K.      To promulgate reasonable departmental rules and regulations not in conflict with the provisions of this Agreement.

8

## ARTICLE 6
## PBA REPRESENTATION/UNION BUSINESS

<u>Section 1.</u>

The PBSO recognizes the right of the PBA to designate PBA representatives as it deems appropriate, with the understanding that representatives will be appointed based on location and shift not to exceed more than three (3) representatives per shift and not more than ten (10) representatives from any one (1) Division and/or from any one (1) specialty unit.

<u>Section 2.</u>

The PBSO agrees to establish a PBA time pool bank to be used for PBA representatives to conduct union business, as defined in this Article.

<u>Section 3.</u>

PBA members covered by this Agreement shall donate two (2) hours of leave time each year to the PBA time pool bank. The initial deduction shall be made from each member's vacation leave during the first pay period in the month after ratification of this Agreement. In subsequent years, said deduction shall be made from each member's vacation leave during the first week in January. All unused donated time will be carried over from year to year.

<u>Section 4.</u>

Leave time contributed to the bank shall be paid out when used on an hour for hour basis at the rate of the union representatives who use the leave at their hourly rates.

<u>Section 5.</u>

Charges against the PBA time pool shall be documented by the use of a TAMS Overtime Leave Approval Form to be completed for each request. The form shall have the approval of the signatures of the Sheriff or his designee, and the Association President or his or her designee. The above form must be submitted to the Sheriff or his designee a minimum of seventy-two (72) hours prior to the time the employee is requesting to use the time pool bank. Submission made with less than seventy-two (72) hours notice may be granted at the discretion of the Sheriff or his designee. In emergency situations or when officers are involved in use of deadly force, approval of time pool use may be obtained through the appropriate Division commander.

## Section 6.

The Union President shall be released from duty on a permanent basis to conduct union business.  The Union President shall be compensated on the basis of a forty (40) hour workweek.  One other Union Representative, designated by the Union President, shall be released from duty on an as needed basis, not to exceed twenty (20) hours weekly to conduct union business.  The Union President and designated Union Representative shall maintain their current pay, rank and time in grade, shall accrue all benefits available to other bargaining unit employees, and shall also be eligible for any promotional examinations as applicable.  The President may perform regular law enforcement duties upon the approval of the Sheriff.

PBSO shall provide a print-out of the usage of the union time pool on a monthly basis.

## Section 7.

The Union authorizes PBSO Payroll to automatically deduct, from the union time pool, the number of regularly scheduled hours in each pay period, unless notified of an exception by the Union.

## ARTICLE 7
## NO SOLICITATION AND USE OF BULLETIN BOARDS

Section 1.

The PBA agrees that there shall be no solicitation of PBSO employees for membership in the PBA, signing up of members, collection of initiation fees, dues or assessments, meetings, distribution of PBA or affiliated PBA literature or any other solicitation activity of the PBA during the working hours of PBSO employees; provided, however, that this Section shall not be construed to prohibit communication of official PBA business to members prior to the beginning of the work shift and after the regularly scheduled work shift and during the employee's meal period. PBA representatives will be afforded ten (10) minutes twice a month to address line-ups.

Section 2.

The PBSO shall permit and schedule thirty (30) minutes for a PBA Representative or designee to address new bargaining unit employees with regard to terms and conditions of employment and PBA membership during PBSO new employees' orientation. The PBA will submit an outline to the Labor Relations Coordinator for approval at least five (5) working days prior to the address. This time period may be waived by mutual agreement of the Parties.

Section 3.

The PBSO, together with the PBA, shall determine the location and type of bulletin boards that may be used by the PBA at the PBSO facilities. The PBA may use the bulletin boards only for the purpose of posting official PBA business notices and related information, and may not use the boards to post political endorsements. No item shall be placed on any PBA bulletin board without being initialed by the PBA President or designee, and reviewed by the Labor Relations Coordinator or designee. All costs incidental to preparing and posting of PBA material will be borne by the PBA.

## ARTICLE 8
## DISCIPLINE

Sections 1.

No bargaining unit member shall be disciplined except for just cause.  Disciplinary actions are as follows: training, written counseling, written reprimand, suspension without pay, demotion and dismissal.

Section 2.

The Parties recognize that the interests of the County and of bargaining unit members' job security depends upon the success of the Sheriff's Office in providing proper and efficient services to the County, and in applying disciplinary measures consistently and even-handedly when the conduct of personnel is inconsistent with such proper and efficient services.  In the service of those interests, the Parties recognize the need for progressive and appropriate discipline in order to ensure conduct consistent with established standards reasonably related to bargaining unit members' job performance.

The PBSO administers discipline as a means to ensure that employees adhere to established standards of conduct and performance.  This is done through corrective action, described in this Article as "discipline."  In those instances where misconduct in the first instance is not extreme or serious, the PBSO is committed to the use of progressive discipline. The use of progressive discipline is an art, not a science.  Sound progressive discipline is recognized as being appropriate for the offense and instructive as to the consequences of additional or similar future misconduct.  Progressive discipline does not mean that all first offenses must be addressed with written counseling, and that all second offenses must be addressed with a reprimand, and so on.  It means that all disciplinary tools and penalties are available to address misconduct not punishable by dismissal in the first instance, and the type of discipline will depend on the severity of the offense, the employee's work record and history, and other relevant factors.

Transfers between bargaining units shall not be used as a form of discipline.

**ARTICLE 9**
**SENIORITY**

<u>Section 1.</u>

Seniority, as used herein, is defined as the right accruing to bargaining unit members through continuous time in grade and classification, while employed by PBSO, which entitles them to certain considerations and preferences as provided for in this Agreement. Seniority shall accumulate during approved absence due to illness, injury, vacation leave, military leave. Employees on other authorized leave shall maintain the seniority they had when their leave commenced. Employees who terminate PBSO employment and are rehired shall be eligible to bridge their prior service after completion of three (3) years of continuous service after rehire.

Any bargaining unit member, who terminates service with PBSO and is rehired within a one (1) year period, shall be returned to duty at the same pay grade they held prior to terminating employment.  However, any bargaining unit member of the rank of Sergeant or Lieutenant who terminates employment and is rehired within a one (1) year period shall be rehired at the highest deputy sheriff pay-grade for which they could qualify.

The PBSO seniority of sworn personnel who transfer between bargaining units shall govern vacation bids, only.

<u>Section 2.</u>

If two (2) or more bargaining unit members have the same classification date, for purposes of breaking a tie, seniority will be determined by the date and time the member's employment application was received by the PBSO.

<u>Section 3.</u>

Seniority shall govern the following matters:

1. Vacation for each calendar year. Selections will be made in rounds, and employees shall select one (1) vacation period consisting of contiguous days each round.

2. Layoffs shall be made in reverse order of seniority.

3. Employees shall be called back from lay off according to seniority for up to two years.

13

The Parties recognize that for reasons of operational necessity, seniority shall not be the only factor involved. If seniority does not govern, the reasons will be provided to the affected employees.

<u>Section 4.</u>

Vacation selection for members assigned to shift "teams" or specialized units, as defined in Article 18, shall be based upon the member's seniority in the member's respective team or specialized unit.

**ARTICLE 10**
**COMMUNICATIONS POLICY**

Section 1.

The PBA President, or his/her designee, will be placed on the contact list maintained by PBSO's Communications Division and will be notified in any situation in which a bargaining unit member is seriously injured, involved in a discharge of his/her firearm, or any other type of critical incident which also requires the dispatching of the Bureau of Internal Affairs as the result of a bargaining unit member's actions, or when the Sheriff or his designee requests that the PBA be contacted.

Section 2.

In those cases in which a bargaining unit member requests a PBA representative to respond or to be contacted and the affected party is unable to make such notification, the Communications Division, upon request, will attempt such contact.

Section 3.

The PBA will provide PBSO with the necessary information to facilitate compliance with this Article. The PBA agrees to hold the PBSO harmless for any failure to notify under this Article, and any violations of this Article shall not be subject to grievance and arbitration.

15

## ARTICLE 11
## LEAVE POLICY

<u>Section 1.</u>

Leaves shall be in accordance with General Order #208.03, except as modified below.

<u>Section 2.</u>

During the term of this Agreement the following annual leave shall be granted to bargaining unit members for the amount of time of continuous service with PBSO as follows:

a.  All members shall accrue annual leave at the rate of four (4) hours per semi-monthly period, in which a member works in excess of one half (1/2) of the work days or has compensable leave time for that period.

b.  A member will be eligible to use annual leave after the completion of three (3) months of continuous, full-time, creditable employment.

c.  A member shall be granted longevity leave after completing the following years of continuous service.  Time will be added to the member's annual leave balance on the anniversary of his or her date of hire or adjusted service date, as applicable.

| Years of Service | Hours of Longevity Leave | Years of Service | Hours of Longevity Leave |
|---|---|---|---|
| 5 | 8 Hours | 15 | 56 Hours |
| 6 | 16 Hours | 20 | 64 Hours |
| 7 | 24 Hours | 25 | 72 Hours |
| 8 | 32 Hours | 30 | 80 Hours |
| 9 | 40 Hours | 35 | 88 Hours |
| 10 | 48 Hours | 40 | 96 Hours |

Longevity leave is credited at the completion of a full year of service.  Longevity leave is pro-rated at time of resignation, dismissal or retirement.

<u>Section 3.</u>

Annual leave may be accrued to a maximum of two hundred and eighty (280) hours in the first year of this Agreement, three hundred (300) hours in the second year of this

16

Agreement and three hundred and twenty (320) hours in the third year of this Agreement and is payable upon separation of employment, unless at the time of separation of employment, the unit member's FRS benefits have been forfeited or their certification has been revoked. If there is an investigation or charges pending at the time of separation which could result in either forfeiture of the unit member's FRS benefits or revocation of certification, payout of annual leave shall be suspended until a final determination is made as to the status of FRS benefits and certification. Employees who have completed twenty (20) years of service may accrue additional annual leave up to a maximum of five hundred (500) hours.

Section 4.

Any bargaining unit member who has sustained an injury in the line of duty and who has vacation time previously scheduled which falls within the period of disability shall be entitled to reschedule the vacation time after return to duty. It is the intent of the Parties that any previously scheduled vacation time falling within a period of disability incurred in the line of duty shall not be forfeited or otherwise expended due to the unforeseeable circumstance of the injury.

Section 5.

By January 31st of each year, all hours in excess of the maximum allowable accrued annual leave, shall be contributed to the Union Time Pool, unless the unit member received prior approval by the Sheriff to carry over excess hours.

**ARTICLE 12**
**SICK LEAVE**

Section 1.

Sick leave shall accrue at the rate of four (4) hours semi-monthly with a maximum accrual for payout of one thousand two hundred (1200) hours.

Section 2.

Upon retirement or resignation in good standing, bargaining unit members will be reimbursed for unused sick leave at the member's current rate of pay at separation according to the following schedule:

| Years of Continuous Service | Payout |
|---|---|
| Greater than 5 to 10 | 50% |
| Greater than 10 to 25 | 100% of first 480 and 50% of remaining hours |
| Greater than 25 | 100% up to 1200 |

Continuous service shall be defined as continuous paid service with the PBSO and will be computed from the date of hire. Continuous service shall accumulate during FMLA leave, paid sick leave, workers' compensation leave, annual leave and military leave.

18

## ARTICLE 13
## MILITARY

The PBSO will apply the Military Leave Policy as stated in the PBSO General Orders.

## ARTICLE 14
## HOLIDAYS

Section 1.

During the term of this Agreement, the PBSO recognizes the following twelve (12) holidays:  New Year's Day, Martin Luther King Jr. Day, Presidents' Day, Memorial  Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Friday after Thanksgiving, Christmas Day, One (1) Floating Holiday to be determined by the Sheriff.

Section 2.

Bargaining unit members who work and who are directed to work a designated holiday shall be paid at the bargaining unit member's regular rate of pay for all hours worked on the holiday, plus a full shift of holiday pay at the regular rate of pay or, at the bargaining unit member's option, a full shift of holiday time.

Section 3.

When a holiday falls on a bargaining unit member's regular day off, he/she shall receive eight (8) hours of holiday time or pay.  The option is the member's choice.

Section 4.

Holiday time may be accrued to a maximum of 120 hours, and may be used in the same manner as annual leave.   Accrued holiday time is payable upon separation of employment, unless at the time of separation of employment, the unit member's FRS benefits have been forfeited or their certification has been revoked.  If there is an investigation or charges pending at the time of separation which could result in either forfeiture of the unit member's FRS benefits or revocation of certification, payout of annual leave shall be suspended until a final determination is made as to the status of FRS benefits and certification.

Section 5.

Holiday time above 56 hours shall be paid out to employees on the last pay period in October of the first year of this Agreement; 60 hours in the second year of this Agreement and 64 hours in the third year of this Agreement.

Section 6.

On the pay period ending nearest January 31st of the first year of this Agreement, the PBSO shall contribute an amount equal to two (2) hours of holiday time per bargaining unit position to the Union Time Pool; three (3) hours in the second year of this Agreement and four (4) hours in the third year of this Agreement.

## ARTICLE 15
## COURT APPEARANCES

<u>Section 1.</u>

Any bargaining unit member who is required by the PBSO to appear as a witness in court as a direct result of employment with PBSO shall be entitled to the following:

a.     Regular pay if called to testify during regularly scheduled work hours.

b.     A minimum of three (3) hours if called to testify, appear in court, or present a case to the State Attorney's Office outside the bargaining unit member's regularly scheduled work hours. All such hours shall be calculated as time worked.

c.     Any bargaining unit member who is required to appear more than once during a day will receive an additional three (3) hour minimum as long as the second subpoena requires the bargaining unit member's appearance one hour or more from the release from the first subpoena. If it is less than one hour from the release from the first subpoena then it will be paid as continuous time. This provision is limited to two (2) minimum appearance fees daily. All such hours shall be calculated as time worked.

<u>Section 2.</u>

A bargaining unit member subpoenaed during duty hours to appear as a witness in a case not involving the Sheriff's Office and not directly related to the bargaining unit member's personal or Union affairs, (such as performing a civic duty as a witness to a crime or an accident) will be allowed time off with pay for this purpose. Adequate prior notice must be provided by the bargaining unit member.

<u>Section 3.</u>

Time off to respond to a subpoena to appear as a witness in a case related to a bargaining unit member's personal or Union affairs will be at the bargaining unit member's own expense (vacation or unpaid leave). Adequate prior notice must be provided by the bargaining unit member to his/her command.

22

## ARTICLE 16
## CALL BACK, ON-CALL AND EMERGENCIES

Section 1.

Bargaining unit members who have left the work place and who are ordered or otherwise directed to return to work more than one hour after completing their scheduled shifts shall be paid a minimum of three (3) hours.  Bargaining unit members called back to work less than one hour after completing their scheduled shifts shall be paid for all time commencing from the completion of their previously completed shift, except in those circumstances described in section 2.  All such hours shall be calculated as time worked.

This section shall also apply when a bargaining unit member is required to provide a statement to an investigative unit at a time which begins more than two (2) hours before his/her scheduled shift or more than one (1) hour after his/her shift is completed.

Section 2.

This provision shall not apply in those instances when the overtime commences two (2) hours or less prior to, or runs continuously with, the bargaining unit member's regular shift or where the bargaining unit member is called back to work to rectify his/her own error or omission which cannot wait until the bargaining unit member's next shift. In such instances, the bargaining unit member shall be compensated for the hours worked at the appropriate rate.

Section 3.

Bargaining unit members called back to work who are on authorized leave, shall be paid at the rate of one and one half times the bargaining units member's regular rate of pay for hours worked for a minimum of three (3) hours, and a maximum equal to the number of remaining hours of authorized leave. Such bargaining unit members shall not be charged leave for any such hours worked.  All such hours shall be calculated as time worked.

23

**ARTICLE 17**
**OUT OF CLASSIFICATION PAY**

The Sheriff or designee may assign a bargaining unit member covered by this Agreement to serve as temporary replacement for an absent supervisor. If such assignment occurs, the bargaining unit member shall be paid five (5%) percent above his/her current rate of pay for each completed shift worked in the temporary position.  It shall be the stepped-up bargaining unit member's responsibility to advise the timekeeper of entitlement to out of classification pay.

## ARTICLE 18
## ASSIGNMENT PAY

<u>Section 1.</u>

Deputy Sheriffs and Sergeants who complete the certification process as Field Training Officers (FTO's) and who are assigned active FTO responsibilities by their respective command will receive the following assignment pay calculated in accordance with current pay grade and step:

> First year............................ 5%
> Third year ..................... additional 5%

<u>Section 2.</u>

Deputy Sheriffs in the following specialty assignments shall receive a five percent (5%) assignment pay calculated in accordance with current pay grade and step, upon entering service in these assignments:

CERT (Full Time Members)
Trainer (Training Bureau)
Breathalyzer Operator (West County Detention Center)
Investigator
Alternative Custody

<u>Section 3.</u>

The increases provided under this Article shall only be paid when the member is so assigned.

## ARTICLE 19
## PERSONNEL RECORDS

Section 1.

Each bargaining unit member covered by this Agreement, or legal representative so designated by the bargaining unit member, shall have the right to inspect his/her official files. Such inspection shall take place at reasonable times and at the location where the official personnel file is kept. The bargaining unit member shall have the right to receive a duplicate copy of any item contained in his/her official files at no cost to the member.

Section 2.

Inspection of official files will be limited in accordance with Florida law.

**ARTICLE 20**
**HEALTH INSURANCE**

Section 1.

Unit members will receive medical, dental and vision coverage provided to other PBSO employees under the same terms and conditions.

Section 2.

Effective January 1, 2006, premium increases for the type of coverage and plan selected by the unit member shall be split between the PBSO and the unit member.   PBSO will pay 90% of the premium increase and the unit member will pay 10% of the premium increase.

Section 3.

PBSO agrees that any change in benefits, during the term of this Agreement, shall be made by mutual agreement with PBA.

Section 4.

The PBSO agrees to provide group health insurance benefits to the surviving spouse and children of a bargaining unit member who is killed in the line of duty or who suffers a catastrophic injury (as defined in Section 440.02(38), Florida Statutes (2002) in the line of duty, until such time as the spouse remarries, the children reach age 21, or age 25 if a dependent or a dependent and a student; or until such time as other health insurance becomes available from another source.  If a spouse's remarriage ends or the spouse loses other insurance, the same group health insurance (i.e., the previous type of coverage) shall be provided, subject to the carrier's conditions and upon application within 60 days of loss of insurance, until remarriage or other insurance becomes available from another source.

## ARTICLE 21
## UNIFORMS AND EQUIPMENT

Section 1.

Uniforms and equipment shall be subject to Standard Operating Procedure #550.00, and other applicable PBSO rules, regulations, policies and procedures.

Section 2.

In the event that personal property of a bargaining unit member that is used with authorization of PBSO is damaged, destroyed or lost as a result of performance of duty, PBSO agrees to adhere to Administrative Procedure 230.01, except as modified below:

Items covered include personal property limited to the actual cash value not to exceed the following:

Wrist watches – limited to $100.00

Prescription eyeglasses or sunglasses not covered under workers' compensation is limited to lens replacement and $200.00 per frame (not including tinting and service agreements).

**ARTICLE 22**
**TAKE HOME VEHICLES**

Section 1.

Assigned vehicles shall only be authorized for Corrections deputy sheriffs and employees where a take home vehicle would be appropriate based on the employees' job function.

The PBSO has the discretion to limit or discontinue assignment of vehicles for financial reasons, and may withdraw or restrict vehicle use for non-compliance with PBSO vehicle policies and procedures or for disciplinary reasons.

Unit members assigned a take home vehicle shall pay a fuel charge through payroll deduction of twenty-two dollars and fifty cents ($22.50) per pay period.

Section 2.

Bargaining Unit Members who are scheduled to be assigned a take home vehicle based on job function pursuant to Section 1, shall be assigned a take home vehicle if they reside in the following counties: Palm Beach, Martin, St. Lucie, Hendry, Broward and Okeechobee. Bargaining unit members currently assigned to the following units will continue to be assigned a take home vehicle for the duration of their assignment:

Lieutenants
Training Bureau
Alternate Custody
CERT – (Full-time)

Section 3.

Other than emergency vehicle repairs, maintenance of take home vehicles shall be performed during members' regular duty status.

29

## ARTICLE 23
## TUITION REIMBURSEMENT

<u>Section 1.</u>

The tuition reimbursement policy will continue as it is currently administered in SOP #303.02, except as modified below.

<u>Section 2.</u>

Education reimbursement shall be made only for job-related classes and/or courses taken at an accredited junior college, community college, college or university within the State of Florida that is part of a program resulting in a two-year, four-year or master's degree.   Tuition reimbursement is one thousand five hundred dollars ($1,500) per employee, per fiscal year.

Upon completion of any course approved by the Sheriff or his or her designee, unit members shall be reimbursed one hundred percent (100%) of the tuition costs, provided the employee received a grade of "C" or better, in accordance with the maximum amounts provided in this Article.

30

**ARTICLE 24**
**EXTRA DUTY EMPLOYMENT**

<u>Section 1.</u>

Hourly rates for extra-duty services of unit personnel shall be as follows:

| Rank | Member Gross Pay | Client Charge |
|---|---|---|
| Deputy | $28.00 | $ 35.00 |
| Supervisor | 33.00 | 40.00 |
| OIC | 38.00 | 45.00 |

Unit members shall receive the amount shown in the "member gross pay" column for each hour of extra duty work performed.  Partial hours shall be recorded and paid in one-quarter hour increments.

<u>Section 2.</u>

In the event that client fees collected by PBSO are insufficient to cover unit member pay, taxes and pension contributions, the PBSO may increase the fee to clients in an amount necessary to cover these costs.

<u>Section 3.</u>

Extra duty employment on Labor Day, Halloween, Thanksgiving Day, Christmas Eve, Christmas Day, New Year's Eve, New Year's Day, Super Bowl Sunday, Easter, Memorial Day and Independence Day shall be compensated at fifteen dollars ($15.00) above the regular extra duty rates.

<u>Section 4.</u>

One sergeant will be required for every five (5) deputies (e.g., one (1) sergeant from five (5) to nine (9) deputies; two (2) sergeants for ten (10) to fourteen (14) deputies, etc.). One officer-in-charge (OIC) of the rank of lieutenant will be required where fifteen (15) or more deputies will be staffed (e.g., an OIC is not required with fourteen (14) deputies and two (2) sergeants).

## ARTICLE 25
## WORKWEEK AND OVERTIME

Section 1.

Hours of work, overtime and compensatory time shall be established pursuant to Standard Operating Procedure #208.01, except as provided below.

Section 2.

Line Staff Members assigned to uniformed positions will work 8.33 hours per shift in a 5-2, 5-3 rotation on all shifts.  Supervisory members will work 8.33 hours on a 5-2, 5-3 rotation on all shifts.  Specialty Units will be given the flexibility to adjust their schedules based on the need of the unit.  Other unit members will work an 8 hour shift on a 5-2 rotation.

Section 3.

At the bargaining unit member's discretion, in lieu of overtime pay a bargaining unit member may choose to accrue compensatory time.  The accumulation of compensatory time shall be limited to a total maximum accrual of one hundred twenty (120) hours, inclusive of conversion to the time and one half rate.

Section 4.

Additional hours worked in the 28-day work cycle above 161 hours shall be paid at straight time, and hours worked above 167 shall be paid at time and one-half the regular rate.

Section 5.

Only actual hours worked will be used in the calculation of overtime at the premium rate of time and one-half, however, compensatory time and vacation time shall be included as time worked.

Section 6.

Work schedules shall only be changed after the member has been given at least four (4) working days prior notice, except in emergency circumstances as determined by the Sheriff.

32

<u>Section 7.</u>

Bargaining unit members required by PBSO to attend schools and/or training, shall be compensated for attendance at said schools and/or training.  Bargaining unit members voluntarily attending schools and/or training approved, but not required, by PBSO, shall be compensated only for attendance on dates and at times he or she otherwise was scheduled to work.

## ARTICLE 26
## TRANSFERS AND SHIFT EXCHANGES

Section 1.

It shall be the right of the Sheriff to transfer bargaining unit members.  If a transfer is a permanent change in the bargaining unit member's assignment, shift, or days off (except in the Departments or assignments excepted herein), seven (7) working days notice will be provided prior to the transfer.  This provision may be waived by mutual agreement of the Parties or if the transfer is declared an operational necessity.

Section 2.

Bargaining unit members who so request will be considered for assignment in the district closest to their residence of record.

Section 3.

Bargaining unit members who are involuntarily transferred to another unit will retain and carry with them any approved annual, holiday, sick or compensatory time.  Involuntarily transferred bargaining unit members shall be entitled to use such time as previously scheduled.

Section 4.

Bargaining unit members, within the same rank and unit, may exchange shifts within the same twenty eight (28) day work period with the consent of the members' supervisor(s). All requests must be made in writing in a memorandum indicating when the shifts will be worked and paid back and they must be approved twenty-four (24) hours prior to the start time of the shift to be exchanged.  Under no circumstances will the PBSO be required to pay back an employee whose shift is not paid back.  Employees who agree to work a shift for another employee are subject to discipline for non-attendance.  No overtime may result from a shift exchange.

Section 5.

When a vacant allocation in a specialty unit occurs as defined in Article 18 "Assignment Pay," for deputies, sergeants and lieutenants such vacancies shall be posted on the APPS page at least fourteen days in advance of the interviews for such vacancies.

Section 6.

Transfers will be governed by Directive Corr-010.

# ARTICLE 27
# SALARY PLAN

Section 1.

Unit members shall continue to receive merit step increases pursuant to the PBSO pay plan in effect on January 1, 2007.

Section 2.

Effective January 1, 2007, unit members shall receive a cost of living adjustment (COLA) of four percent (4%).

Section 3.

Effective January 1, 2008, unit members shall receive a cost of living adjustment (COLA) of three percent (3%) and an additional two percent (2.0%) effective April 1, 2008.

Section 4.

Effective January 1, 2009, unit members shall receive a cost of living adjustment (COLA) of three percent (3%) and an additional two percent (2.0%) effective April 1, 2009.

Section 5.

The anticipated salary plan for unit members during the contract period is set forth below:

| Position | Current Grade Name | Reclass Oct-Dec 2006 Annual | 4.0% COLA Jan-Dec 2007 Annual | 3.0% COLA Jan-March 2008 Annual | 2.0% COLA Apr-Dec 2008 Annual | 3.0% COLA Jan-March 2009 Annual | 2.0% COLA Apr-Dec 2009 Annual |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| LE/COR DS | 25.01 | 41,088 | 42,744 | 44,028 | 44,928 | 46,284 | 47,220 |
| LE/COR DS | 25.02 | 42,936 | 44,676 | 46,020 | 46,956 | 48,372 | 49,356 |
| LE/COR DS | 25.03 | 44,868 | 46,692 | 48,096 | 49,080 | 50,556 | 51,588 |
| LE/COR DS | 25.04 | 46,884 | 48,804 | 50,280 | 51,300 | 52,848 | 53,916 |
| LE/COR DS | 25.05 | 48,996 | 51,012 | 52,548 | 53,616 | 55,236 | 56,352 |
| LE/COR DS | 25.06 | 51,192 | 53,316 | 54,924 | 56,040 | 57,732 | 58,896 |
| LE/COR DS | 25.07 | 53,496 | 55,716 | 57,396 | 58,572 | 60,336 | 61,548 |
| LE/COR DS | 25.08 | 55,908 | 58,224 | 59,988 | 61,212 | 63,060 | 64,332 |
| LE/COR DS | 25.09 | 58,428 | 60,852 | 62,688 | 63,972 | 65,904 | 67,236 |
| LE/COR DS | 25.10 | 61,056 | 63,600 | 65,520 | 66,852 | 68,880 | 70,272 |

35

| | | | | | | |
|---|---|---|---|---|---|---|
| Career 1 DS | 29.01 | 44,868 | 46,692 | 48,096 | 49,080 | 50,556 | 51,588 |
| Career 1 DS | 29.02 | 46,884 | 48,804 | 50,280 | 51,300 | 52,848 | 53,916 |
| Career 1 DS | 29.03 | 48,996 | 51,012 | 52,548 | 53,616 | 55,236 | 56,352 |
| Career 1 DS | 29.04 | 51,192 | 53,316 | 54,924 | 56,040 | 57,732 | 58,896 |
| Career 1 DS | 29.05 | 53,496 | 55,716 | 57,396 | 58,572 | 60,336 | 61,548 |
| Career 1 DS | 29.06 | 55,908 | 58,224 | 59,988 | 61,212 | 63,060 | 64,332 |
| Career 1 DS | 29.07 | 58,428 | 60,852 | 62,688 | 63,972 | 65,904 | 67,236 |
| Career 1 DS | 29.08 | 61,056 | 63,600 | 65,520 | 66,852 | 68,880 | 70,272 |
| Career 1 DS | 29.09 | 63,804 | 66,468 | 68,472 | 69,864 | 71,988 | 73,440 |
| Career 1 DS | 29.10 | 66,672 | 69,468 | 71,556 | 73,008 | 75,228 | 76,752 |
| | | | | | | |
| Career 2 DS | 31.01 | 46,884 | 48,804 | 50,280 | 51,300 | 52,848 | 53,916 |
| Career 2 DS | 31.02 | 48,996 | 51,012 | 52,548 | 53,616 | 55,236 | 56,352 |
| Career 2 DS | 31.03 | 51,192 | 53,316 | 54,924 | 56,040 | 57,732 | 58,896 |
| Career 2 DS | 31.04 | 53,496 | 55,716 | 57,396 | 58,572 | 60,336 | 61,548 |
| Career 2 DS | 31.05 | 55,908 | 58,224 | 59,988 | 61,212 | 63,060 | 64,332 |
| Career 2 DS | 31.06 | 58,428 | 60,852 | 62,688 | 63,972 | 65,904 | 67,236 |
| Career 2 DS | 31.07 | 61,056 | 63,600 | 65,520 | 66,852 | 68,880 | 70,272 |
| Career 2 DS | 31.08 | 63,804 | 66,468 | 68,472 | 69,864 | 71,988 | 73,440 |
| Career 2 DS | 31.09 | 66,672 | 69,468 | 71,556 | 73,008 | 75,228 | 76,752 |
| Career 2 DS | 31.10 | 69,672 | 72,600 | 74,784 | 76,296 | 78,624 | 80,208 |
| | | | | | | |
| Career 3 DS | 33.01 | 48,996 | 51,012 | 52,548 | 53,616 | 55,236 | 56,352 |
| Career 3 DS | 33.02 | 51,192 | 53,316 | 54,924 | 56,040 | 57,732 | 58,896 |
| Career 3 DS | 33.03 | 53,496 | 55,716 | 57,396 | 58,572 | 60,336 | 61,548 |
| Career 3 DS | 33.04 | 55,908 | 58,224 | 59,988 | 61,212 | 63,060 | 64,332 |
| Career 3 DS | 33.05 | 58,428 | 60,852 | 62,688 | 63,972 | 65,904 | 67,236 |
| Career 3 DS | 33.06 | 61,056 | 63,600 | 65,520 | 66,852 | 68,880 | 70,272 |
| Career 3 DS | 33.07 | 63,804 | 66,468 | 68,472 | 69,864 | 71,988 | 73,440 |
| Career 3 DS | 33.08 | 66,672 | 69,468 | 71,556 | 73,008 | 75,228 | 76,752 |
| Career 3 DS | 33.09 | 69,672 | 72,600 | 74,784 | 76,296 | 78,624 | 80,208 |
| Career 3 DS | 33.10 | 72,816 | 75,876 | 78,156 | 79,740 | 82,164 | 83,820 |
| | | | | | | |
| Career 4 DS/Pilot | 35.01 | 51,192 | 53,316 | 54,924 | 56,040 | 57,732 | 58,896 |
| Career 4 | 35.02 | 53,496 | 55,716 | 57,396 | 58,572 | 60,336 | 61,548 |

36

| DS/Pilot | | | | | | | |
|---|---|---|---|---|---|---|---|
| Career 4 DS/Pilot | 35.03 | 55,908 | 58,224 | 59,988 | 61,212 | 63,060 | 64,332 |
| Career 4 DS/Pilot | 35.04 | 58,428 | 60,852 | 62,688 | 63,972 | 65,904 | 67,236 |
| Career 4 DS/Pilot | 35.05 | 61,056 | 63,600 | 65,520 | 66,852 | 68,880 | 70,272 |
| Career 4 DS/Pilot | 35.06 | 63,804 | 66,468 | 68,472 | 69,864 | 71,988 | 73,440 |
| Career 4 DS/Pilot | 35.07 | 66,672 | 69,468 | 71,556 | 73,008 | 75,228 | 76,752 |
| Career 4 DS/Pilot | 35.08 | 69,672 | 72,600 | 74,784 | 76,296 | 78,624 | 80,208 |
| Career 4 DS/Pilot | 35.09 | 72,816 | 75,876 | 78,156 | 79,740 | 82,164 | 83,820 |
| Career 4 DS/Pilot | 35.10 | 76,092 | 79,296 | 81,684 | 83,340 | 85,872 | 87,600 |

| Position | Current Grade Name | New Step | Oct-Dec 2006 Annual | 4.0% COLA Jan-Sep 2007 Annual | Reclass Oct-Dec 2007 Annual | 3.0% COLA Jan-March 2008 Annual | 2.0% COLA Apr-Dec 2008 Annual | 3.0% COLA Jan-March 2009 Annual | 2.0% COLA Apr-Dec 2009 Annual |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| Sergeant | 37.01 | | 53,496 | 55,716 | | | | | |
| Sergeant | 37.02 | | 55,908 | 58,224 | | | | | |
| Sergeant | 37.03 | | 58,428 | 60,852 | | | | | |
| Sergeant | 37.04 | | 61,056 | 63,600 | | | | | |
| Sergeant | 37.05 | | 63,804 | 66,468 | | | | | |
| Sergeant | 37.06 | | 66,672 | 69,468 | | | | | |
| Sergeant | 37.07 | | 69,672 | 72,600 | | | | | |
| Sergeant | 37.08 | | 72,816 | 75,876 | | | | | |
| Sergeant | 37.09 | | 76,092 | 79,296 | | | | | |
| Sergeant | 37.10 | | 79,512 | 82,872 | | | | | |
| | | | | | | | | | |
| Sergeant | 39.04 | 1 | | | 66,468 | 68,472 | 69,864 | 71,988 | 73,440 |
| Sergeant | 39.05 | 2 | | | 69,468 | 71,556 | 73,008 | 75,228 | 76,752 |
| Sergeant | 39.06 | 3 | | | 72,600 | 74,784 | 76,296 | 78,624 | 80,208 |
| Sergeant | 39.07 | 4 | | | 75,876 | 78,156 | 79,740 | 82,164 | 83,820 |

37

| Sergeant | 39.08 | 5 | | | 79,296 | 81,684 | 83,340 | 85,872 | 87,600 |
|---|---|---|---|---|---|---|---|---|---|
| Sergeant | 39.09 | 6 | | | 82,872 | 85,368 | 87,096 | 89,748 | 91,548 |
| Sergeant | 39.10 | 7 | | | 86,604 | 89,220 | 91,020 | 93,792 | 95,676 |
| | | | | | | | | | |
| Lieutenant | 43.01 | | 61,056 | 63,600 | | | | | |
| Lieutenant | 43.02 | | 63,804 | 66,468 | | | | | |
| Lieutenant | 43.03 | | 66,672 | 69,468 | | | | | |
| Lieutenant | 43.04 | | 69,672 | 72,600 | | | | | |
| Lieutenant | 43.05 | | 72,816 | 75,876 | | | | | |
| Lieutenant | 43.06 | | 76,092 | 79,296 | | | | | |
| Lieutenant | 43.07 | | 79,512 | 82,872 | | | | | |
| Lieutenant | 43.08 | | 83,088 | 86,604 | | | | | |
| Lieutenant | 43.09 | | 86,820 | 90,504 | | | | | |
| Lieutenant | 43.10 | | 90,720 | 94,584 | | | | | |
| | | | | | | | | | |
| Lieutenant | 45.07 | 1 | | | 86,604 | 89,220 | 91,020 | 93,792 | 95,676 |
| Lieutenant | 45.08 | 2 | | | 90,504 | 93,240 | 95,124 | 98,016 | 99,984 |
| Lieutenant | 45.09 | 3 | | | 94,584 | 97,440 | 99,408 | 102,432 | 104,484 |
| Lieutenant | 45.10 | 4 | | | 98,844 | 101,832 | 103,884 | 107,052 | 109,200 |

**ARTICLE 28**
**CAREER PATH**

Section 1.

The PBSO shall maintain a Career Path for deputy sheriffs as provided for in SOP #303.03, except as modified below.

Section 2.

Upon promotion bargaining unit members, who do not earn assignment pay, shall receive a one-step increase above their current base rate of pay or where permissible by the pay-scale, bargaining unit members who earn assignment pay, shall receive an increase to the nearest step above the combination of their current base rate of pay and their eligible assignment pay.

Section 3.

Attainment of Career Deputy status is not a promotion, and pay raises as a result shall be effective on the date of attaining such status.

**ARTICLE 29**
**LONGEVITY**

Bargaining unit members who have completed the required years of continuous service as indicated below shall receive longevity calculated in accordance with current pay grade and step; which shall be paid on or before November 30, as follows:

| Years of Continuous Service | Percentage Increase |
|---|---|
| 10+ | 2% |
| 15+ | 5% |
| 20+ | 10% |

For example:  If a bargaining unit member's hire date is October 1 and the member completes 20 years of service on this date, then the member would receive a prorated longevity payment of 5% for 11 months (November through September) and 10% for one month (October).

For example:  If a bargaining unit member's hire date is October 1 and the member completes 21 years of service on this date, then the member would receive 10% longevity payment for 12 months (November through October).

Continuous service shall be defined as continuous paid service with the PBSO and will be computed from the date of hire.  Continuous service shall accumulate during FMLA leave, paid sick leave, workers' compensation leave, annual leave and military leave.

Employees who terminate PBSO employment and are rehired shall be eligible to bridge their prior service after completion of three (3) years of continuous service after rehire, for purposes of longevity pay only.

40

## ARTICLE 30
## PROMOTIONS

<u>Section 1.</u>

Promotions will be made pursuant to GO 305.01, except as provided below.

<u>Section 2.</u>

Promotion eligibility lists shall remain in effect and may be utilized for promotions for two (2) years.  Vacancies that occur after expiration of a list but prior to certification of a new list shall be filled from the new list.  Vacancies that occur prior to the expiration of a promotional eligibility list will be filled from the list existing at the time of the vacancy in accordance with this Article.

<u>Section 3.</u>

For all promotional processes PBSO shall give notice ninety (90) days before the scheduled promotional examination date.  The notice shall include the examination date, the areas that the examination will cover, and the sources from which the examination is drawn.  The examination materials shall reasonably reflect the job duties of the position.

<u>Section 4.</u>

All promotional tests will be given in even-numbered years.  The eligibility list created from this testing process will become effective January 1 of the next odd-numbered year, and will be maintained for two years.

<u>Section  5.</u>

There will be no make-up promotional examinations.  However, upon request and if the employee can make testing arrangements suitable to PBSO with a state-approved police academy, an accredited university, or a military approved facility before a commanding officer, the PBSO will make special testing arrangements to administer tests at the same date and time and under similar conditions to candidates who cannot appear at the regular test site due to: 1) Military Services, 2) Sheriff's Office business, 3) approved bereavement leave, or 4) a catastrophic health emergency involving the employee's family, which is limited to spouse, children, parents, and grandparents if they reside with the employee.

41

<u>Section 6.</u>

A.   Examination Provisions

    1.   The Sheriff agrees to use only job related promotional examinations.

    2.   The Corrections Sergeant's and Lieutenant's examinations will consist of a written test and an assessment process.

    3.   The PBSO will conduct a promotional process orientation.

B.   Selection Process

Successful candidates will be ranked on the Eligibility List for Corrections Sergeant and Corrections Lieutenant based on their scores in the written examination, assessment, and seniority and education as follows:

| | |
|---|---|
| Written Exam | 40% |
| Assessment Process | 30% |
| Seniority with PBSO and Education* | 10% |
| Past performance with PBSO | 20% |

*Candidates shall receive one-half (1/2) point for each completed year of service in their current Corrections rank for a maximum of ten (10) years or five (5) seniority points. Education points will be credited as follows:

<u>Corrections Sergeant</u>

| | |
|---|---|
| Associates Degree or equivalent (60 college credit hours) | 1 point |
| Bachelors Degree | 2 points |
| Masters Degree | 2 points |

<u>Corrections Lieutenant</u>

| | |
|---|---|
| Bachelors Degree | 2 points |
| Masters Degree | 3 points |

## Section 7.

All promotions made from the bargaining unit shall be made by utilizing a rule of five (5), i.e., each promotion must be made from among the then current top five (5) persons on the promotional eligibility list who have not been suspended within the three (3) year period prior to the date of the promotion for three (3) days or more for any one (1) incident, or a total of five (5) days or more.  No person shall be passed over for a promotion by selecting a lower ranked employee on more than four (4) occasions.  The Sheriff may delay or deny a promotion with respect to any person who is the subject of an active investigation by any law enforcement agency.

## Section 8.  Corrections Sergeant

No person will be admitted to an examination for the promotion to Corrections Sergeant until he or she has served at least five (5) years continuous full-time status as a Corrections Deputy prior to the expiration of the previous promotional list.

## Section 9. Corrections Lieutenant

No person will be admitted to an examination for the promotion to Corrections Lieutenant until he or she has served at least three (3) years continuous full-time status as Corrections Sergeant prior to the expiration of the previous promotional list.

## ARTICLE 31
## WORKERS' COMPENSATION AND DUTY DISABILITY

Section 1.

A bargaining unit member covered by Florida Statute, Chapter 440, Workers' Compensation, and in accordance with provisions set forth hereunder, shall be authorized to be absent from work due to injury or illness incurred while on duty, and directly related to work performed, until he or she reaches maximum medical improvement or two (2) years, whichever comes first.

Section 2.

Sworn bargaining unit members who sustain a serious injury on-duty while in the apprehension of a violent person, or who sustain a serious injury while engaged in Corrections activities will receive a supplement to their workers' compensation that will provide 100% of their base salary for up to one hundred eighty (180) calendar days. All questions regarding eligibility for the supplemental payment provided in this section shall be finally resolved in the sole discretion of the Sheriff without resort to the grievance and arbitration procedure.

44

## ARTICLE 32
## ALTERNATE DUTY ASSIGNMENTS

Section 1.

Unit members who are temporarily unable to perform the essential functions of their positions shall be assigned alternate duty pursuant to SOP # 208.06, except as modified below.

Section 2.

The period of temporary alternate employment is determined as follows:  For non-work related illness/injury until the employee reaches MMI or six (6) calendar months, exclusive of any FMLA leave (i.e., no duty status), from the date of injury/illness, whichever comes first, however, the Sheriff may authorize an extension of the 6 month period.

Section 3.

For non-work related illness/injury, unit members who are eligible for and exhaust their initial FMLA entitlement, may be granted an additional 480 hours of leave for approved medical reasons upon application to the Human Resources Administrator or designee with supporting medical documentation.  Employees may receive pay during these periods from their accrued leave banks.  Upon exhaustion of leave banks, employees are entitled to request donated time in accordance with GO #208.03.

## ARTICLE 33
## FUNERAL EXPENSES

The PBSO will provide, to the beneficiary of a bargaining unit member considered to have died in the line of duty, thirty thousand dollars ($30,000) for funeral, burial, and related expenses.

**ARTICLE 34**
**SAVINGS CLAUSE**

If any Article or section of this Agreement should be found invalid, unlawful, or not enforceable by reason of any existing or subsequently enacted legislation or by judicial authority, all other Articles and sections of this Agreement shall remain in full force and effect for the duration of this Agreement.

## ARTICLE 35
## MAINTENANCE OF CONDITIONS

<u>Section 1</u>.

All job benefits in effect at the time of the execution of this Agreement heretofore authorized by the Sheriff and not specifically provided for or abridged by this Agreement shall remain in full force and effect for the duration of this Agreement.

<u>Section 2</u>.

The PBSO and the PBA shall meet at the request of either Party to negotiate to the extent required by law any proposed changes in those rights and benefits not specifically covered by this Agreement, provided, however, no changes shall be made except when a waiver exists or where the change is negotiated or resolved in accordance with Chapter 447, Florida Statutes.

## ARTICLE 36
## GRIEVANCE AND ARBITRATION PROCEDURE

Section 1.  Grievance Procedure

A grievance shall be defined as a dispute over the interpretation or application of the specific provisions of this Agreement.   The Parties agree that this procedure will substitute for and replace the procedure found at GO 210.00 for bargaining unit members.

Unit members may appeal disciplinary suspensions of greater than two days, disciplinary demotions or discharges by either using the procedure in this Article or the Career Service Employees Act (GO #202.01), but not both.  Employees may avail themselves of only one of these forums, and once an option has been chosen the other procedure shall be foreclosed to them.

Unit members may appeal disciplinary action involving disciplinary suspensions of two days of less through this procedure up to Step 4, but the decision of the Sheriff or his designee at that step will be final and the matter cannot be taken to arbitration. Unit members who wish to appeal performance evaluations may informally contest their evaluations by conferring with the next level within the chain of command.  Members will be given the opportunity to clarify their position and voice opinions regarding the evaluations, and the reviewing authority may supplement the evaluations, but members shall not be entitled to grieve their evaluations.

Section 2.

In a mutual effort to provide harmonious relations between the Parties to this Agreement, it is agreed to and understood by both Parties that there shall be a procedure for the resolution of grievances or misunderstandings between the Parties arising from the application or interpretation of this Agreement as follows:

Step 1.      The aggrieved employee with or without a union representative may present a written grievance to his/her Captain within ten (10) working days of the occurrence or knowledge of the matter giving rise to the grievance.  The Captain shall attempt to adjust the matter within his/her authority and respond to the party presenting the grievance within ten (10) working days.

Step 2.      If the grievance has not been satisfactorily resolved in step 1, the PBA representative and/or the aggrieved employee may appeal the grievance to his/her major, in writing, within ten (10) working days of the date the response was due in Step 1.

49

The Major shall respond to matter within his/her authority, in writing, within ten (10) working days to the employee and PBA.

Step 3.   If the grievance has not been satisfactorily resolved in Step 2, the PBA representative and/or the aggrieved employee may appeal the grievance to the Colonel in his/her chain of command, within ten (10) working days after the time the response from the previous step is due.  The Colonel shall respond, in writing, within ten (10) working days to the employee and PBA.

Step 4.   If the grievance is not satisfactorily resolved in Step 3, the aggrieved employee or the Association may appeal the grievance to the Sheriff or his designee, in writing, within ten (10) working days of the date the response was due in Step 3.  The Sheriff or his designee shall respond in writing within ten (10) working days to the employee and the PBA.

Note:  The time limits set forth may be waived only by mutual agreement, in writing, between the Parties.  If the PBA fails to advance a grievance within these time limits the grievance will be treated as withdrawn with prejudice.  If the PBSO fails to respond to the grievance within these time limits, the grievance will be treated as denied, effective on the date the response was due.

Section 3.

Should the PBSO wish to press a grievance, such grievance must be presented to the PBA for a response. The PBA shall have ten (10) working days in which to submit a written response.  The PBSO may appeal the PBA's response to arbitration pursuant to Section 4 of the procedure below.

Section 4.   Arbitration Referral

1.    If the grievance is not resolved at Step 4 of the Grievance Procedure, the aggrieved employee or the PBA may, within ten (10) working days of the date the response was due in Step 4, submit a request for arbitration to the Sheriff.  In general grievances, either the PBA or the PBSO may request to take the issue or grievance to arbitration.

2.    If the Parties fail to mutually agree upon an arbitrator within ten (10) days after the date of  receipt of the arbitration request, a list of seven (7) qualified neutrals from the American Arbitration Association shall be requested by either Party, with a copy of the request sent to the other Party.  Within five days after the receipt of the list, the Parties shall meet and alternately cross out the names on the list, and the remaining name shall be the arbitrator.  The Party bringing the grievance shall cross out the first name.  Failure of the Parties to select an arbitrator within thirty

days (30) days of receipt of the panel from AAA will be considered a withdrawal of the grievance with prejudice.

3.   The hearing on the grievance shall be informal and the strict rules of evidence shall not apply.

4.   The arbitrator shall not have the power to add to, subtract from, modify or alter the terms of this Collective Bargaining Agreement in arriving at a decision of the issue or issues presented, and shall confine his or her decision solely to the interpretation or application of the Agreement.  The arbitrator shall not have the authority to determine any issues not submitted.

5.   The decision of the arbitrator shall be final and binding upon the aggrieved employee, the union and employer, except as provided by law, or if the circuit court finds that the arbitrator's decision is clearly erroneous or in violation of public policy.

6.   The arbitrator's fee and expenses shall be borne equally by the Parties, unless otherwise agreed to by the Parties.

7.   Attendance at any arbitration procedure and compensation of participants shall be the responsibility of each side.

8.   The arbitrator shall be requested to tender his/her decision as quickly as possible, but in any event, no later than thirty (30) calendar days after the hearing.

9.   In the case of a grievance involving any continuing or other money claim against the employer, no award shall be made by the arbitrator, which shall allow any monetary payment, damages or accruals for more than five (5) working days prior to the date when such grievances shall have been first submitted in writing.

10.   Upon receipt of the arbitrator's award, corrective action, if any, will be implemented as soon as possible.

11.   If either Party to this Agreement requests a copy of transcripts of the arbitration hearings, both Parties will share equally the cost of such transcripts.

Section 5.

Where a grievance is general in nature, in that it applies to a number of employees having the same issue to be decided, or if the Grievance is directly between the Union and PBSO, it shall be presented in writing directly at Step 4 of this Grievance Procedure,

51

52

within fifteen (15) days of the time limits provided for the submission of a grievance in Step 1, and shall be signed by the aggrieved employees or the Union Representative on their behalf.

## Section 6.

PBSO agrees to forward a copy of the initial face sheet of internal grievances, when the employee elects not to have Union representation. Upon the Union's request, PBSO will provide copies of all written documents pertaining to the employee's grievance, to the extent authorized by the public records law.

## ARTICLE 37
## NO STRIKE OR WORK STOPPAGE

The PBA, its officers, agents, representatives, and its bargaining unit members and employees agree that they will not strike, as defined by the Public Employees Relations Act, and agree not to participate in a strike against the Sheriff by instigating or supporting a strike, nor shall the bargaining unit members participate in a work stoppage, slow-down, sick out or any other activities prohibited by law. Notwithstanding the above, there shall be no picketing whatsoever in uniform or on duty by the bargaining unit members covered by this Agreement. The Parties agree that any bargaining unit member who has been proven to have participated in or promoted any of the aforesaid activities may be discharged or otherwise disciplined by the Sheriff.

## ARTICLE 38
## INDOOR AIR QUALITY

The indoor air quality program adopted for all County – owned facilities, pursuant to County policy # CW-L-037, sets forth reporting, preventive and maintains procedures for indoor air quality problems. This policy will govern indoor air quality issues for all Palm Beach County Sheriff's Office Correctional facilities.

**ARTICLE 39**
**POLICE OFFICERS' BILL OF RIGHTS/RECORDS RETENTION**

1.      PBSO agrees to follow all provisions of law set forth in Florida Statutes commonly known as the "Police Officers Bill of Rights".  Excerpts of F.S.S. 112.532 are set forth below:

**112.532 Law enforcement officers' and correctional officers' rights.**  All      law enforcement officers and correctional officers employed by or appointed to a law enforcement agency or a correctional agency shall have the following rights and privileges:

    (1)    RIGHTS OF LAW ENFORCEMENT OFFICERS AND CORRECTIONAL OFFICERS WHILE UNDER INVESTIGATION.

Whenever a law enforcement officer or correctional officer is under investigation and subject to interrogation by members of his or her agency for any reason which could lead to disciplinary action, demotion, or dismissal, such interrogation shall be conducted under the following conditions:

    (a)    The interrogation shall be conducted at a reasonable hour, preferably at a time when the law enforcement officer or correctional officer is on duty, unless the seriousness of the investigation is of such a degree that immediate action is required.

    (b)    The interrogation shall take place either at the office of the command of the investigating officer or at the office of the local precinct, police unit, or correctional unit in which the incident allegedly occurred, as designated by the investigating officer or agency.

    (c)    The law enforcement officer or correctional officer under investigation shall be informed of the rank, name, and command of the officer in charge of the investigation, the interrogating officer, and all persons present during the interrogation.  All questions directed to the officer under interrogation shall be asked by or through one interrogator during any one investigative interrogation, unless specifically waived by the officer under investigation.

(d)     The law enforcement officer or correctional officer under investigation shall be informed of the nature of the investigation prior to any interrogation, and he or she shall be informed of the name of all complainants.

(e)     Interrogating sessions shall be for reasonable periods and shall be timed to allow for such personal necessities and rest periods as are reasonably necessary.

(f)     The law enforcement officer or correctional officer under interrogation shall not be subjected to offensive language or be threatened with transfer, dismissal, or disciplinary action.   No promise or reward shall be made as an inducement to answer any questions.

(g)     The formal interrogation of a law enforcement officer or correctional officer, including all recess periods, shall be recorded on audio tape, or otherwise preserved in such a manner as to allow a transcript to be prepared, and there shall be no unrecorded questions or statements.  Upon the request of the interrogated officer, a copy of any such recording of the interrogation session must be made available to the interrogated officer no later than 72 hours, excluding holidays and weekends, following said interrogation.

(h)     If the law enforcement officer or correctional officer under interrogation is under arrest, or is likely to be placed under arrest as a result of the interrogation, he or she shall be completely informed of all his or her rights prior to the commencement of the interrogation.

(i)     At the request of any law enforcement officer or correctional officer under investigation, he or she shall have the right to be represented by counsel or any other representative of his or her choice, who shall be present at all times during such interrogation whenever the interrogation relates to the officer's continued fitness for law enforcement or correctional service.

(4)(a)  NOTICE OF DISCIPLINARY ACTION.

No dismissal, demotion, transfer, reassignment, or other personnel action which might result in loss in pay or benefits or which might otherwise be considered a punitive measure shall be taken against any law enforcement officer or correctional officer unless such law enforcement officer or correctional officer is notified of the action and the reason or reasons therefor prior to the effective date of such action.

(b)  Notwithstanding the provisions of s. 112.533(2), whenever a law enforcement officer or correctional officer is subject to disciplinary action consisting of suspension with loss of pay, demotion, or dismissal, the officer shall, upon request, be provided with a complete copy of the investigative report and supporting documents and with the opportunity to address the findings in the report with the employing law enforcement agency prior to the imposition of the disciplinary action consisting of suspension with loss of pay, demotion, or dismissal. The contents of the complaint and investigation shall remain confidential until such time as the employing law enforcement agency makes a final determination whether or not to issue a notice of disciplinary action consisting of suspension with loss of pay, demotion, or dismissal. This paragraph shall not be construed to provide law enforcement officers with a property interest or expectancy of continued employment, employment, or appointment as a law enforcement officer.

(5)  RETALIATION FOR EXERCISING RIGHTS.

No law enforcement officer or correctional officer shall be discharged; disciplined; demoted; denied promotion, transfer or reassignment; or otherwise discriminated against in regard to his or her employment or appointment, or be threatened with any such treatment, by reason of his or her exercise of the rights granted by this part.

(6)  LIMITATIONS PERIOD FOR DISCIPLINARY ACTIONS.

(a)  Except as provided in this subsection, no disciplinary action, demotion, or dismissal shall be undertaken by an agency against a law enforcement officer or correctional officer for any act, omission, or other allegation of misconduct if the investigation of such allegation is not completed within 180 days after the date the agency receives notice of

57

the allegation by a person authorized by the agency to initiate an investigation of the misconduct. In the event that the agency determines that disciplinary action is appropriate, it shall complete its investigation and give notice in writing to the law enforcement officer or correctional officer of its intent to proceed with disciplinary action, along with a proposal of the action sought. Such notice to the officer shall be provided within 180 days after the date the agency received notice of the alleged misconduct, except as follows:

1.    The running of the limitations period may be tolled for a period specified in a written waiver of the limitation by the law enforcement officer or correctional officer.
2.    The running of the limitations period shall be tolled during the time that any criminal investigation or prosecution is pending in connection with the act, omission, or other allegation of misconduct.
3.    If the investigation involves an officer who is incapacitated or otherwise unavailable, the running of the limitations period shall be tolled during the period of incapacitation or unavailability.
4.    In a multijurisdictional investigation, the limitations period may be extended for a period of time reasonably necessary to facilitate the coordination of the agencies involved.

(b)    An investigation against a law enforcement officer or correctional officer may be reopened, notwithstanding the limitations period for commencing disciplinary action, demotion or dismissal, if:

1.    Significant new evidence has been discovered that is likely to affect the outcome of the investigation.
2.    The evidence could not have reasonably been discovered in the normal course of investigation or the evidence resulted from the predisciplinary response of the officer.

Any disciplinary action resulting from an investigation that is reopened pursuant to this paragraph must be completed within 90 days after the date the investigation is reopened.

II.    RECORDS RETENTION: When feasible and to the extent provided by law, the Sheriff's Office agrees to follow the State retention guidelines as set forth in general records Schedule GS2 as follows:

1. **INTERNAL INVESTIGATION RECORDS: NOT SUSTAINED/UNFOUNDED**

**Item #136**

This record series consists of cases investigated that allege employee misconduct and/or violate department regulations and orders, state and federal statutes and municipal ordinances and the charges were found to be not sustained or unfounded.

**RETENTION:**

a) Record copy. 1 year.

b) Duplicates. Retain until obsolete, superseded or administrative value is lost.

2. **INTERNAL INVESTIGATION RECORDS: SUSTAINED FORMAL**

**Item #134**

This record series consists of cases investigated that allege employee misconduct and/or violate department regulations and orders, state and federal statutes and municipal ordinances and the charges were sustained and formal discipline given. It includes statements by officer, person filing complaint and witnesses, if any. "Formal discipline" shall be defined as including demotions, removals, suspensions or similar action.

**RETENTION:**

a) Record copy. 5 years after final disposition.

b) Duplicates. Retain until obsolete, superseded or administrative value is lost.

3. **INTERNAL INVESTIGATION RECORDS: SUSTAINED INFORMAL**

**Item #135**

This record series consists of cases investigated that allege employee misconduct and/or violate department regulations and orders, state and federal statutes and municipal ordinances and the charges were sustained and informal discipline given. It includes statements by officer, person filing complaint and witnesses, if any. "Informal discipline" shall be defined as including written or verbal reprimands, memoranda or similar action.

**RETENTION:**

a) Record copy. 3 years after final disposition.

b) Duplicates. Retain until obsolete, superseded or administrative value is lost.

## ARTICLE 40
## DURATION OF AGREEMENT

Except as otherwise provided herein, this Agreement shall be effective upon ratification, and shall continue in force and effect from October 1, 2006, until its expiration date, September 30, 2009, or otherwise until a successor Agreement is ratified by the Parties. However, the parties agree that Article 18 (Assignment Pay) and Article 21 (Uniforms and Equipment) shall be reopened during the second year of the contract 2007-2008 for further collective bargaining on these articles.

Should either party desire to terminate, change or modify this Agreement, it shall so notify the other party between January 15, 2009 and no later than January 30, 2009. Such notification will contain the title or titles of the article or articles the party wishes to add, alter, or amend, and only those articles will be subject to collective bargaining. All other articles shall remain in full force and effect.

IN WITNESS THEREOF, the parties have caused this agreement to be signed by their duly authorized representatives on the _____ day of _____, 2006.

**FOR THE PBSO**

_____
Ric Bradshaw
Sheriff

_____
Colonel Joe Bradshaw
Department of Legal Affairs

**FOR THE PBA**

_____
John S. Kazanjian
President

_____
Ernest W. George
Executive Director

_____
Gary Lippman
General Counsel

**60**

**EXHIBIT M**

# EXHIBIT N

IN THE CIRCUIT COURT OF
THE FIFTENTH JUDICIAL
CIRCUIT, IN AND FOR
PALM BEACH COUNTY,
FLORIDA

CRIMINAL DIVISION

Case No.: 2008-CF-00761 1FXXX

**STATE OF FLORIDA,**
Plaintiff,

vs.

**DARRIN L. MCCRAY,**
Alleged Defendant

_____/

## VERIFIED MOTION TO STRIKE STATE'S RESPONSE FOR REQUEST OF EXTENSIONOF TIME " AS A SHAM PLEADING", MEMORANDUM OF LAW AND REQUEST FOR EVIDENTARY HEARING

COMES NOW, alleged Defendant DARRIN MCCRAY, "MCCRAY", *pro se*, moves this Court pursuant to Florida Rule of Civil Procedure 1.150.

**ORIGINAL FILE**
Circuit Criminal Department

JUL 15 2019

SHARON R. BOCK
Clerk & Comptroller
Palm Beach County

**ORIGINAL FILED**
Circuit Criminal Department

JUL 15 2019

SHAL...
Clerk & Comp...
Palm Bea...

## INTRODUCTION:

MCCRAY incorporates, mutatis mutandis, *(DE530)* STATE'S MOTION FOR EXTENSION OF TIME, *(DE 532)* ORDER GRANTING MOTION FOR EXTENSION OF TIME, *(DE537)* ORDER GRANTING MOTION FOR EXTENSION OF TIME, *(DE538)* STATE'S MOTION FOR EXTION OF TIME, *(DE 547)* DEFENDANT'S MOTION TO STRIKE STATE'S RESPONSE TO THE DEFENDANT'S *PRO SE* FLORIDA RULE 3.850, AFFIRMATIVE DEFENSE, FLORIDA RULE 3.190 MOTION TO DISMISS AND MEMORANDUM OF LAW, *(DE 549)* REQUEST FOR LEAVE TO FILE MOTION FOR CLARIFICATION OF THE COURT'S ORDER, REQUEST FOR HEARING TO HEAR ALLEGED DEFENDANT'S AMENDED MOTION TO STRIKE STATE'S RESPONSE TO THE DEFENDANT'S *PRO SE* FLORIDA RULE 3.850, AFFIRMATIVE DEFENSE, FLORIDA RULE 3.190 MOTION TO DISMISS AND MEMORANDUM OF LAW, *(DE 563)* STATE'S MOTION TO REQUEST EXTENSION OF TIME AND *(DE565)* ORDER GRANTING MOTION FOR EXTENSION OF TIME.

1

February 14, 2017, the Court Dismissed the Motion, as it failed to comport with the oath requirement pursuant to Florida Rules of Criminal Procedure 3.850©.

On or about July 14, 2017, the State filed a response indicating the Motion fails to comport with the mandatory requirements of Florida Rule of Criminal Procedure 3.850 © and (n).

On or about July 26, 2017, the Court Dismissed MCCRAY'S Motion, without prejudice to refile upon compliance with Rule 3.850. MCCRAY has repeatedly filed. "The motion comports with the mandatory requirements of Florida Rule of Criminal Procedure 3.850 © and (n). The defendant has read this motion, understands it contents, all of the facts stated therein are true and correct, it is filed in good faith and with a reasonable belief that it is timely filed, has potential merit, and does not duplicate previous motions that have been disposed of by the Court, and the defendant understands English or under penalties of perjury, I declare that I have read and prepared the foregoing document tilted Motion For Post-Conviction Relief and that I have personal knowledge of the facts stated in it and can attest that those facts are true and correct to the best of my knowledge.

The State has violated both the Florida Rules of Criminal Procedure 3.850 law and committed perjury as outlined in *FSS* 837.02 Perjury in official proceedings and/or *FSS* 837.021 Perjury by contradictory statements when it

3

**<u>MEMORANDUM OF LAW</u>:**

<u>Florida Rules of Civil Procedure 1.150 (1)</u>:

Accordingly, Fla. R. Civ. P. 1.150(a) underscores that "[i]f a party deems any pleading or part thereof filed by another party to be a sham, that party may move to strike the pleading or part thereof before the causes is set for trial and the court shall hear the motion, taking evidence of the respective parties, and if the motion is sustained, the pleading to which the motion is directed shall be stricken."

<u>A. The State's Sham Pleadings</u>:

The State has and continues to lead a sham pleading in this instant case. The sham and scam is revealed when the State writes, "The State has no prior extensions of time with reference to this post conviction motion, and the request is made in good faith and not for the purpose of delay. The State additionally submits the defendant will suffer no prejudice from this requested extension as he has been released from Department of Corrections Custody." (See *Exhibits* (1-6) or *DE 530, DE 532, DE 537, DE 538, DE 563* and *DE 565*).

Here the State blatantly commits prosecutorial misconduct. For instance, on or about December 12, 2016, the Court Ordered and Adjudged that the Defendant's *pro se* Motion for Post Conviction Relief is hereby Dismissed, without prejudice to refile upon compliance with Rule 3.850. On or about

2

requests extensions of time and denies that MCCRAY'S 3.850 motions do not comport with Florida Rules of Criminal Procedure 3.850 © and (n).

Importantly, (See *DE 530*, *DE 538* and *DE 563* appear to all have been authored by the same Assistant State Attorney to three different Circuit Court Judges. This type of scam and sham is nothing less than prosecutorial misconduct and should be sanctioned. As the State knows MCCRAY is innocent, because the State nor a sitting Court within the State of Florida has or will respond to his motions on the merits. The question becomes how long has the State engaged in this scam and sham, and how many other innocent victims are being denied relief like MCCRAY?

B. The Requirements to Prevail in Sham Pleadings:

Hence, in order to prevail MCCRAY must and will demonstrate that this instant case like the State's prior case against Jeffrey Epestein is "a mere pretense, set up in bad faith without color of fact," or that it is "inherently false and, based on plain or conceded facts, clearly known to be false at the time the pleading was made." See *Crome v. Mullally, 861 So. 2d523 (Fla. Ed DCA 2004); Saregnt, Repka, Covert, Steen & Zimmet,P.A. v. HAMC Indus., Inc., 597 So. 2d 427, 429 (Fla. 2d DCA 1992) (citing Rhea v. Hackney, 157 So. 190, 193 (1934))*.

4

The Florida Supreme Court in *Rhea v. Hackney* has opined, "[A] pleading cannot be stricken out as sham unless the falsity thereof clearly and indisputably appears. As otherwise expressed, to warrant the rejection of a pleading as sham, it must evidently be a mere pretense set up in bad faith and without color of fact. The rule cannot be applied to any case except where the defense is shown to be a plan fiction." (S0. 190. 193-194 (1934).

This instant case along with the State's case against Jeffrey Epestein are plan fiction that constitute models of sham pleadings.  However, the difference between Epestein and MCCRAY is the fact that one sham was created for and one sham was created against.  Supposedly, Epestein was allegedly sexually exploiting and abusing dozens of minor girls.  The State created the sham against MCCRAY.  The State's created sham has is violating MCCRAY'S Fifth, Sixth, Eighth and Fourteenth Amendments; federal preemption outlined in the Labor Management Relations Act (LMRA), 20 U.S.C. 185 (a) and the Employee Retirement Income Security Act of 1074 (ERISA) 29 U.S.C.; and misapplying, misapprehending and clearly overlooking the United States Supreme Court rulings in *Black, Skillings, and Garrity vs. New Jersey* in its attempt to manufacturer this instant case.

5

Furthermore, Fla. R. Civ. P. 1.150 describes the trial court-this Court must hold an evidentiary hearing. See *Reyes v. Roush, 99, So. 3d 586, 590-91 (Fla. 2d DCA 2012); Furst v. Blackman, 744 So. 2d 1222, 1224 (Fla. 4th DCA. 1999)*. Strangely, this Court has repeatedly ignored MCCRAY'S motions that requested a hearing and refused to answer MCCRAY'S motions on the merits. (See *DE 547* and *DE 549*) On the contrary, this Court continues to display docket favoritism and partiality towards the State.

In conclusion, Fla. R. Civ. P. 1.150 requires that MCCRAY verify the motion to strike a sham pleading. MCCRAY is required to "set forth fully" the facts upon his motion relies. MCCRAY questions the strategy and tactics as to whether this Court will schedule an evidentiary hearing and dismiss these illegal charges in an effort to prevent the Florida Supreme Court from issuing the writ of quo warranto postconviction, a writ for relief and/or certifying the question presented in the writ of quo warranto as an important, unsettled question of federal law, (1) clarify the law in Florida Criminal Procedures Rule 3.850 and 3.987 oath of defendants for individuals who are not incarcerated that MCCRAY filed on July 01, 2019.

6

Wherefore, MCCRAY requests this Court schedule an evidentiary hearing and/or strike the State's request for extension.


Respectfully Submitted,

DARRIN MCCRAY, *pro se*
P.O. Box 1172
West Palm Beach, Fl 33041

7

## APPENDIX

1. State's Motion For Extension of Time Filed October 16, 2017 at 04:08:34 pm.

2. Order Granting Motion For Extension of Time Filed October 19, 2017 at 3:16 pm.

3. State's Motion For Extension of Time Filed January 17, 2018 at 11:53:34 am.

4. Order Granting Motion For Extension of Time Filed January 17, 2018 at 03:02:06 pm.

5. State's Letter dated June 24, 2019 that enclosed a copy of the Motion For Extension of Time and Proposed Order Granting The Motion.

6. Order Granting Motion For Extension of Time Signed July 01, 2019.

8

Exhibit 1

Filing # 62891504 E-Filed 10/16/2017 04:08:34 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL
CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO:   2008CF007611FMB CRIMINAL DIVISION   "S"

STATE OF FLORIDA

vs.

DARRIN L. MCCRAY,

      Defendant.

_____/

## MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANT'S *PRO SE* COMBINED AMENDED MOTION FOR POST CONVICTION RELIEF AND MOTION TO CORRECT AN ILLEGAL SENTENCE

THE STATE OF FLORIDA, by and through the undersigned Assistant State Attorney, moves for an extension of time within which to file its response to Defendant's *pro se* combined Amended Motion for Post Conviction Relief and Motion to Correct an Illegal Sentence and states as follows:

1. The defendant has filed a *pro se* combined Amended Motion for Post Conviction Relief and a Motion to Correct an Illegal Sentence with the Clerk of Court on **September 1, 2017**.

2. By order of the Court, the State is presently required to file its written response on October 16, 2017.

3. **The Court's Order dated September 14, 2017, requiring a response from the State only provided a 30 day time frame in which to file said response. The appellate division has a procedure in place for processing orders received requiring a response to post conviction motions. The State is responsible for obtaining the record on appeal by**

various means. It normally takes a minimum of 30 days in which to receive the record on appeal. Once received, the State must verify what is contained therein and then determine whether any additional transcripts or records would need to also be requested if not included in the record on appeal. Once everything has been received the process of review begins, and pleadings are handled primarily in order of receipt recognizing the undersigned is presently handling two separate circuit criminal divisions.

4. The State has had no prior extensions of time with reference to this post conviction motion and is seeking only an additional 90 days in which to file its Response.

5. This request is made in good faith and not for the purpose of delay. The State additionally submits the defendant will suffer no prejudice from this requested extension as he has been released from Department of Correction Custody.

WHEREFORE, the State of Florida respectfully requests an extension of 90 days from the date of the Court's Order within which to serve its response to the Motion for Post Conviction Relief.

Respectfully submitted,

DAVID ARONBERG
State Attorney

BY: LAURA FISHER
Assistant State Attorney
Florida Bar No. 337020
401 North Dixie Highway
West Palm Beach, FL 33401
e-postconviction@sa15.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to Darrin L. Mccray, 1468 13th St, West Palm Beach, Fl 33401 on this 16th day of October, 2017.

Assistant State Attorney

NOT A CERTIFIED COPY

Exhibit 2

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL
CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO:   2008CF007611FMB CRIMINAL DIVISION   "S"

STATE OF FLORIDA

vs.

DARRIN L. MCCRAY,

      Defendant.

_____/

## ORDER GRANTING MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO DEFENDANT'S *PRO SE* COMBINED AMENDED MOTION FOR POST CONVICTION RELIEF AND MOTION TO CORRECT AN ILLEGAL SENTENCE

THIS CAUSE having come before this Court on the State's Motion for Extension of

Time to Respond to Defendant's *pro se* Defendant's *pro se* combined Amended Motion for Post

Conviction Relief and Motion to Correct an Illegal Sentence, it is hereby

ORDERED AND ADJUDGED that the State's Motion is GRANTED.   Office of the

State Attorney shall have 90 days from the date of this Order to file its Response.

DONE AND ORDERED this ____ day of October 2017 in Chambers, Palm Beach

County Courthouse, West Palm Beach, Florida.

_____
CIRCUIT COURT JUDGE

cc:    Laura Fisher, ASA, Legal Affairs and Appeals Div., State Attorney's Office, 401 N. Dixie Hwy., West Palm Beach, Fl 33401; e-postconviction@sa15.org

      Darrin L. McCray, 1468 13th Street, West Palm Beach, FL 33401

FILED: PALM BEACH COUNTY, FL, SHARON R. BOCK, CLERK. 10/19/2017 3:16:00 PM

Exhibit 3

Filing # 66654761 E-Filed 01/17/2018 03:02:06 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

FELONY DIVISION S
CASE NO. 50-2008-CF-007611-FXXX-MB

STATE OF FLORIDA,
    Plaintiff

vs.

DARRIN L MCCRAY,
    Defendant.

_____/

**ORDER GRANTING MOTION FOR EXTENSION OF TIME TO FILE RESPONSE
TO DEFENDANT'S PRO SE COMBINED AMENDED MOTION FOR POST
CONVICTION RELIEF AND MOTION TO CORRECT AN ILLEGAL SENTENCE**

THIS CAUSE having come before this Court on the State's Motion for Extension of Time

to Respond to Defendant's *pro se* Defendant's *pro se* combined Amended Motion for Post

Conviction Relief and Motion to Correct an Illegal Sentence, it is hereby

ORDERED AND ADJUDGED that the State's Motion is GRANTED. Office of the

State Attorney shall have 80 days from the date of this Order to file its Response.

**DONE AND ORDERED**, in West Palm Beach, Palm Beach County, Florida this 17th
day of January, 2018.

50-2008-CF-007611-FXXX-MB   01/17/2018
Cheryl A. Caracuzzo
Circuit Judge

50-2008-CF-007611-FXXX-MB    01/17/2018
Cheryl A. Caracuzzo
Circuit Judge

Page 1 of 2

FILED: PALM BEACH COUNTY, FL, SHARON R. BOCK, CLERK, 01/17/2018 03:02:06 PM

Exhibit 5





# OFFICE OF THE STATE ATTORNEY

FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY

**DAVID ARONBERG**
**STATE ATTORNEY**

June 24, 2019

Honorable Daliah Weiss
Palm Beach County Courthouse
205 North Dixie Highway
West Palm Beach, FL 33401

RE:     Motion for Extension of Time to Respond to Defendant's pro se Motions (Docket Numbers 556, 557, Duplicate Filing 559, and 561)
State v. Darrin L. McCray
Case No. 2008CF007611FMB

Dear Judge Weiss:

Enclosed is a courtesy copy of the Motion for Extension of Time to Respond to Defendant's pro se Motions (Docket Numbers 556, 557, Duplicate Filing 559, And 561), as referenced in the above case.

Please find enclosed, for your review and consideration, a proposed order in this regard.

Sincerely,

Laura Fisher
Assistant State Attorney

Enclosure

cc:     Darrin L. McCray, 1474 13th Street, West Palm Beach, FL 33401

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT, CRIMINAL DIVISION
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 2008CF007611FMB   DIVISION: "S"

STATE OF FLORIDA

vs.

DARRIN L. MCCRAY,

      Defendant.

_____/

## MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANT'S PRO SE MOTIONS (DOCKET NUMBERS 556, 557, DUPLICATE FILING 559, AND 561)

THE STATE OF FLORIDA, by and through the undersigned Assistant State Attorney, moves for an extension of time within which to file its response to defendant's pro se Motions (Docket Numbers 556, 557, Duplicate Filing 559, And 561) and states as follows:

1.     Presently pending are the defendant's pro se Motions (Docket Numbers 556, 557, Duplicate Filing 559, And 561). By order of the Court, dated April 23, 2019, the State is presently required to file its written response on June 24, 2019.

2.     **The caseload in the Appeals Division is extraordinarily high and most of the cases involve numerous complex issues and voluminous records to be retrieved, and necessitate significant time and in-depth analyses. It is necessary for the State to prioritize its caseload based upon the length of time a motion has been pending, and other relevant factors.**

3.     The State has had **no prior extensions** of time with reference to this postconviction motion and is seeking only an additional 58 days in which to file its Response.

4.     This request is made in good faith and not for the purpose of delay.

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CRIMINAL DIVISION "S"

STATE OF FLORIDA

CASE NO.    2008CF007611FMB

vs.

DARRIN L. MCCRAY,

      Defendant.

_____/

## ORDER GRANTING MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO DEFENDANT'S PRO SE MOTIONS (DOCKET NUMBER 556, 557, DUPLICATE FILING 559, AND 561)

THIS CAUSE having come before this Court on the State's Motion for Extension of Time

to Respond to Defendant's pro se Motions (Docket Numbers 556, 557, Duplicate Filing 559, And

561), it is hereby

ORDERED AND ADJUDGED that the State's Motion is GRANTED. Office of the State

Attorney shall have 58 days from the date of this Order to file its Response.

DONE AND ORDERED this _____ day of June 2019 in Chambers, Palm Beach County

Courthouse, West Palm Beach, Florida.


_____
CIRCUIT COURT JUDGE


cc:    Laura Fisher, ASA, Legal Affairs and Appeals Div., State Attorney's Office, 401 N. Dixie
      Hwy., West Palm Beach, Fl 33401; e-postconviction@sa15.org

      Darrin L. McCray, 1474 13th Street, West Palm Beach, FL 33401

Exhibit 6

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

STATE OF FLORIDA

vs.

DARRIN L. MCCRAY,

      Defendant.

_____/

CRIMINAL DIVISION   "S"

CASE NO.   2008CF007611FMB

## ORDER GRANTING MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO DEFENDANT'S PRO SE MOTIONS (DOCKET NUMBER 556, 557, DUPLICATE FILING 559, AND 561)

THIS CAUSE having come before this Court on the State's Motion for Extension of Time to Respond to Defendant's pro se Motions (Docket Numbers 556, 557, Duplicate Filing 559, And 561), it is hereby

ORDERED AND ADJUDGED that the State's Motion is GRANTED.  Office of the State Attorney shall have 58 days from the date of this Order to file its Response.

DONE AND ORDERED this  1st  day of ~~June~~ July 2019 in Chambers, Palm Beach County Courthouse, West Palm Beach, Florida.

_____
CIRCUIT COURT JUDGE
DALIAH H. WEISS
Circuit Judge

cc:    Laura Fisher, ASA, Legal Affairs and Appeals Div., State Attorney's Office, 401 N. Dixie Hwy., West Palm Beach, Fl 33401; e-postconviction@sa15.org

Darrin L. McCray, 1474 13th Street, West Palm Beach, FL 33401

## <u>VERIFICATION</u>

STATE OF
FLORIDA
COUNTY OF PALM BEACH

BEFORE ME personally appeared DARRIN L. MCCRAY, "MCCRAY" who, being by me first duly sworn and identified in accordance with Florida law, deposes and says:

1.     I have read the allegations of fact(s) contained in the foregoing VERIFIED MOTION TO STRIKE THE STATE'S RESPONSE AND MEMORANDUM OF LAW, and each is true and correct.

2.     This affidavit is given under penalties of perjury. FURTHER THE AFFIANT SAYETH NAUGHT.

SWORN and subscribed before me this 15th day of July 2019

Affiant,                                                Notary

DARRIN L. MCCRAY
All Rights Reserved

Notary Public State of Florida
Beverly E Morrison
My Commission GG 329877
Expires 05/03/2023

9

# CERTIFICATE OF SERVICE

MCCRAY certifies that, on July 15, 2019, a true and correct copy of this **VERIFIED MOTION TO STRIKE STATE'S RESPONSE FOR REQUEST OF EXTENSIONOF TIME "AS A SHAM PLEADING", MEMORANDUM OF LAW AND REQUEST FOR EVIDENTARY HEARING** U.S. Postal mail to the persons set out in the Service List below.

ASA Laura Fisher
State Attorney Office
Legal Affairs and Appeals Division
401 North Dixie Highway
West Palm Beach, FL 33401

10

Exhibit N

# EXHIBIT

Filing # 91909702 E-Filed 07/01/2019 10:40:343AM

IN THE SUPREME COURT OF FLORIDA

Florida Supreme Court Case No. _____

DARRIN MCCRAY,

Petitioner,

v.

State of Florida,                    Palm Beach Circuit Case No. *2008-CF-007611*

Respondent.

_____/

## AMENDED EMERGENCY PETITION FOR WRIT OF QUO WARRANTO PETITION FOR WRIT RELIEF PURSUANT TO THE "ALL WRITS" PROVISION OF FEDERAL PREEMPTION AND FLORIDA CONSTITUTION AND MOTION FOR STAY

Petitioner, DARRIN MCCRAY, "MCCRAY" seeks the immediate issuance

of this Writ of Quo Warranto or any Writ pursuant to the "All Writs" Provision and

pursuant to Fla. R. Civ. P. 1.190(a), Fla. R. App. P. 9.130 in the above styled case,

prohibiting the Trial Court, Respondent Judge Daliah H. Weiss and Respondent

Dave Aronberg State Attorney for the Fifteenth Judicial Circuit Office of State

Attorney from illegally proceeding in this instant case, because the Respondents

lack legal authority, lack subject matter jurisdiction, and lack personal jurisdiction

based on federal preemption.  MCCRAY respectfully requests this Court enter an

order staying the trial proceedings.

## <u>TABLE OF AUTHORITIES</u>

### <u>Congressional Acts</u>
Labor Management Relations Act (LMRA), 29 U.S.C 185...............2, 3, 20, 30
Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C2, 3, 20, 30

### <u>Federal Law</u>
Double Jeopardy Clause.................................................................37
Equal Protection Clause..............................................................37
Preemption Clause.....................................................................37
Supremacy Clause.....................................................................37
Black v. United States, 561 U.S. 465 (2010)...........................2, 3, 30
Deina v. Market Ry. Co., 124 F. 2d 965, 967 (9th Cir. 1942)......................26
Garrity v. New Jersey, 385 U.S. 493 (1967)........................2, 3, 7, 16, 27, 30
Hill, 368 U.S. at 428, 82 S. Ct. at 47...........................................37
Hollis v. Davis, 941 F.2d 1471, 1475 (11th Cir. 1991)............................22
Murphy, 378 U.S. at 79, 84 S.Ct. at 1609, 12 L.Ed.2d at 695......................29
Pennsylvania v. Finley, 481 U.S. 551, 556-57 (1987)...........................25, 33
Raie v. Cheminova, Inc., 336 F.3d 1278, 1282 n.1 (11th Cir. 2003)...............27
Skilling v. United States, 561 U.S. 358 (2010)..............................2, 3, 30
This That & the Other Gift & Tobacco, Inc. v. Cobb County. Ga., 439 F.3d 1275, 1283-84 (11th Cir. 2006)...............................................37
United States v. Hubbell, 530 U.S. 27 (2000)....................................31
United States v. Kastigar, 406 U.S. at 452-53................................27, 29
United States v. Koon, 4 F.3d 1416,1431 (9th Cir. 1994...........................29
United States v. Siegelman, 640 F.3d 1159 (11th Cir.2011)....................11, 12
*Winship*, cited infra at 41, 397 U.S. at 364...................................36

### <u>Florida Constitution</u>
Article I, section 21............................................................24

### <u>Florida Rule of Civil Procedure</u>
1.140(b)(1).....................................................................22
1.140(h)(2).....................................................................22
1.1540(b)(4)....................................................................22

### <u>Florida Rule of Criminal Procedure</u>
3.850.......................................................................22, 33, 34
3.987.......................................................................22, 33, 34
3.190..........................................................................22

**Florida Rules of Appellate Procedure**
Fla. R. App. P. 9.330(d)(2)
**Florida Supreme Court**
Austin v. State ex rel. Christian, 310 So. 2d 289 (Fla. 1975)...........................5
Baker v. State, 878 So. 2d 1236 (Fla. 2004)...............................................19
Boca Burger, Inc. v. Forum, 912 So. 2d 561, 568 (Fla. 2005).......................32
Canakaris v. Canakaris 382 So. 2d 1197 1203 (Fla. 1980)...........................26
Crist v. Florida Association of Criminal Defense Lawyers, *Inc.*, __ So. 2d 33......4
English v. McCrary, 348 So. 2d 293 (Fla. 1977)........................................16
Gef!ken v. Strickler, 778 So. 2d 975, 976 n.1 (Fla. 2001)............................31
Huffman v. State, 813 So. 2d 10, 11 (Fla. 2000).......................................16
Lovett v. Lovett 93 Fla. 611, 112 So. 768 (1927)......................................32
Mandico v. Taos Constr., Inc., 605 So. 2d 850 (Fla. 1992).........................16
Martinez v. Martinez, 545 So. 2d 1338 (Fla. 1989).....................................4
Mercer v, Raine, 442 So. 443 So. 2d 944 (Fla. 1983)................................26
Orange County v. City of Orlando, 327 So. 2d 7 (Fla. 1976)..........................5
Snead v. Mayo, 69 So. 2d 653, 654 (Fla. 1954).......................................18
State v. Card, 497 So. 2d 1169; Carey, 349 So. 2d 820.............................21
State ex rel Smith v. Brummer, 426 So. 2d 532 (Fla. 1982)...........................4
State v. Spencer, 751 So. 2d 47 (Fla. 1999)..........................................19
Wilson v. Salamon, 923 So. 2d 363 (Fla. 2005).....................................24, 35
Winter v. Mack, 142 Fla. 1, 8, 194 So. 225, 228 (1940)...............................4
**Florida District Courts**
Abbott v. State, 438 So.2d 1025,1026 (Fla. 1st DCA 1983).........................29
Berisford v. Jack Eckerd Corp., 667 So. 2d 809, 811-12 (1995)....................27
Carey v. State, 349 So. 2d 820 (Fla. 3d DCA 1977....................................30
*City of Hollywood v. James Washington*, 384 So.2d 1315 (1980)..................32
Collins v. State, 859 So. 2d 1244, 1245 (Fla. 5th DCA 2003).......................18
Dent, 125 So. 3d at 206........................................7, 11, 12, 13, 15
Flansbaum-Talabisco, So. 3d ...............................................11, 13
Johnson v. State 87 So. 2d 206, (Fla. 5th 2008)......................................31
McCray, 121 So. 3d at 603...............................................7, 12
Sneed v. State, 415 So. 2d 887, 890 (Fla. 5th DCA 1982).........................18, 30
State ex rel. Vance v. Wellman, 222 So. 2d 449, 449 (Fla. 2d DCA 1969).....26, 31
**Florida State Statutes**
817.034     (2008)...................................................................5
838.022     (2008)...................................................................5
120.68 ...........................................................................20
112.3173 (5)......................................................................20
944.292(2)........................................................................24

# TABLE OF CONTENTS

AUTHORITIES CITED……………………………………………………..(i)

ISSUES PRESENTED ………………………………………….…...............1

INTRODUCTION…………………………………………….…….…...............2

NATURE OF THE RELIEF SOUGHT ………………………….…….................3

BASIS FOR INVOKING JURISDICTION ………………….……………..…… .4

STATEMENT OF THE FACTS …………………………………….…...............6

SUMMARY OF THE ARGUMENT…..………………….……..…..............20

**A.** **WHETHER WRIT OF QUO WARRANTO SHOULD ISSUE DURING POSTCONVICTION BASED ON VIOLATIONS OF FEDERAL PREEMPTION, LACK OF SUBJECT MATTER JURISDICTION AND LACK OF PERSONAL JURISDICTION.**

**B.** **WHETHER FLORIDA RULE OF CRIMINAL PROCEDURE 3.850 AND FLORIDA RULE OF CRIMINAL PROCEDURE 3.987 OATH OF DEFENDANT IS UNCONSTITUTIONAL AND PROMOTES PERJURY AS OUTLINED IN FSS 837.02 AND FSS 837.06 BECAUSE IT REQUIRES INDIVIDUALS WHO ARE NOT INCARCERATED TO COMMIT PERJURY OR FORFEIT POSTCONVICTION RELFIEF.**

CONCLUSION ………………………………..…………………….……...............36

CERTIFICATE OF SERVICE ………………..……………….…................. 39

CERTIFICATE OF COMPLIANCE ………..…………………….…..............39

## I. INTRODUCITON

The nation is currently undergoing sweeping criminal justice reform. A great deal of the reform is focused on the topic of wrongful conviction. The fact that MCCRAY and others are still fighting for relief in this instant case defies both law and logic.  Sadly, this instant case contains some of the same key ingredients that fashioned, formed and founded the cases involving: *Brown versus Board of Education, Plessy versus Fergusson, Ed Johnson, James Richardson, Frank Lee Smith, the trio of Ed Brown, Arthur Ellington and Henry Shields, the Groveland Four, Central Park Five, the Scottsboro Boys and the Duke Lacrosse Case.*

Albeit, seven Former Palm Beach County Deputy Sheriffs-*the Sacrificial Seven* were maliciously prosecuted, convicted, coerced into to accepting plea deals, imprisoned and denied relief in this instant case, despite the facts that: the High Court gave judicial guidance in the Labor Management Relations Act, and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, the United States Supreme Court ruled unanimously in the cases of *Black and Skilling* that the law against "honest services" fraud is too vague to constitute a crime unless a bribe or kickback was involved, and four members of the *Sacrificial Seven* received *Garrity* Rights-immunity from prosecution during administrative investigations that cleared three of the members of violating sheriff's office policy questions, "*We Who Labor Here Seek Only Truth.*"

2

## II. NATURE OF RELIEF

MCCRAY prays this Court issue the writ of quo warranto postconviction or certify this as an important, unsettled question of federal of law,(1) clarify the law in Florida Criminal Procedure Rule 3.850 and 3.987 oath of defendant for individuals who are not incarcerated, (2) this Court's decision in Case No.: SC13-1974, SC14-1810, SC15-0476, and the Florida Fourth District Court's decision in Case No.: 4D09-0530, 4D14-1868, 4D17-2778 and 4D19-095 created a judicial quagmire that violate the Fifth, Sixth, Eighth and Fourteenth Amendments; and (3) clarify the conflicts with federal preemption outlined in the Labor Management Relations Act (LMRA), 29 U.S.C 185(a) and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.; and (4) conflicts with United States Supreme Court rulings in *Black, Skilling* and *Garrity vs. New Jersey* and forecloses postconviction relief and (5) require Respondent Judge Daliah H. Weiss and Respondent Dave Aronberg State Attorney to show by what authority-they are not in violation of: the Double Jeopardy Clause, *Garrity,* Equal Protection Clause, Fourteenth Amendment Due Process Clause, Preemption Clause, Supremacy Clause along with the Fifth, Sixth, Eighth and Fourteenth Amendments, Florida Constitution Article I, Section 9 and Florida State Statutes Chapter 914.04 as it relates to using immunized information in a criminal prosecution.

3

## III. BASIS FOR INVOKING JURISDICTION

The extraordinary all writs remedy in article V, section 3(b)(7) of the Florida Constitution is limited to use in a very narrow set of circumstances when this Court must prevent a lower court's jurisdictional abuse of process. The constitutional writ "operates as an aid to the Court in exercising its 'ultimate jurisdiction,' conferred elsewhere in the constitution."

Pursuant to Article V, section 3(b)(7), this Court may "issue . . . all writs necessary to the complete exercise of its jurisdiction" and pursuant to Article V, section 3(b)(8), this Court may "issue writs of . . . quo warranto to state officers and state agencies." MCCRAY further invokes this Court jurisdiction pursuant to Fla. R. App. P. 9.130 and 9.140 based on federal preemption.

A writ of quo warranto is a proper remedy for contesting the authority of public officers and agencies to take action in their official capacities. *Crist v. Florida Association of Criminal Defense Lawyers, Inc.*, __ So. 2d __, 33 Fla.L. Weekly S172, S177, n.3 (Fla. March 13, 2008). See also *Martinez v. Martinez*, 545 So. 2d 1338 (Fla. 1989):

> Quo warranto is the proper method to test the "exercise of some right or privilege, the peculiar powers of which are derived from the State." *Winter v. Mack*, 142 Fla. 1, 8, 194 So. 225, 228 (1940). *Compare, e.g., State ex rel Smith v. Brummer*, 426 So. 2d 532 (Fla. 1982) (quo warranto issued because public defender did not have authority to file class action on behalf of juveniles in

4

federal court), *cert. denied,* 464 U.S. 823, 104 S.Ct. 90, 78 L.Ed. 2d 97 (1983); *Orange County v. City of Orlando,* 327 So. 2d 7 (Fla. 1976) (legality of city's actions regarding annexation ordinances can be inquired into through quo warranto); *Austin v. State ex rel. Christian,* 310 So. 2d 289 (Fla. 1975) (power and authority of state attorney should be tested by quo warranto). Testing the governor's power to call special sessions through quo warranto proceedings is therefore appropriate.

*Id.* at 1339.

## IV. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On March 09, 2007, after thoroughly investigating MCCRAY and others, Lieutenant Jones submitted a detailed report to Major Kneisley with findings stating that there was "no justifiable or sound reason to construe that a preponderance of evidence exists which suggests . . . violat[ion] of policy."

On or about March 09, 2007, Lieutenant Eddie Jones' report cleared MCCRAY and others of any potentially criminal conduct or administrative wrongdoing. (". . . I am of the opinion that no definitive evidence exists which suggests Lt. Darrin McCray . . . violated C.O.P. 917.24 sec. (C)(4) (6) (7) (Hospital Security Duty) [that is, the Administrative Policy] . . . or otherwise collectively or single-handedly manipulated the Online Hospital Guard Duty Program for personal gains.") To be sure, that report shows (in a table, under the heading "Finding") that the allegations against MCCRAY were "inconsequential". Major Kneisley,

5

who was Lieutenant Jones' superior, ratified this report the same day, finding the evidence was "weak at best." (*See* App. 1).

MCCRAY and six other Co-Defendants were charged in the same Information that Lieutenant Jones used in his administrative investigation with violating either the Scheme-to-Defraud Statute (F.S. §817.034(4)) or the Official Misconduct Statute (F.S. §838.022), or both of these.

On October 16, 2008, beginning at 12:15 pm hours, in proceedings before the Honorable Judge Lucy Brown, Judge of the Court asked, "Now Mr. Zacks, you would agree with the general proposition that if law enforcement has it, you have it, as a legal objection" (*See* Attached Exhibit-45 p. 33)? On October 16, 2008, in proceedings before the Honorable Judge Lucy Brown, Former Chief Prosecutor Paul Zacks responded, "With very limited exceptions" (*See* App. 2).

On October 16, 2008, in proceedings before the Honorable Judge Lucy Brown, Judge of the Court replied, "Right. You would agree with that. And you would agree that if there is Brady material in that material, the Internal Affairs case, which is apparently the correct number, 0746, that the defense would be entitled to it, right).

On October 16, 2008, in proceedings before the Honorable Judge Lucy Brown, Former Chief Prosecutor responded, "Well, it raises an issue because there's confidentiality, Your Honor."

6

On October 16, 2008, in proceedings before the Honorable Judge Lucy Brown, Judge of the Court asked Former Chief Prosecutor Paul Zacks, "Well, let me ask you a question. With regard to confidentiality, if there was exculpatory Brady material, you would agree that the defense would be entitled to it, right?"

On October 16, 2008, in proceedings before the Honorable Judge Lucy Brown, Former Chief Prosecutor Paul Zacks answered, "Exculpatory? There's a sub-issue that makes it difficult for me to answer that directly because as the Court's aware, for example, if the evidence was obtained by compulsion, they were ordered to give statements, there's a separate issue. There's *Garrity* issue which preclude me and I suppose anybody else from using that in court. But I don't know what's in those files. I assume some of this was compulsive."

On October 31, 2008, Palm Beach County Sheriff's Office Civil Attorneys filed a Petition For Writ of Certiorari in this District Court of Appeal (Case #4D08-4454) regarding Palm Beach County Sheriff's Office Internal Affairs Case Number 2007-046; "On appeal from Circuit Court of the Fifteenth Judicial Circuit, Palm Beach Case Number 50-2008-CF-007611FXXXMB. (*See* App. 3).

A jury trial began on November 12, 2008. On November 21, 2008, jury found MCCRAY guilty. Sergeant Dent one of the six Co-Defendants was charged and convicted of violating the Scheme-to-Defraud Statute (tracking verbatim the language in F.S. §817.034(4)(a)(3)). *See also Dent*, 125 So. 3d at 206.

7

MCCRAY, on the other hand, was charged and convicted of violating both the Scheme-to-Defraud Statute and the Official Misconduct Statute (tracking verbatim the language in F.S. §838.022)). *See also McCray*, 121 So. 3d at 603. Both appealed their convictions to the Fourth District Court.

The Official Misconduct Charges arose from "allegations that MCCRAY and other Sheriff's [Office] employees manipulated the overtime assignment computer system and obtained more hospital guard assignments than allowable under the Sheriff's [Office] policy and the **collective bargaining agreement**." *McCray*, 121 So. 3d at 603.

The Sheriff's Office had control of the "overtime assignments" because that institution "provid[ed] deputies for overtime duty when an inmate or arrested person [was] admitted to the hospital . . . [based on] . . . "established policies, procedures and collective bargaining agreement" designed to "assure broader access to available hospital shifts," subject to constraints limiting the ability of certain employees of the Sheriff's Office "to sign up for shifts in [such] computer system." *Id.* at 603.

In light of his rank, the Sheriff's Office *vested* MCCRAY with administrative privileges to assign Sheriff's Office employees to hospital-shifts, and to sign them up for shifts on such computerized-system ("Innocuous Conduct").

8

On or about January 05, 2009, former trial counsel of record filed a Response to Petition For Writ of Certiorari in the Florida Fourth District Court of Appeal. Following, on or about February 02, 2009, Assistant Attorney General filed "Response to Order to Show Cause" in the Florida Fourth District Court of Appeal.

Furthermore, the during sentencing on February 09, 2009, Trial Court said, *"Essentially, what the jury found, and there was evidence that supported; in this Court's opinion there was substantial competent evidence that supported the jury's finding, that there was an abuse of this overtime system, that people were deprived, people making less money were deprived of the opportunity to earn overtime because of the acts of Darrin McCray.*

The Trial Court stated, *"I don't know what the motive was. There wasn't really any evidence of that and it's not an element to the crime. The State says abuse of power and greed, I agree with the defense that wasn't proved, but the State didn't have to prove that to obtain the jury verdict. The –the State proved the abuse of the overtime."*

On February 13, 2009, MCCRAY appealed the Convictions to the Fourth District Case No.:4D09-0530. He presented the following claims in his initial appellant brief:

9

- TRIAL COURT ERRED IN DENYING APPELLANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL.

- THE TRIAL COURT'S DENIAL OF A NEW TRIAL WHERE THE VERDICT FORM DID NOT MATCH THE CRIMES CHARGED WAS REVERSIBLE ERROR.

- IT WAS FUNDAMENTAL ERROR TO NOT INSTRUCT THE JURY ON THE CRIMES CHARGED.

- DENIAL OF APPELLANT'S MOTION FOR CONTINUANCE ATTRIBUTABLE TO THE STATE WHERE DEFENSE COUNSEL HAD NOT RECEIVED COURT ORDERED MATERIALS AND DID NOT HAVE AN ADEQUATE TIME TO PREPARE FOR TRIAL WAS HARMFUL ERROR.

- THE TRIAL COURT'S ADMONISHMENT OF APPELLANT IN THE JURY'S PRESENCE WAS PREJUDICIAL ERROR INTERJECTING ITSELF INTO THE CONDUCT OF THE TRIAL.

- THE TRIAL COURT ERRED IN PROHIBITING APPELLANT FROM DEPOSING SHERIFF BRADSHAW.

- THE TRIAL COURT ERRED IN PERMITTING JOHN KAZANIJAN TO TESTIFY OVER DEFENSE OBJECTION THAT THE SHERIFF SAID THAT REGULAR RANK OFFICERS WERE TO HAVE PRIORITY IN RECEIVING OVERTIME.

- THE TRIAL COURT ERRED IN PERMITTING JONES TO TESTIFY OVER DEFENSE OBJECTION THAT HE HEARD APPELLANT'S ADMINISTRATIVE RIGHTS WERE SUSPENDED BECAUSE HE WAS TAKING ADVANTAGE OF THE OVERTIME SYSTEM.

10

- EXCLUDING APPELLANT'S PROFFER OF EVIDENCE SHOWING HE WAS INNOCENT BECAUSE MANDATING HOSPITAL OVERTIME WAS A LONG STANDING ADMINISTRATIVELY ACCEPTED PRACTICE AT PBSO WAS REVERSIBLE ERROR.
- THE TRIAL COURT ERRED IN EXCLUDING RELEVANT EVIDENCETHAT IN THE PAST HOSPITAL OVERTIME HAD BEEN MANDATED.
- THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION TO INTERVIEW THE JURORS AFTER CONTACT WITH A STATE ATTORNEY WAS REVERSIBLE ERROR.

On February 06, 2013, a panel of the Fourth District Court of Appeal in *Dent* dismissed the scheme-to-defraud charge against Ms. Dent, holding that the Innocuous Conduct underlying such charge did not constitute a crime. *Dent*, 125 So. 3d. at 206-07(explaining that the State's allegations in the information "did not amount to a crime" because it "failed to prove that [Ms. Dent] obtained 'property' within the meaning of the statute when all the state proved was the inability of other deputies to sign up for the opportunity to obtain overtime.")

On July 24, 2013, the Fourth District Court of Appeals issued the *Flansbaum-Talabisco,* So. 3d (Fla. 4th DCA 2013) decision. *"The court reasoned that in cases involving public corruption, the Eleventh Circuit further elaborated on this point in United States v. Siegelman, 640 F.3d 1159 (11th Cir.2011): No generalized expectation of some future favorable action will do. The official must agree to take*

11

*or forego some specific action in order for the doing of it to be criminal. In the absence of such an agreement on a specific action, even a close-in-time relationship between the donation and the act will not suffice. Id. at 1171 (emphasis added).* That said, *"there is no requirement that this [quid pro quo] agreement be memorialized in a writing, or even be overheard by a third party."* *Id. Although "the agreement must be explicit there is no requirement that it be express."* Id.

On August 07, 2013, a different panel of the Fourth District Court of Appeal dismissed the Scheme-to-Defraud Charge filed against MCCRAY, but affirmed the Official Misconduct Charges without elaboration, other than this vacuous statement:

We affirm his convictions for official misconduct *without further discussion.*

*McCray*, 121 So. 3d at 603. (Italics added.) It did so even though both cases arose from the same operative facts, and MCCRAY preserved the record with several fundamental error claims. As of this date, the State has never mentioned any type of [quid pro] in this instant case, as outlined in *Siegelman*."

MCCRAY then requested a rehearing, clarification and for rehearing en banc. He argued:

- The reversal was based on the District Court's decision regarding MCCRAY's co-defendant in *Dent v. State*, 38 Fla. L. Weekly D287 (Fla. 4th

12

DCA Feb 6, 2013), *review denied,* No. SC13-732, 2013 WL 2221572 (Fla. May 16, 2013), in which the Court held "lost opportunity for other deputies to work for overtime pay. . .simply does not fit the definition of property traditionally used in criminal prosecutions.. . ." *Dent v. State*, 38 Fla. L. Weekly D287 (Fla. 4th DCA Feb 6, 2013), *review denied,* No. SC13-732, 2013 WL 2221572 (Fla. May 16, 2013).

- Dent was a co-defendant charged in the same information as MCCRAY they were charged with the same activities, resulting in alleged violations of Florida Statutes 8383.022 and 817.034.(R 05). MCCRAY's counsel filed a notice of related case, but the cases were decided by separate panels. The decision in *Dent*, was issued after all the briefs were filed in Appellant's case. A notice of supplemental authority was filed in this case after the decision in *Dent* was issued.

- In *Dent*, the Fourth District specifically noted that while the Palm Beach County Sheriff's Office policy and practices were violated, the activity in question did not violate the law. Section 838.022 requires corrupt intent to obtain a benefit or cause harm to another. As to a benefit, it must be a benefit prohibited by law. *See State v. Flansbaum-Talabisco,* __ So. 3d ___ (Fla. 4th DCA 2013.

13

- Furthermore, the portion of the decision upholding the counts of official misconduct is erroneous because the jury's verdict found MCCRAY guilty of official misconduct as charged against other defendants. The jury found "As to Count II, we find the Defendant-MCCRAY Guilty of OFFICIAL MISCONDUCT, as contained in the Information." (R 945) (emphasis added). The District Court overlooked that count two of the information alleged that "SANDRA NEALY on or about August 31, 2006, in the County of Palm Beach and State of Florida, while a public servant" violated F.S. 838.022 (organized scheme to defraud). R 2 (emphasis added). MCCRAY is not SANDRA NEALY. The jury found "As to Count III, we find the Defendant Guilty of OFFICIAL MISCONDUCT, as contained in the Information." (R 945) (emphasis added). The jury made the same finding of guilt against MCCRAY as charged for crimes as contained in the Information and alleged to have been committed on different dates by SANDRA NEALY in counts three through ten. (R 2, 945-946). MCCRAY is not and never has been SANDRA NEALY. It is erroneous to convict a defendant-MCCRAY for crimes alleged and found to have been committed by another person.

- MCCRAY cannot be guilty of official misconduct because the facts showed he was authorized to put his own name and the names of others for overtime.

14

(T 799, 861, 1027). Lieutenants selected names from a drop down list available on the computer system and MCCRAY was not responsible for removing these names. (T 1356). MCCRAY would not have known that these officers were retired. (T 792). In fact, the testimony was that it was not thought to be improper to put the names of others in the computer. (T 881). It was not unlawful to enter the names from the computer's drop down list. *Dent v. State*, 38 Fla. L. Weekly D287 (Fla. 4th DCA Feb 6, 2013), *review denied,* No. SC13-732, 2013 WL 2221572 (Fla. May 16, 2013). Using the department's own list is not the same as to "falsify" an official record or official document under Florida Statute 838.022.

- The decision affirming the counts of misconduct overlooks that the State's evidence contradicted the bill of particulars and information for the official misconduct charges against MCCRAY.

On September 26, 2013, MCCRAY's motion for rehearing, clarification and rehearing en banc was denied. On October 7, 2013, Assistant Attorney General filed a Notice of Discretionary Jurisdiction to this Court (SC13-1974). On October 09, 2013, MCCRAY by and through former counsel of record filed a Notice of Discretionary Jurisdiction Case No.: SC13-1974.

15

On July 03, 2014, this Court issued, *"This cause having heretofore been submitted to the Court on jurisdictional briefs and portions of the record deemed necessary to reflect jurisdiction under Article V, Section 3(b), Florida Constitution, and the Court having determined that it should decline to accept jurisdiction, it is ordered that the petition for review is denied. No motion for rehearing will be entertained by the Court. See Fla. R. App. P. 9.330(d)(2)."*

On July 7, 2014, this Court Denied Notice of Discretionary Jurisdiction. On September 16, 2014, MCCRAY, filed a combined an emergency petition for writ of prohibition and for a writ of mandamus ("Combined Writ-Petition") in order to quash the deplorably poor decision of the Fourth District Court of Appeal ("Fourth District") in this Court Case No.: SC14-1810.

On September 18, 2014, the Resentencing Court held a full evidentiary hearing to ascertain whether any Mitigating Factors existed that would support a downward departure from the sentencing score-sheet and guidelines. The Resentencing Court was presented with the lack of subject matter jurisdiction issue that arose from MCCRAY'S *Garrity* Rights-Immunity.

On October 10, 2014, MCCRAY, by and through former counsel filed a Motion For Post Conviction Relief. On October 10, 2014, after determining that a downward departure was not appropriate, MCCRAY was sentenced to 17.1 months in the Department of Corrections for violating the Official Misconduct

16

Statute. On or about October 15, 2014, former counsel filed a Notice of Voluntary Withdrawal **without** MCCRAY'S knowledge.

On October 20, 2014, this Court denied the emergency combined writ and stated, *"To the extent that petitioner seeks a writ of prohibition, the petition is hereby denied because petitioner has failed to demonstrate that a lower court is attempting to act in excess of its jurisdiction. See Mandico v. Taos Constr., Inc., 605 So. 2d 850 (Fla. 1992); English v. McCrary, 348 So. 2d 293 (Fla. 1977). To the extent that petitioner seeks a writ of mandamus, because petitioner has failed to show a clear legal right to the relief requested, he is not entitled to mandamus relief. Accordingly, the petition for writ of mandamus is hereby denied. See Huffman v. State, 813 So. 2d 10, 11 (Fla. 2000). All pending motions are hereby denied. No rehearing will be entertained by this Court."*

On March 23, 2015, MCCRAY, by and through former counsel, filed an *Amended Petition for Writ of Habeas Corpus* in this Court, *see McCray v. Jones,* SC15-476 ("State Habeas Appeal"). On May 20, 2015, this Court issued, *"Petitioner has filed a petition for writ of habeas corpus. To the extent the petition challenges Petitioner's conviction and sentence, the petition is hereby dismissed without prejudice to file a motion for postconviction relief in the appropriate circuit court. To the extent the petition seeks review of the Fourth District Court of Appeal's decision in McCray v. State, 121 So. 3d 603 (Fla. 4th DCA 2013), the*

17

*petition is hereby denied. See Collins v. State, 859 So. 2d 1244, 1245 (Fla. 5th DCA 2003) ("Habeas corpus proceedings are intended to test the legality of the petitioner's detention and to secure his or her release if the detention is illegal."); see also Sneed v. Mayo, 69 So. 2d 653, 654 (Fla. 1954) (the purpose of a writ of habeas corpus is to inquire into the legality of a prisoner's detention)."*

On September 08, 2015, MCCRAY filed, *pro se*, his application for a writ of habeas corpus in the Florida Southern District ("Federal Habeas Petition"), alleging violations of his federal constitutional rights. His Federal Habeas Petition is based on the State Habeas Appeal that he filed in this Court.

On March 31, 2016, Florida Southern District entered an *Order of Recusal* that MCCRAY filed *pro se*, because his former counsel of record refused to file a Motion for Disqualification. On April 01, 2016, one day after the Order of Recusal, Florida Southern District entered a *Report Recommending That §2254 Petition for Writ of Habeas Corpus Be Denied.*

On August 15, 2016, MCCRAY filed Florida Rule of Criminal Procedure 3.850. On or about December 12, 206, the Trial Court issued, *"Order Denying Defendant's Pro Se Motion For Post Conviction Relief.* On or about January 09, 2017, the Trial Court issued, *"Order Denying Defendant's Pro Se Motion To Enlarge Time To Refile Response As Moot."*

18

On August 29, 2017, MCCRAY filed a petition for a combined writ of prohibition and writ of quo warranto in the Fourth District Court of Appeal Case No.: 4D17-2778. On October 23, 2017, the Fourth District Court of Appeal issued, *"ORDERED that petitioner's October 16, 2017 Motion for Leave to File an Amended Initial Brief is denied as moot. No initial brief is permitted in this original writ proceeding. See Fla. R. App. P. 9.100; further, ORDERED that the petition filed August 29, 2017 is denied. The petition states no basis for a writ of quo warranto, and petitioner's attempt at raising a postconviction challenge directly in this Court through an extraordinary writ proceeding is unauthorized. See Baker v. State, 878 So. 2d 1236 (Fla. 2004). To the extent the petition seeks a writ of prohibition seeking to disqualify the trial judge, the petition states no basis for relief and is denied on the merits. Petitioner is cautioned that frivolous or abusive filing may result in sanctions. See State v. Spencer, 751 So. 2d 47 (Fla. 1999).*

On November 06, 2017, MCCRAY filed a request for a motion for rehearing and clarification "Subject Matter Jurisdiction". MCCRAY raised, *"Whether the Trial Court lacks subject matter jurisdiction in the current Combined Florida Rule 3.800 and 3.850 postconviction proceeding? Whether MCCRAY can raise his subject matter jurisdiction claim in a writ of quo warranto during postconviction? Whether the State Board of Administration has subject matter jurisdiction under*

19

*Florida State Statutes § 120.68 to adopt and incorporate its Final Order the Conclusions of Law under Florida State Statutes § 112.3173 (5)? Whether the Trial Court erred in denying the motion for disqualification?"*

On November 28, 2017, the Fourth District Court of Appeal issued, *"ORDERED that the appellant's November 6, 2017 motion for rehearing and clarification is denied."* On December 27, 2017, MCCRAY filed a Motion For Rehearing and Request Certifying Question. On January 16, 2018, the Fourth District Court of Appeal issued, *"ORDERED that the appellant's December 19, 2017 motion to transfer state court records to federal court is denied as unauthorized; further, ORDERED that the appellant's December 27, 2017 motion for reconsideration and certifying question is denied."*

## V. SUMMARY OF ARGUMENT

A. WHETHER WRIT OF QUO WARRANTO SHOULD ISSUE DURING POSTCONVICTION BASED ON VIOLATIONS OF FEDERAL PREEMPTION, LACK OF SUBJECT MATTER JURISDICTION AND LACK OF PERSONAL JURISDICTION.

This instant case was birthed out of: (1) The Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) and includes (2) The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001. In this case, the undisputed statement presented during trial by Sergeant John Kazanjian-President of the Palm Beach County Police Benevolent Association confirms this fact:

20

A. [W]e had our first collective bargaining agreement in 2004 and it was implemented before that. So, from a past practice it just got absorbed in.

. . .

Q. But that policy . . . was amended by way of negotiations with the union, correct?

A. Oh, every policy that has to deal with . . . work performance comes through the union.

. . .

Q. [W]ho can work overtime and how much overtime they can work, that's a matter of a contract that the union has with the sheriff, correct?

A. Correct.

Q. And the policy that is derived from that contract with the union that regulates hospital guard duty, that policy is not state law, correct?

A. No, that's not state law.

No. That's just a policy.

Sergeant Kazankian's statement proves that the Innocuous Conduct is a Mandated Policy that emanates from, and is governed by, the Palm Beach County Sheriff's Office Corrections Collective-Bargaining Agreement.

MCCRAY understands that according to Florida law a "defendant may not utilize the extraordinary writ of quo warranto as a post-conviction safety net to challenge the authority of the prosecuting authority or judge when the outcome of the trial was not as he expected or hoped for" or the defendant waived his right to challenge defect in the circuit court or during the course of the trial. *See* Card, 497 So. 2d 1169; Carey, 349 So. 2d 820.

21

MCCRAY unlike in *Hollis v. Davis*, 941 F.2d 1471, 1475 (11th Cir. 1991) (emphasis added), challenged the constitutionality of his claims, and the authority of the prosecuting authorities and judges at appropriate stages of state review, and such challenges have been repeatedly denied, therefore, MCCRAY is now entitled to have the writ of quo warranto issued, because he has been denied all other forms of relief to include writs in this Court that involves preemption, lack of subject matter jurisdiction and lack of personal jurisdiction.

MCCRAY'S challenge to the authority of a judge or prosecutor has two requirements. First, it must be timely, and secondly, it must be brought by a direct quo warranto proceeding. Notably, MCCRAY'S request for writ relief questions:

- The validity of a state statute-Florida Rule of Criminal Procedure 3.850 and Florida Rule of Criminal Procedure 3.987.

- A provision of the state-Article 1 of the Florida constitution, and the Fifth, Sixth, Eighth, Fourteenth Amendments and U.S. Constitution.

- The affects on a class of constitutional and state officers-Palm Beach County Deputy Sheriff's.

- Conflicts with decisions of district courts and this Court.

  The orders and judgments by the trial court and district court that require immediate resolution by this Court, and is of great public importance, is of first impression and have far reaching effect on the

22

proper administration of justice, especially, the proper administration of justice during postconviction relief regarding Florida Rule of Criminal Procedure 3.850, Florida Rule of Criminal Procedure 3.987, Florida Rules of Civil Procedure 1.140(b)(1),1.140(h)(2), Florida Rules of Civil Procedure 1.1540(b)(4), Florida Rules of Civil Procedure 1.540 and Florida Rules of Criminal Procedure 3.190.

- This Court's controlling precedents on federal preemption, lack of subject matter jurisdiction, lack of personal jurisdiction and immunity. MCCRAY'S claim of lack of personal jurisdiction may require further clarification. How can a lack of personal jurisdiction claim be denied when it is intertwined with a lack of subject matter jurisdiction claim that can be raised at any time?

Did the Trial Court abuse its discretion when it:

- Failed to schedule a hearing and/or respond to MCCRAY'S Motion To Dismiss Relief From Judgment Decrees Or Orders, Affirmative Defense, Request For Leave To File Florida Rule 3.190 Motion To Dismiss And Memorandum Of Law (DE 542).

- Failed to schedule a hearing and/or respond to MCCRAY'S Motion Request For Leave To File Amended Motion To Strike State's Response To The Defendant's Pro Se Combined Fourth Amended Motion For Post Conviction

23

Relief, Affirmative Defense, Florida Rule 3.190 Motion To Dismiss And Incorporate Memorandum Of Law (DE 547).

- Denied MCCRAY'S Verified Motion To Disqualify (DE 550 & DE 551).

- Denied MCCRAY'S Motion To Request Leave To File Amended Verified Motion To Disqualify Trial Judge (De 552 & DE 553).

- Denied MCCRAY'S Motion For Reconsideration To Appoint Visiting Judge And Request For Hearing (DE 554 & 555). (See App 6).

- Failed to answer and respond to MCCRAY'S Combined Motion For Clarification And Motion To Take Judicial Notice And Incorporate Memorandum of Law (DE 556); that outlined:

  - 13. Thus, Article I, section 21 of the Florida Constitution establishes that the courts will be open and accessible to citizens to address all legitimate grievances. Art. I, § 21, Fla. Const. Section 944.292(2), Florida Statutes, specifically provides that the suspension of a prisoner's civil rights shall not be construed to deny a convicted felon access to the courts, as guaranteed by s. 21, Art. I of the State Constitution until restoration of his civil rights. § 944.292(2), Fla. Stat.

  - 14. The Florida Supreme Court, in *Wilson v. Salamon*, 923 So. 2d 363 (Fla. 2005), noted that the constitutional right to access to courts gives rise to two concerns: first, that cases are resolved on the merits; and second, that "the resolution of cases on the merits is not impaired by the processing of cases without merit or cases that are filed and then abandoned in the system."

  - 15. When a trial court refuses to allow a Defendant an opportunity to schedule a hearing on a pending Motion post conviction, the trial court has and is depriving the defendant of the Fourteenth Amendment's Due Process Clause of

24

fundamental fairness. See *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987) (requiring a state's post conviction proceeding to comport with "fundamental fairness mandated by the Due Process Clause"). Oddly, MCCRAY feared these egregious due process violations would be committed against him post conviction by this Court.

- 16. On August 23, 2018, MCCRAY filed a Motion For Clarification (DE 549).

- 17. First and foremost, McCray would like to thank the Court for this generous offer and opportunity to amend the Post Conviction Relief Motion. However, McCray prays this Court understands that he has filed each amended motion in good faith.

- 18. On November 29, 2015, McCray was released from the Florida Department of Corrections. McCray's September 01, 2017, Post Conviction Relief Motion is absent the following: "Administrative sanctions from the Department of Corrections, including forfeiture of gain time if this motion is found to be frivolous or made in bad faith. I had the motion read to me, or the foregoing motion was translated completely into a language which I understand and read to me by.... (name)....., whose address is ...., and whose certification of an accurate and complete translation is attached to this motion."

- 19. Nevertheless, McCray is respectfully requesting the Court clarify its order, so he can become complaint.

- Failed to docket and respond to MCCRAY's Motion For Post Conviction Relief (DE 559). According to the Clerk, **"The motion was lost!"**

- Forced MCCRAY to refile Duplicate Motion For Post Conviction Relief (DE560). (See App 4).

25

MCCRAY is not engaging in fortune-telling or mind reading, but he believes the Trial Court will continue to abuse its discretion, which is the reason he is requesting this Court issue the writ postconviction in this instant birthed out of federal preemption?

This Court has the power to reverse the Trial Court and its decision based on abuse of discretions. See *Mercer v, Raine, 442 So. 443 So. 2d 944 (Fla. 1983)*. The test for whether discretion has been abused is one of reasonableness-that is "of reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." See *Canakaris v. Canakaris 382 So. 2d 1197 1203 (Fla. 1980) and Deina v. Market Ry. Co., 124 F. 2d 965, 967 (9th Cir. 1942)*.

MCCRAY's challenge to the authority of a judge or prosecutor has two requirements. First, it must be timely, and secondly, it must be brought by a direct quo warranto proceeding. Ordinarily, this should first be presented to the circuit court. See *State ex rel. Vance v. Wellman*, 222 So. 2d 449, 449 (Fla. 2d DCA 1969).

As a matter of great public importance and first impression MCCRAY asserts five compelling reasons that both Respondents, and the Fourth District have misapplied, misapprehended and clearly overlooked. Accordingly Former Chief Prosecutor Paul Zacks pointed out, On October 16, 2008, in proceedings before the

26

Honorable Judge Lucy Brown, when he stated, "Exculpatory? There's a sub-issue that makes it difficult for me to answer that directly because as the Court's aware, for example, if the evidence was obtained by compulsion, they were ordered to give statements, there's a separate issue. There's *Garrity* issue which preclude me and I suppose anybody else from using that in court. But I don't know what's in those files. I assume some of this was compulsive."

First, at that very moment when Former Chief Prosecutor Paul Zacks questioned the *Garrity* issue, the Trial Court and Zacks were required to conduct a *Kastigar* Hearing. *See Kastigar*, 406 U.S. at 452-53. Instead Zacks and the Trial Court engaged in fraudulent concealment with the Palm Beach County Sheriff's Office Civil Attorneys by hiding Palm Beach County Sheriff's Office Internal Affairs Investigation Case No.: 2007-046.

Next, the Respondents engaged in the **doctrine of fraudulent concealment** and were (1) successful in concealment of the cause of action; (2) used fraudulent means to achieve that concealment and (3) MCCRAY exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim. See *Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809, 811-12 (Fla. Dist. Ct. App. 1995).

27

Does Respondents' current actions of locking this instant case on the docket, denying MCCRAY'S motions to unlock the case on the docket, refusing to schedule hearings and/or hear this instant case on the merits also constitute fraudulent concealment?

On October 31, 2008, Palm Beach County Sheriff's Office Civil Attorneys filed a Petition For Writ of Certiorari in this District Court of Appeal (Case #4D08-4454) regarding Palm Beach County Sheriff's Office Internal Affairs Case Number 2007-046; "On appeal from Circuit Court of the Fifteenth Judicial Circuit, Palm Beach Case Number 50-2008-CF-007611FXXXMB.

On or about January 05, 2009, former trial counsel of record filed a Response to Petition For Writ of Certiorari in the Florida Fourth District Court of Appeal. Following, on or about February 02, 2009, Assistant Attorney General filed "Response to Order to Show Cause" in the Florida Fourth District Court of Appeal. On or about February 18, 2009, the Fourth District Court ordered the Writ of Certiorari dismissed as moot and ordered the respondent's motion for extension of time be moot.

Now, the Eleventh Circuit has explained that "[f]raudulent concealment requires the defendants to engage in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) (citing Berisford, 667 So. 2d at 811). The

28

Respondents were successful in preventing MCCRAY and others from obtaining Palm Beach County Sheriff's Office Internal Affairs Investigation Case Number 2007-046, which as Zacks stated contained, "Exculpatory-*Brady*" material. Thus, Respondents misapply, misapprehend and clearly overlook *Brady*.

Secondly, both Respondents continue to misapply, misapprehend and clearly look that use immunity prevents the prosecution from making use of the testimony and any evidence derived therefrom against the witness in a Criminal trial. *See Kastigar,* 406 U.S. at 452-53 and *See Abbott v. State,* 438 So.2d 1025, 1026 (Fla. 1st DCA 1983).

Furthermore, the Respondents actions remain in express and direct conflict with what, the Ninth Circuit held that the prosecution must prove that each matter admitted into evidence "is derived from a source independent of the immunized testimony., *United States v. Koon,* 4 F.3d 1416,1431 (9th Cir. 1994) (Rodney King case).

Thirdly, both Respondents misapprehending misapplying and clearly overlooking federal preemption is an abuse of discretion and abuse of their authority. The Respondents actions are in express and direct conflict with the fact that both the state and the federal governments are "prohibited from making any such *use of compelled testimony and its fruits." Murphy,* 378 U.S. at 79, 84 S.Ct. at 1609, 12 L.Ed.2d at 695 (e.s.).

29

Fourth, in 4D17-2778, MCCRAY requested a combined writ of quo warranto and writ of prohibition with the Fourth District. Consequently, the Fourth District cited *Baker v. State,* 878, So. 2d 1236 (Fla. 2004) as its reason for denying MCCRAY'S writ of quo warranto. Nevertheless, Baker remains inapposite to this instant case, because Baker did not assert a (1) federal preemption claim involving the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.; and (2) United States Supreme Court rulings in *Black, Skilling* and (3) *Garrity vs. New Jersey* along with a (4) and lack of subject matter jurisdiction.

In *Carey v. State,* 349 So. 2d 820 (Fla. 3d DCA 1977), the defendant challenged, on direct appeal, the denial of his motion to dismiss on the ground that the assistant state attorney lacked the legal authority to sign the information. The court refused to pass upon this argument, stating "The law is clear in this state that when the power and authority of an assigned state attorney is tested, it should be done in direct proceedings by quo warranto, and not by appeal." Id.at 822. Noting that it saw no reason why a quo warranto proceeding could not have been utilized, the court concluded that the defendant waived his right to have this argument reviewed on appeal. Id.; see also *Snead v. State*, 415 So. 2d 887, 890 (Fla. 5th DCA 1982).

30

Notably, the Fifth District Court of Appeal is in direct and express conflict with the Second and Third Districts Court of Appeal in *State ex rel. Vance v. Wellman,* when it opined, "Furthermore, a defendant may not utilize the extraordinary writ of quo warranto as a postconviction safety net to challenge the authority of the prosecuting authority or judge when the outcome of the trial was not as he expected or hoped for." *See Johnson v. State* 87 So. 2d 206, (Fla. 5th 2008).

The Fifth District's ruling does not provide an opportunity for the five compelling reasons MCCRAY outlined in this instant petition. This Court locked the gate on postconviction relief for individuals similarly situated like MCRAY, because this Court knew that an affirmative expressed opinion that a writ of quo warranto was an appropriate method to seek postconviction relief and if granted would become the proverbial, "Letting the dogs out of the gate in *Gef!ken v. Strickler,* 778 So. 2d 975, 976 n.1 (Fla. 2001).

Thus, the Second, Third, Fifth and Fourth District in 4D17-2778 along with this Court ruling in *Gef!ken v. Strickler,* conflicts with *United States v. Hubbell,* 530 U.S. 27 (2000). "Use of immunized testimony or evidence is subject to dismissal.

31

On October 11, 2017, MCCRAY received a Final Order indicating his Florida Retirement System Investment Plan Account benefit is forfeited based on Section 112.3173, Florida Statutes by having been found guilty of nine felony counts of Official Misconduct under Section 838.022, Florida Statutes, which convictions were affirmed on appeal." (See App 5).

Fourthly, a subject matter jurisdiction claim of law is viewed de novo. *See Lovett v. Lovett* 93 Fla. 611, 112 So. 768 (1927), and the defense of subject matter jurisdiction can be raised at any time Fla. Rules of Civil Procedure 1.140(h) (2). The Florida Retirement System Investment Plan Account is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.

Lastly, it was fundamental error for the State Board of Administration to forfeit MCCRAY'S retirement account based on federal preemption and *Garrity*. See *City of Hollywood v. James Washington*, 384 So.2d 1315 (1980) and *Boca Burger, Inc. v. Forum*, 912 So. 2d 561, 568 (Fla. 2005).

MCCRAY request this Court issue the writ of quo warranto based on five compelling reasons that this Court should consider. These five compelling reasons show that both Respondents lack subject matter jurisdiction and lack personal jurisdiction in this instant case, and that the denial by the Fourth District misapprehends, misapplies and clearly overlooks and is in direct and express conflict with well established federal postconviction law and state postconviction

32

law regarding when MCCRAY can raise a fundamental error claim to include but not limited to: federal preemption, a constitutionally vague state statute, immunity, lack of subject matter jurisdiction and lack of personal jurisdiction. See *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987) (requiring a state's post conviction proceeding to comport with "fundamental fairness mandated by the Due Process Clause").

**B**. WHETHER FLORIDA RULE OF CRIMINAL PROCEDURE 3.850 and FLORIDA RULE OF CRIMINAL PROCEDURE 3.987 OATH OF DEFENDANT IS UNCONSTITUTIONAL AND PROMOTES PERJURY AS OUTLINED IN FSS 837.02 AND FSS 837.06 BECAUSE IT REQUIRES INDIVIDUALS WHO ARE NOT INCARCERATED TO COMMIT PERJURY OR FORFEIT POSTCONVICTION RELFIEF.

MCRRAY has filed five amended Florida Rules of Criminal Procedure 3.850 and two motions for clarification in an effort to ascertain his concern regarding the: May 10, 2018 revision in Florida Rule of Criminal Procedure 3.850 and 3.987. Both Respondents continue denying MCCRAY relief, because he is not allegedly comporting with the Florida Rules of Criminal Procedure 3.850 paragraphs **c** and **n** or paragraph **g** in the Florida Rule of Criminal Procedure 3.987, "*g) that you are subject to sanctions, whether imposed by the court or administratively by the Department of Corrections, including but not limited to forfeiture of gain time, if your motion is found to be frivolous, malicious, or otherwise made in bad faith or with reckless disregard for the truth.*"

33

MCCRAY has repeatedly tried to explain and seek clarification from the Trial Court that he is no longer incarcerated within the Florida Department of Corrections and for him to comport with paragraph **g** in the 3.987 is committing perjury and violating the oath of defendant. However, Respondent Dave Aronberg continues to deny MCCRAY'S Florida Rule of Criminal Procedure 3.850 based on MCCRAY'S alleged failure to comport with 3.850 paragraph **c, n** and 3.987 paragraph **g**.

On or about December 12, 2016, the Court Ordered and Adjudged that the Defendant's pro se Motion for Post Conviction Relief is hereby Dismissed, without prejudice to refile upon compliance with Rule 3.850. On or about February 14, 2017, the Court Dismissed the Motion, as it failed to comport with the oath requirement pursuant to Florida Rules of Criminal Procedure 3.850©. On or about July 14, 2017, the State filed a response indicating the Motion fails to comport with the mandatory requirements of Florida Rule of Criminal Procedure 3.850 © and (n).

On or about July 26, 2017, the Court Dismissed the Motion, without prejudice to refile upon compliance with Rule 3.850. MCCRAY has repeatedly filed. "The motion comports with the mandatory requirements of Florida Rule of Criminal Procedure 3.850 © and (n). The defendant has read this motion, understands it contents, all of the facts stated therein are true and correct, it is filed

34

in good faith and with a reasonable belief that it is timely filed, has potential merit, and does not duplicate previous motions that have been disposed of by the Court, and the defendant understands English or under penalities of perjury, I declare that I have read and prepared the foregoing document tilted Motion For Post-Conviction Relief and that I have personal knowledge of the facts stated in it and can attest that those facts are true and correct to the best of my knowledge. I am not incarcerated within the Florida Department of Corrections, and I both read and write in the English language.

This Court, in *Wilson v. Salamon*, 923 So. 2d 363 (Fla. 2005), noted that the constitutional right to access to courts gives rise to two concerns: first, that cases are resolved on the merits; and second, that "the resolution of cases on the merits is not impaired by the processing of cases without merit or cases that are filed and then abandoned in the system." This instant case has not been resolved on the merits.

The original Trier of facts said, *"Essentially, what the jury found, and there was evidence that supported; in this Court's opinion there was substantial competent evidence that supported the jury's finding, that there was an abuse of this overtime system, that people were deprived, people making less money were deprived of the opportunity to earn overtime because of the acts of Darrin McCray.*

35

The original Trier stated, *"I don't know what the motive was. There wasn't really any evidence of that and it's not an element to the crime. The State says abuse of power and greed, I agree with the defense that wasn't proved, but the State didn't have to prove that to obtain the jury verdict. The –the State proved the abuse of the overtime."* Yet, MCCRAY'S attempts to overturn, "I don't know what the motive was, and there wasn't really any evidence of that and wasn't an element to crime", landed him in prison and authoring this fourth request for a writ to this Court postconviction. See *In re Winship*, cited infra at 41, 397 U.S. at 364 (requiring the State to adduce proof beyond a reasonable doubt for each statutory element).

## VI. CONCLUSION

This instant case presents prima facie evidence that MCCRAY was systematically targeted by those acting under the color of law. The irreparable harm MCCRAY has undergone at the hands of those who took an oath to protect and promote justice is criminal according to Section 242 of Title 18 and, "makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States."

For the purpose of Section 242, acts under "color of law" include acts not only done by federal, state, or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority, if the acts are done

36

while the official is purporting to or pretending to act in the performance to act in the performance of his/her official duties."

In sum, the Respondents abuse of discretion and abuse of authority are furthering this manifest injustice. See *This That & the Other Gift & Tobacco, Inc. v. Cobb County. Ga.*, 439 F.3d 1275, 1283-84 (11th Cir. 2006) and *Hill*, 368 U.S. at 428, 82 S. Ct. at 471). The Double Jeopardy Clause, *Garrity*, Equal Protection Clause, Fourteenth Amendment Due Process Clause, Preemption Clause, Supremacy Clause along with the Fifth, Sixth, Eighth and Fourteenth Amendments are particularly instructive herein, this Court has inherent authority to issue the writ, properly respond to an important, unsettled question of federal law, clarify the law in Florida Criminal Rule of Procedures 3.850 and 3.987, resolve the judicial quagmire that conflicts with the Fifth, Sixth, Eighth and Fourteenth Amendments and federal preemption outlined in the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.; along with the United States Supreme Court rulings in *Black, Skillings* and *Garrity*.

Wherefore, MCCRAY prays this Court issue the writ of quo warranto postconviction , a writ for relief and/or certify this as an important, unsettled question of federal law,(1) clarify the law in Florida Criminal Procedures Rule 3.850 and 3.987 oath of defendants for individuals who are not incarcerated.

Respectfully Submitted,

DARRIN MCCRAY, pro se
P.O. Box 1172
West Palm Beach, Fl 33041

38

## CERTIFICATE OF SERVICE

MCCRAY certifies that, on July 01, 2019, a true and correct copy of this

**Amended** *Emergency Writ* has been furnished by Certified U.S. Postal mail to

the persons set out in the Service List below, and that, on this same date, the

original has been filed electronically with the clerk of this Court via Florida's e-

filing portal.

**SERVICE LIST**
State Attorney Elect Dave Aronberg Certified Mail **7018-3090-0001-1445-7242**
401 N Dixie Hwy
West Palm Beach, Florida 33401

Judge Daliah H. Weiss Certified Mail **7018-3090-0001-1445-7235**
205 N Dixie Hwy,
West Palm Beach, FL 33401

Mark J. Hamel, Assistant Attorney General 1515
N Flagler Dr.
West Palm Beach, Florida 33401

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that this Petition has been prepared using Times

New Roman 14 point font and is otherwise in compliance with the type and font

requirements of FRAP Rule 9.100(l).

DARRIN MCCRAY, *pro se*

39

Exhibit O

**EXHIBIT O**

# IN THE DISTRICT COURT OF APPEAL
# FOURTH DISTRICT, STATE OF FLORIDA

## Case No.: 4D17-2778
## Lower Tribunal Case No.: 2008CF007611FXX

### DARRIN L. MCCRAY,

*Petitioner, pro se*

v.

### STATE OF FLORIDA,

*Respondent.*

## On Petition for Writ of Prohibition From the Circuit Court of the Fifteenth Judicial Circuit, In and For Palm Beach County

## MOTION FOR REHEARING AND CLARIFICATION

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

MOTION FOR REHEAING ANDCLARIFICATION...................................1
BASIS FOR INVOKING JURISDICTION.................................................1
STATEMENT OF FACTS...........................................................................2

NATURE OF RELIEF SOUGHT ................................................................3

SUMMARY OF ARGUMENT ....................................................................3

REHEARING AND CLARIFICATION QUESTIONS..............................4

1.    Whether the Trial Court Lacks Subject Matter Jurisdiction?...........................4

2.    Whether Petitioner can raise a subject matter jurisdiction claim in a writ of quo warranto during postconviction?...........................................6

3.    Whether the State Board of Administration lacks subject matter jurisdiction under Florida Statues 120.68 and 112.3173 (5)?..............................9

4.    Did Trial Court err in denying Petitioner's motion for disqualification?......10

CONCLUSION...........................................................................................11

APPENDIX.................................................................................................12

CERTIFICATE OF SERVICE...................................................................13

# TABLE OF AUTHORITIES

|  | Page(s) |
|---|---|
| **Cases** |  |
| Amendments |  |
| Fifth Amendment | 2 |
| Sixth Amendment | 2 |
| Eighth Amendment | 2 |
| Fourteenth Amendment | 2 |
| Double Jeopardy Clause |  |
| Federal Doctrines |  |
| Fourteenth Amendment Due Process Clause | 2 |
| Equal Protection Clause | 2 |
| Supremacy Clause (Article VI, Clause 2) | 2 |
| Equal Protection Clause | 2 |
| Federal Law |  |
| Garrity v. New Jersey | 5, 11 |
| *Hill,* 368 U.S. at 428, 82 S. Ct. at 471) | 11 |
| *Kastigar v. United States*, 406 U.S. 441 (1972) | 5 |
| Murphy, 378 U.S. at 79, 84 S.Ct. at 1609, 12 L.Ed.2d at 695 (e.s.) | 6, 7 |
| *United States v. Ball*, 163 U.S. 662, 669 | 4 |
| United States v. Hubbell, 530 U.S. 27 (2000) | 8 |

*This That & the Other Gift & Tobacco, Inc. v. Cobb County. Ga.*, 439 F.3d 1275, 1283–84 (11th Cir. 2006)                                                  11

United States v. Koon, 4 F.3d 1416,1431 (9th Cir. 1994)                          5

United States v. Veal, 153 F.3d 1233, 1241 n.7 (11th Cir. 1998)                  5

Florida Supreme Court

*Baker v. State*, 878, So. 2d 1236 (Fla. 2004)                                   7, 9

*English v. McCrary*, 348 So.2d 293, 296 (Fla. 1977)                             1

Department of Public Safety v. Koonce, 147 Fla. 616, 3 So. 2d 331 (1941)         1

*Geffken v. Strickler*, 778 So. 2d 975, 976 n.1 (Fla. 2001)                      8

*Lovett v. Lovett* 93 Fla. 611, 112 So. 768 (1927)                               10

*State v. Andrews, 113 So.2d 701, 702 (Fla.1959)*                                9

First District

*Abbott v. State*, 438 So.2d 1025, 1026 (Fla. 1st DCA 1983)                      5

*Carnegie v. State*, 564 So. 2d 233, 234 (Fla. 1stDCA 1990)                      2

*Florida Export Tobacco Co. v. Dep't of Revenue,* 510 So.2d 936, 943 (Fla. 1st DCA, 1987),                                                                  6

*Jacobsen v. Ross Stores*, 882 So.2d 431 (Fla. 1st DCA 2004)                     5

*Livingston v. State*, 858 So. 2d 353, 354 (Fla. 1st DCA 2003).                  1

*Miller v. State*, 988 So.2d 138, 139 (Fla.1st DCA 2008)                         2, 8

*State ex rel. Wilhoit v. Wells,*

356 So.2d 817, 821–22, 825 (Fla. 1st DCA 1978)　　　　4

*Taylor v. State*, 65 So.3d 531, 533 (Fla. 1st DCA 2011)

*Walt v. Walt*, 574 So.2d 205 (Fla. 1st DCA 1991)　　　　9

*Zuluaga v. State, Dep't. of Corrs.*, 32 So.3d 674, 677 (Fla. 1st DCA 2010) 10

Second District

84 *Lumber Co. v. Cooper*, 656 So. 2d 1297 (Fla. 2nd Dist. Ct. App. 1994)　　9

*Fountaine v. State*, 460 So.2d 553 (Fla. 2d DCA 1984)　　　　10

*Jassan v. State*, 749 So. 2d 511, 512 (Fla. 2d D.C.A. 1999).　　　　7

*Moody v. State*, 931 So.2d 177 (Fla. 2d DCA 2006)　　　　4

*State ex rel. Vance v. Wellman*, 222 So. 2d (Fla. 2d DCA 1969)　　　　7

Third District Court

*E.g., Hadley v. Hadley*, 140 So.2d 326 (Fla. 3d DCA 1962)　　　　9

*Arquette v. Rutter*, 150 So. 3d 1259, 1261 (Fla. 5th DCA 2014)　　　　10

Fourth District Court

*Alvarez v. City of Plantation*, 824 So. 2d 339, 340 (Fla. 4th DCA 2002)　　2

*E.g., Stel-Den of America, Inc. v. Roof Structures, Inc.*, 438 So.2d 882 (Fla. 4th

DCA 1983),　　　　2

*Esposito v. Horning*, 416 So. 2d 896, 898 (Fla. 4th DCA 1982)　　　　6

*Ford v. State*, 994 So.2d 1244, 1245 (Fla. 4th DCA 2008)　　　　2

*Gonzalez v. State*, 123 So. 3d 691 (Fla. 4th DCA 2013)　　　　2

*Holmes v. Goldstein.* 650 So. 2d 87 (Fla. 4th D.C.A. 1995                     2

*Ruffin v. Kingswood E. Condo. Ass'n,* 719 So. 2d (Fla. 4th DCA 1998)          6

*Sanchez v. Fernandez,* 915 So. 2d 192, 192 (Fla. 4th DCA 2005)               5

Stel-Den of America, Inc. v. Roof Structures, Inc., 438 So.2d 882, 884 (Fla.

4thDCA 1983)                                                                  6

Fifth District Court

*Arquette v. Rutter,* 150 So. 3d 1259, 1261 (Fla. 5th DCA 2014)              10

*Cent. Park A Metrowest Condo. Ass'n v. AmTrust REO* I, LLC, 169 So. 3d

(Fla. 5th DCA 2015)                                                          10

*Johnson v. State* 87 So. 2d 206, (Fla. 5th 2008)                             8

*Shuler v. Green Mountain Ventures, Inc.,* 791 So. 2d 1213, 1215 (Fla. 5th DCA

2001)                                                                       10

Florida Constitution

Article V, §§ 3(b)(7), 4(b)(3)                                                1

Florida Rules of Appellant Procedure

Section 9.030(b)(3)

Section 9.040(c) (9.010 & 9.030(c)(3))                                        9

Florida State Statutes

Section 112.3173 (5)                                                       4, 10

Section 838.022,                                                            10

Section 120.68 ..... 3

**Florida Criminal Rule**

Rule 3.800 ..... 3, 11

Rule 3.850 ..... 3, 11

## Motion For Rehearing And Clarification

COMES NOW Petitioner *pro se*, and respectfully moves this Honorable for rehearing and clarification. Florida Rule of Appellate Procedure 9.330 provides that a party may file a motion for rehearing within fifteen days of the court's order. Such a motion, however, must "state with particularity the points of law or fact that, in the opinion of the movant, the court has overlooked or misapprehended."

## BASIS FOR INVOKING JURISDICTION

Florida's constitution article V, §§ 3(b)(7), 4(b)(3) gives courts power to issue "all writs necessary to the complete exercise" of their jurisdiction. This power also is referred to as "constitutional-writs" power. This Court has original jurisdiction to issue a writ of prohibition directed to the circuit court. Fla. Const., Art. V, § 4(b)(3); Fla. R. App. P. 9.030(b)(3).

The writ of prohibition is an extraordinary remedy that "may only be granted when it is shown that a lower court is without jurisdiction or attempting to act in excess of jurisdiction." *English v. McCrary*, 348 So.2d 293, 296 (Fla. 1977); see also *Taylor v. State*, 65 So.3d 531, 533 (Fla. 1st DCA 2011) ("Prohibition is an extraordinary remedy that [is] used to restrain the unlawful use of judicial power.").

1

Petitioner invokes the Double Jeopardy Clause, *Garrity*, Fourteenth Amendment Due Process Clause (Fifth, Sixth, Eighth and Fourteenth Amendments) Supremacy Clause of the United States Constitution (Article VI, Clause 2), which establishes that the Constitution, federal laws made pursuant to it, and treaties made under its authority, constitute the supreme law of the land; the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, which prohibits states from denying any person within its territory the equal protection of the laws, and the doctrine of manifest injustice. *See Miller v. State*, 988 So.2d 138, 139 (Fla.1st DCA 2008).

## STATEMENT OF THE FACTS

Petitioner asserted in his combined writ of quo warranto and writ of disqualification that, "Normally, issues concerning lack of subject matter jurisdiction, and the prohibitions of double jeopardy are fundamental error and can be addressed at any time, even for the first time on direct appeal. *See Gonzalez v. State*, 123 So. 3d 691 (Fla. 4th DCA 2013); *Ford v. State*, 994 So.2d 1244, 1245 (Fla. 4th DCA 2008); *Carnegie v. State*, 564 So. 2d 233, 234 (Fla. 1st DCA 1990); Stel-Den of America, Inc. v. Roof Structures, Inc., 438 So.2d 882, 884 (Fla. 4thDCA 1983). Consequently, no court has been willing to make a factual or legal determination regarding subject matter jurisdiction and double jeopardy, on the

2

merits and Respondent continues to violate Petitioner's Constitutional Rights by exceeding his authority in this instant prosecution.

## NATURE OF RELIEF SOUGHT

Petitioner seeks the issuance of this Court's Writ of Prohibition to reverse and vacate the conviction, dismiss the charges in the information, prohibiting any further retrial and provide any other relief this Court deems just and proper. Petitioner requests this Court to certify the question and believes the Florida Supreme Court would be interested in this unique case as a matter of great public importance, it presents an issue of first impression, may have far reaching consequences that may arise in the future, has not been recently addressed by the Florida Supreme Court and is in direct and express conflict with other district courts.

## ARGUMENT

Petitioner presents four arguments. Whether the Trial Court lacks subject matter jurisdiction in the current Combined Florida Rule 3.800 and 3.850 postconviction proceeding? Whether Petitioner can raise his subject matter jurisdiction claim in a writ of quo warranto during postconviction? Whether the State Board of Administration has subject matter jurisdiction under Florida State Statutes § 120.68 to adopt and incorporate its Final Order the Conclusions of Law

3

under Florida State Statutes § 112.3173 (5)? Whether the Trial Court erred in denying the motion for disqualification.

## Rehearing And Clarification

<u>Whether the Trial Court lacks subject matter jurisdiction:</u>

This Court's denial of Petitoner's writ overlooked and is in direct and express conflict with, "A court does not have jurisdiction to try a defendant when he is entitled to discharge on the ground of double jeopardy or collateral estoppel, or if he is entitled to a discharge because of a violation of his immunity from prosecution." (internal citation omitted)); *see Moody v. State*, 931 So.2d 177 (Fla. 2d DCA 2006) (granting writ to prevent retrial on charges on which defendant already had been acquitted because retrial would violate Double Jeopardy Clause); *see State ex rel. Wilhoit v. Wells*, 356 So.2d 817, 821–22, 825 (Fla. 1st DCA 1978) (granting writ to prevent trial on charges to which defendant had already pled nolo contendere because trial would violate double jeopardy clause.

As outlined in the denied writ, jeopardy attached after the Jones' administrative investigation, after Petitioner was arrested using the immunized information, and when this Court affirmed two of Sandra Nealy's charges outlined in the State's bill of particulars against Petitioner. The Double Jeopardy Clause applies a strict standard. "The prohibition is not against being twice punished; but against being twice put in jeopardy." *See United States v. Ball*, <u>163 U.S. 662, 669</u> .

4

Now, this Court's denial of Petitioner's writ misapprehended and is in direct and express conflict with, "The defense of subject-matter jurisdiction can be raised at any time. Fla. R.Civ.P. 1.140(h)(2); the determination of jurisdiction is a legal question. *See Jacobsen v. Ross Stores*, 882 So.2d 431 (Fla. 1st DCA 2004). Normally, this Court reviews questions of subject matter jurisdiction de novo. *See Sanchez v. Fernandez*, 915 So. 2d 192, 192 (Fla. 4th DCA 2005), instead it denied the writ.

Furthermore, this Court's denial misapprehended and clearly overlooked and is in direct and express conflict with what the Eleventh Circuit Court of Appeal has stated that the protection afforded by *Garrity* "is tantamount to use immunity," not transactional immunity. *See United States v. Veal*, 153 F.3d 1233, 1241 n.7 (11th Cir. 1998), cert. denied, 526 U.S.1147 (1999).

The denial of Petitioner's writ misapprehended and clearly overlooked that use immunity prevents the prosecution from making use of the testimony and any evidence derived therefrom against the witness in a Criminal trial. *See Kastigar*, 406 U.S. at 452-53 and *See Abbott v. State*, 438 So.2d 1025, 1026 (Fla. 1st DCA 1983).

Furthermore, this Court's denial of Petitioner's writ presents an express and direct conflict with what, the Ninth Circuit held that the prosecution must prove that each matter admitted into evidence "is derived from a source

5

independent of the immunized testimony., *United States v. Koon*, 4 F.3d 1416,1431 (9th Cir. 1994) (Rodney King case).

As a result this Court's denial overlooked, misapprehended and is in express and direct conflict with the fact that both the state and the federal governments are "prohibited from making any such *use of compelled testimony and its fruits.*" *Murphy*, 378 U.S. at 79, 84 S.Ct. at 1609, 12 L.Ed.2d at 695 (e.s.).

<u>Whether Petitioner can raise a subject matter jurisdiction claim in a writ of quo warranto during postconviction:</u>

This Court misapplied, misapprehended and clearly overlooked, "It is well settled that lack of subject matter jurisdiction maybe raised *sua sponte* by an appellate court." *Ruffin v. Kingswood E. Condo. Ass'n*, 719 So. 2d 951, 952 (Fla. 4th DCA 1998) (citations omitted)."[J]urisdiction is not a question a court can take or leave, and a judgment entered without jurisdiction is void." *See Esposito v. Horning*, 416 So. 2d 896, 898 (Fla. 4th DCA 1982)(footnote omitted).

Additionally this Court's denial  misapprehended and clearly overlooked that, "[s]ubject matter jurisdiction cannot be created by waiver, acquiescence or agreement of the parties, or by error or inadvertence of the parties or their counsel, or by the exercise of power by the court; it is a power that arises solely by virtue of law." *Florida Export Tobacco Co. v. Dep't of Revenue*, 510 So.2d 936, 943 (Fla.

6

1st DCA), *review denied*, 519 So.2d 986-987 (Fla. 1987). Petitioner should not have been prevented from his subject matter jurisdiction claim.

Consequently, this Court cited *Baker v. State*, 878, So. 2d 1236 (Fla. 2004) as its reason for denying the writ of quo warranto. However, Baker remains inapposite to this instant case, because Baker did not assert a subject matter jurisdiction that arose from the State using prohibited, "*compelled testimony and its fruits.*" *Murphy,* 378 U.S. at 79, 84 S.Ct. at 1609, 12 L.Ed.2d at 695 (e.s.).

Albeit, the denial of Petitioner's writ is in direct and express conflict while misapprehending and clearly overlooking that, "The Second District Court underscored a writ of quo warranto proceeding should be commenced in circuit court unless there is a compelling reason for invoking the original jurisdiction of a higher court." *See State ex rel. Vance v. Wellman,* 222 So.2d 449, 449 (Fla. 2d DCA 1969).

Petitioner's writ of quo warranto purported a compelling reason that is, both the Trial Court and Respondent the Honorable Dave Aronberg Fifteenth Judicial Circuit State Attorney lacked subject matter jurisdiction in the Combined Florida Rule 3.800 and Rule 3.850, and the denial misapprehended and is in direct and express conflict with well established law regarding when a defendant-petitioner can raise a fundamental error. *See* Jassan v. State, 749 So. 2d 511, 512 (Fla. 2d D.C.A. 1999).

7

Notably, the Fifth District Court of Appeal is in direct and express conflict with the Second District Court of Appeal in *State ex rel. Vance v. Wellman*, when it opined, "Furthermore, a defendant may not utilize the extraordinary writ of quo warranto as a postconviction safety net to challenge the authority of the prosecuting authority or judge when the outcome of the trial was not as he expected or hoped for." *See Johnson v. State* 87 So. 2d 206, (Fla. 5th 2008). The Fifth District's ruling does not provide an opportunity for compelling reasons.

The Florida Supreme Court locked the gate on postconviction relief, because the Court knew that an affirmative expressed opinion that a writ of quo warranto was an appropriate method to seek postconviction relief would become the proverbial, "Letting the dogs out of the gate in *Geffken v. Strickler*, 778 So. 2d 975, 976 n.1 (Fla. 2001).

More importantly, this Court misapprehended and clearly overlooked it's without further discussion opinion in Case (4D09-530). The opinion reads, "After receiving complaints about certain individuals "blocking out" overtime slots, the Sheriff commenced an internal affairs investigation, which led to the underlying criminal investigation against McCray." The (4D-530) opinion created a manifest injustice. *See Miller v. State*, 988 So.2d 138, 139 (Fla.1st DCA 2008).

Thus, this Court's denial misapprehended and overlooked clearly established law, strikes a fatal blow in the heart of Petitioner's (Fifth, Sixth, Eighth and

8

Fourteenth Amendments). The denial and fatal blow is in direct and express conflict with Florida State Statues Immunity law Section 914.01, and established law that underscores exclusivity of the Florida Constitution and State Statues. *See State v. Andrews, 113 So.2d 701, 702 (Fla.1959).*

Therefore, this Court's denial of Petitioner's writ presents a direct and express conflict while it misapprehended and clearly overlooked the fact that if, subject matter jurisdiction has never been presented to a trial court in a writ of quo warranto it does not preclude an appellate court from considering the issue. *See E.g., Hadley v. Hadley,* 140 So.2d 326 (Fla. 3d DCA 1962); see also *84 Lumber Co. v. Cooper,* 656 So. 2d 1297 (Fla. Dist. Ct. App. 1994) and *Walt v. Walt,* 574 So.2d 205 (Fla. 1st DCA 1991).

Generally, "[i]f a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought; provided that it shall not be the responsibility of the court to seek the proper remedy." See Fla. R.App. P. 9.040(c) (Fla. R.App. P. 9.010 & 9.030(c)(3)); *Zuluaga v. State, Dep't. of Corrs.,* 32 So.3d 674, 677 (Fla. 1st DCA 2010). However, this Court denied the writ and cited *Baker v. State,* 878, So. 2d 1236 (Fla. 2004).

Whether the State Board of Administration has subject matter jurisdiction:

On October 11, 2017, Petitioner received a Final Order indicating his Florida Retirement System Investment Plan Account benefit is forfeited based on Section

9

112.3173, Florida Statutes by having been found guilty of nine felony counts of Official Misconduct under Section 838.022, Florida Statutes, which convictions were affirmed on appeal." (See App. Exhibit B).

The Florida State Board of Administration lacks subject matter jurisdiction and does not have authority to forfeit Petitioner's Florid Retirement System Investment Plan account. *See Lovett v. Lovett* 93 Fla. 611, 112 So. 768 (1927), and the defense of subject matter jurisdiction can be raised at any time Fla. Rules of Civil Procedure 1.140(h) (2), and *United States v. Hubbell,* 530 U.S. 27 (2000). "Use of immunized testimony or evidence is subject to dismissal.

## The Trial Court erred in denying the motion for disqualification

This Court's denial of Petitioner's writ of prohibition misapprehended and clearly overlooked and is in direct and express conflict. *See Arquette v. Rutter*, 150 So. 3d 1259, 1261 (Fla. 5th DCA 2014) the trial court lacked procedural jurisdiction to enforce the agreement. *See Cent. Park A Metrowest Condo. Ass'n v. AmTrust REO* I, LLC, 169 So. 3d 1223, 1227 (Fla. 5th DCA 2015). The trial court lacks subject matter jurisdiction

The denial of Petitioner's writ of Prohibition misapprehended and is in direct and express conflict. *See Shuler v. Green Mountain Ventures, Inc.*, 791 So. 2d 1213, 1215 (Fla. 5th DCA 2001) (holding that fear of judicial bias giving rise to disqualification motion must be objectively reasonable) (citations omitted).

10

Petitioner asserted in his motion and demonstrated an objectively reasonable fear of judicial bias from that the trial court that lacks subject matter jurisdiction.

In sum, the Courts have consistently recognized that prior decisions cannot stand that are clearly erroneous and resulted in a manifest injustice. *See This That & the Other Gift & Tobacco, Inc. v. Cobb County. Ga.*, 439 F.3d 1275, 1283–84 (11th Cir. 2006) and *Hill,* 368 U.S. at 428, 82 S. Ct. at 471). The Double Jeopardy Clause, *Garrity*, Equal Protection Clause, Fourteenth Amendment Due Process Clause (Fifth, Sixth, Eighth and Fourteenth Amendments and are particularly instructive herein, this Court has inherent authority to reconsider a ruling while the Court has jurisdiction of the case.

## CONCLUSION

**WHEREFORE,** based on the aforementioned arguments that this Court misapprehended, clearly overlooked well established law that Trial Court lacks subject matter jurisdiction in the Combined Florida Rule 3.800 and 3.850 postconviction proceeding, this Court should certify the question, "Whether Petitioner can raise his subject matter jurisdiction claim in a writ of quo warranto during postconviction?"

The State Board of Administration lacks subject matter jurisdiction, and the Trial Court erred in denying the motion for disqualification. Petitioner respectfully requests, this Honorable Court to issue the Writ of Prohibition, reverse and vacate

11

the conviction, dismiss the charges in the information, prohibiting any further retrial and provide any other relief this Court deems just and proper.

Respectfully submitted,

Darrin LaMar McCray, pro se

## INDEX TO APPENDIX

| DATE | TITLE | APPENDIX |
|---|---|---|
| 08/07/13 | Fourth District Court of Appeal Order (4D09-530) | A |
| 10/10/17 | State Board Of Administration Final Order | B |
|  |  |  |
|  |  |  |
|  |  |  |

12

## <u>Certificate of Service</u>

**I HEREBY CERTIFY** that a true and corrected copy of the foregoing Motion For Rehearing and Clarification was mailed via U.S Postal Service on November 06, 2017, to Ruth A. Smith Esq., Assistant General Counsel State Board of Administration of Florida 1801 Hermitage Boulevard Suite 180 Tallahassee, Florida 32308, and the Attorney General's Office Department of Legal Affairs 1515 North Flagler Drive, Suite 900 West Palm Beach, Florida 33401.

# APPENDIX

## <u>A</u>



DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2013*

**DARRIN L. MCCRAY,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D09-530

[August 7, 2013]

DAMOORGIAN, C.J.

Darrin McCray ("McCray"), a former Lieutenant with the Palm Beach County Sheriff's Office ("the Sheriff"), appeals his convictions for organized scheme to defraud in violation of section 817.034(4)(a)(3), Florida Statutes (2006), and nine counts of official misconduct in violation of section 838.022, Florida Statutes (2006). These convictions resulted from allegations that McCray and other Sheriff's employees manipulated the overtime assignment computer system and obtained more hospital guard assignments than allowable under the Sheriff's policy. We reverse McCray's conviction for organized scheme to defraud. We affirm his convictions for official misconduct without further discussion.

By way of background, the Sheriff provides guards for overtime duty when an inmate or arrested person is admitted to the hospital. In order to assure broader access to available hospital shifts, the Sheriff established policies and procedures designed to limit employees' abilities to sign up for shifts in the computer system. These procedures included restricting how far in advance an employee could sign up for a shift, allowing employees to sign up for only one shift at a time, and imposing a 48-hour waiting period between sign-up opportunities. Further, according to the Sheriff's policy, employees generally could not sign up another deputy for an overtime shift. Lieutenants and other supervisors, however, had administrative rights that permitted them to assign other employees to cover immediate, uncovered, or hard-to-cover shifts.

After receiving complaints about certain individuals "blocking out"

overtime slots, the Sheriff commenced an internal affairs investigation, which led to the underlying criminal investigation against McCray. From September 2006 to September 2007, McCray assigned himself or others to work approximately 260 overtime shifts. Of those, McCray assigned himself to approximately 116 overtime shifts, even though McCray worked only 14 overtime shifts due to prisoner release or alternate coverage. McCray worked every shift for which he received overtime pay. In addition, McCray assigned several individuals to work overtime shifts without their knowledge or permission.

Based on these facts, the State charged McCray and five others with organized scheme to defraud. This Court reviewed the conviction of one of McCray's co-defendants on the same charge and determined that the alleged pattern of conduct did not constitute a criminal violation under section 817.034(4)(a)(3).[1] *Dent v. State*, 38 Fla. L. Weekly D287 (Fla. 4th DCA Feb 6, 2013), *review denied*, No. SC13-732, 2013 WL 2221572 (Fla. May 16, 2013). Specifically, we noted that no statutory violation occurred because the alleged "lost . . . opportunity for other deputies to work for overtime pay . . . simply does not fit the definition of property traditionally used in criminal prosecutions . . . ." *Id.* Likewise, McCray's conduct does not support a conviction for organized scheme to defraud.

Accordingly, we remand for resentencing on the convictions for official misconduct.

*Affirmed in part; Reversed in part and Remanded.*

CIKLIN and CONNER, JJ., concur.

\*    \*    \*

---

[1] Section 817.034(4)(a)(3) provides:

> Any person who engages in a scheme to defraud and obtains property thereby is guilty of organized fraud, punishable as follows . . . [i]f the amount of property obtained has an aggregate value of less than $20,000, the violator is guilty of a felony of the third degree . . . .

Section 817.034(3)(c) defines property as "anything of value, and includes: 1. Real property, including things growing on, affixed to, or found in land; 2. Tangible or intangible personal property, including rights, privileges, interests, and claims; and 3. Services."

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lucy Chernow Brown, Judge; L.T. Case No. 502008CF007611FXXXMB.

Siobhan Helene Shea of Siobhan Helene Shea Appellate Practice, Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Mark J. Hamel, Assistant Attorney General, West Palm Beach, for appellee.

Not final until disposition of timely filed motion for rehearing.

# APPENDIX

## B

**STATE OF FLORIDA**
**STATE BOARD OF ADMINISTRATION**

DARRIN MCCRAY, )
)
    Petitioner, )
)
vs. )
) SBA Case No. 2008-1266
STATE BOARD OF ADMINISTRATION, )
)
    Respondent. )
_____ )

## FINAL ORDER

On July 14, 2017, the presiding officer submitted her Recommended Order to the State Board of Administration (hereafter "SBA") in this proceeding. A copy of the Recommended Order indicates that copies were served upon counsel for the Petitioner and upon counsel for the Respondent. Both Petitioner and Respondent filed timely filed Proposed Recommended Orders. Petitioner timely filed exceptions on July 29, 2017. A copy of the Recommended Order is attached hereto as Exhibit A. The matter is now pending before the Chief, Defined Contribution Programs Officer for final agency action.

## STATEMENT OF THE ISSUE

The State Board of Administration adopts and incorporates in this Final Order the Statement of the Issue in the Recommended Order as if fully set forth herein.

## PRELIMINARY STATEMENT

The State Board of Administration adopts and incorporates in this Final Order the Preliminary Statement in the Recommended Order as if fully set forth herein, with the exception of the last sentence which hereby is modified to read as follows:

1

"On June 26, 2017, both Petitioner and Respondent timely filed Proposed Recommended Orders."

## STANDARDS OF AGENCY REVIEW OF RECOMMENDED ORDERS

The findings of fact of a presiding officer cannot be rejected or modified by a reviewing agency in its final order "…unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings were not based upon competent substantial evidence…." *See* Section 120.57(1)(l), Florida Statutes. *Accord, Dunham v. Highlands Cty. School Brd*, 652 So.2d 894 (Fla 2nd DCA 1995); *Dietz v. Florida Unemployment Appeals Comm*, 634 So.2d 272 (Fla. 4th DCA 1994); *Florida Dept. of Corrections v. Bradley*, 510 So.2d 1122 (Fla. 1st DCA 1987). A seminal case defining the "competent substantial evidence" standard is *De Groot v. Sheffield*, 95 So.2d 912, 916 (Fla. 1957), in which the Florida Supreme Court defined it as "such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred" or such evidence as is "sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached."

An agency reviewing a presiding officer's recommended order may not reweigh evidence, resolve conflicts therein, or judge the credibility of witnesses, as those are evidentiary matters within the province of administrative law judges as the triers of the facts. *Belleau v. Dept of Environmental Protection*, 695 So.2d 1305, 1307 (Fla. 1st DCA 1997); *Maynard v. Unemployment Appeals Comm.*, 609 So.2d 143, 145 (Fla. 4th DCA 1993). Thus, if the record discloses any competent substantial evidence supporting finding of fact in the Recommended Order, the Final Order will be bound by such factual finding.

2

Pursuant to Section 120.57(1)(l), Florida Statutes, however, a reviewing agency has the general authority to "reject or modify conclusions of law over which it has substantive jurisdiction and interpretation of administrative rules over which it has substantive jurisdiction." Florida courts have consistently applied the "substantive jurisdiction limitation" to prohibit an agency from reviewing conclusions of law that are based upon the presiding officer's application of legal concepts, such as collateral estoppel and hearsay, but not from reviewing conclusions of law containing the presiding officer's interpretation of a statute or rule over which the Legislature has provided the agency with administrative authority. *See Deep Lagoon Boat Club, Ltd. v. Sheridan*, 784 So.2d 1140, 1141-42 (Fla. 2d DCA 2001); *Barfield v. Dep't of Health*, 805 So.2d 1008, 1011 (Fla. 1st DCA 2001). When rejecting or modifying any conclusion of law, the reviewing agency must state with particularity its reasons for the rejection or modification and further must make a finding that the substituted conclusion of law is as or more reasonable than that which was rejected or modified. Further, an agency's interpretation of the statutes and rules it administers is entitled to great weight, even if it is not the sole possible interpretation, the most logical interpretation, or even the most desirable interpretation. *See, State Bd. of Optometry v. Fla. Soc'y of Ophthalmology*, 538 So.2d 878, 884 (Fla. 1st DCA 1998). An agency's interpretation will be rejected only where it is proven such interpretation is clearly erroneous or amounts to an abuse of discretion. *Level 3 Communications v. C.V. Jacobs*, 841 So.2d 447, 450 (Fla. 2002); *Okeechobee Health Care v. Collins*, 726 So.2d 775 (Fla. 1st DCA 1998).

With respect to exceptions, Section 120.57(1)(k), Florida Statutes, provides that "…an agency need not rule on an exception that does not clearly identify the disputed

3

portion of the recommended order by page number or paragraph, that does not identify the legal basis for the exception, or that does not include appropriate and specific citations to the record."

## RULINGS ON PETITIONER'S EXCEPTIONS TO THE RECOMMENDED ORDER

### Petitioner's Exception 1: Exception to the Statement of the Issue

Petitioner takes exception to the "Statement of the Issue," by asserting that it should be revised to set forth a second issue; namely, whether the matter needs to be abated in view of the fact that Petitioner has filed one or more motions for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure. However, the Statement of the Issue set forth in the Recommended Order, which is whether forfeiture was appropriate, would encompass such a consideration, as forfeiture would not be appropriate or proper if an actual appeal of the felony conviction remains outstanding. As such, Petitioner's Exception 1 hereby is rejected.

### Petitioner's Exception 2: Exception to Conclusions of Law 18, 19 and 20

Petitioner's Exception 2, takes exception with Conclusions of Law 18, 19 and 20 of the Recommended Order. Petitioner states that such paragraphs are "conclusory" and "unsupported" when they state that a motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure, does not constitute an "appeal." However, Petitioner fails to provide any solid legal argument or authority to substantiate Petitioner's claim that post-conviction relief does constitute an appeal. Rule 3.850(c), Florida Rules of Criminal Procedure, states that: "[t]his rule does not authorize relief based on grounds that could have or should have been raised at trial **and, if properly preserved, on direct appeal**

4

**of the judgment and sentence.**" [emphasis added]. Thus, Rule 3.850(c), Florida Rules of Criminal Procedure, specifically provides that post-conviction relief is something other than appeal.

An "appeal" is a proceeding that reviews the judgment or order of a lower tribunal based on the record made before the lower tribunal. *See, Ellsworth v. Insurance Co. of North America*, 508 So.2d 395 (Fla. 1st DCA 1987). An appeal is a continuation of the original proceeding. *Pennsylvania Ins. Guaranty Ass'n v. Sikes*, 590 So.2d 1051 (Fla. 1st DCA 1991) [emphasis added]. Whenever an appeal is taken, the action still is pending until its final disposition. *Wilson v. Clark*, 44 So.2d 526 (Fla. 1st DCA 1982). Thus, when an appeal is filed, a trial court will not have jurisdiction to hear a post-conviction motion until after the appeal is concluded.

As the Presiding Officer notes in the Recommended Order, Section 112.3173(5), Florida Statutes, provides that the payment of retirement benefits ordered forfeited shall be stayed pending an appeal. If the conviction is affirmed on appeal, then retirement benefits are to be forfeited. The statute does not allow for a further stay if the individual whose benefits are being forfeited elects to pursue post-conviction relief.

In *John L. Winn, as Commissioner of Education v. Ronald Rosen*, 2010 WL 883691 (Fla.Div.Admin.Hrgs, Final Order issued June 22, 2010), an Administrative Law Judge (ALJ) with the Division of Administrative Hearings (DOAH) was asked to consider whether the Respondent's educator certificate should be revoked where Respondent was adjudicated guilty of lewd and lascivious molestation of minor students. The Respondent had appealed his guilty verdict and his conviction was affirmed. The Florida Supreme Court declined

5

discretionary review of Respondent's appeal. Respondent then had filed a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, alleging ineffective assistance of counsel. Respondent had requested that the DOAH case continue to be held in abeyance until the post-conviction efforts had been exhausted. The ALJ allowed the case to proceed and found that the Petitioner had demonstrated that Respondent was convicted of a felony involving moral turpitude and had failed in his appeal to overturn his conviction. Pursuant to state law, such a guilty verdict allows permanent revocation of an educator's certificate. The ALJ found that no additional conclusions were necessary, and issued a Recommended Order recommending the Respondent's teaching certificate be permanently revoked.

Similarly, in the instant situation, the Presiding Officer found Petitioner had been convicted of a felony allowing forfeiture of retirement benefits under law, and that conviction was upheld on appeal. As in the *Rosen* case, *supra*, the Presiding Officer properly determined that the impact of the outstanding motion(s) for post-conviction did not need to be addressed since Respondent did not provide any legal authority that would allow a further stay. Accordingly, Petitioner's Exception 2 hereby is denied.

### Petitioner's Exception 3: Exception to the Preliminary Statement

Petitioner states that the Presiding Officer's Preliminary Statement erroneously states that Petitioner did not file a Proposed Recommended Order. As set forth above, this Final Order already has revised the last sentence of the Preliminary Statement to indicate that Petitioner did timely file a Proposed Recommended Order. Thus, Petitioner's Exception 3 is accepted.

6

## FINDINGS OF FACT

The State Board of Administration adopts and incorporates in this Final Order the Findings of Fact set forth in the Recommended Order as if fully set forth herein.

## CONCLUSIONS OF LAW

The State Board of Administration adopts and incorporates in this Final Order the Conclusions of Law set forth in the Recommended Order as if fully set forth herein.

## ORDERED

The Recommended Order (Exhibit A) is hereby adopted in its entirety. The Petitioner has forfeited his Florida Retirement System Investment Plan account benefit under Section 112.3173, Florida Statutes by having been found guilty of nine felony counts of Official Misconduct under Section 838.022, Florida Statutes, which convictions were affirmed on appeal.

Any party to this proceeding has the right to seek judicial review of the Final Order pursuant to Section 120.68, Florida Statutes, by the filing of a Notice of Appeal pursuant to Rule 9.110, Florida Rules of Appellate Procedure, with the Clerk of the State Board of Administration in the Office of the General Counsel, State Board of Administration, 1801 Hermitage Boulevard, Suite 100, Tallahassee, Florida, 32308, and by filing a copy of the Notice of Appeal accompanied by the applicable filing fees with the appropriate District Court of Appeal. The Notice of Appeal must be filed within thirty (30) days from the date the Final Order is filed with the Clerk of the State Board of Administration.

7

DONE AND ORDERED this 10th day of October, 2017, in Tallahassee,

Florida.

STATE OF FLORIDA
STATE BOARD OF ADMINISTRATION

**Joan B. Haseman**
Chief of Defined Contribution Programs
State Board of Administration
1801 Hermitage Boulevard, Suite 100
Tallahassee, Florida 32308
(850) 488-4406

FILED ON THIS DATE PURSUANT TO
SECTION 120.52, FLORIDA STATUTES
WITH THE DESIGNATED CLERK OF THE
STATE BOARD OF ADMINISTRATION,
RECEIPT OF WHICH IS HEREBY
ACKNOWLEDGED.

Tina Joanos,
Agency Clerk

8

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Final Order was sent to Gary E. Lippman, Esq., counsel for Petitioner, both by electronic mail to garyelippman@gmail.com and by UPS to Gary E. Lippman, 4231 Quill Circle, Lake Worth, Florida 33467; and by email transmission to Brian Newman, Esq. (brian@penningtonlaw.com) and Brandice Dickson, Esq., (brandi@penningtonlaw.com) at Pennington, Moore, Wilkinson, Bell & Dunbar, P.A., P.O. Box 10095, Tallahassee, Florida 32302-2095, this __10 th__ day of October, 2017.

Ruth A. Smith
Ruth A. Smith
Assistant General Counsel
State Board of Administration of Florida
1801 Hermitage Boulevard
Suite 100
Tallahassee, FL 32308

9

STATE OF FLORIDA
STATE BOARD OF ADMINISTRATION

DARRIN MCCRAY,

       Petitioner,

vs.                                                                      Case No.: 2008-1266

STATE BOARD OF ADMINISTRATION,

       Respondent.
_____ /

## RECOMMENDED ORDER

By agreement of the parties and the May 24, 2017 Order for Hearing on Written

Record this case came before the undersigned presiding officer for the State of Florida,

State Board of Administration (SBA).  The appearances were as follows:

### APPEARANCES

For Petitioner:      Gary E. Lippman
                       4231 Quill Circle
                       Lake Worth, FL 33467
                       garyelippman@gmail.com

For Respondent:    Brandice Dickson, Esq.
                       Pennington, P.A.
                       Post Office Box 10095
                       Tallahassee, Florida 32302-2095

### STATEMENT OF THE ISSUE

The issue is whether Petitioner's Florida Retirement System (FRS) Investment Plan

benefit was properly deemed forfeited by Respondent.

**EXHIBIT A**

00835124-1

## PRELIMINARY STATEMENT

By agreement of the parties and the May 24, 2017 Order for Hearing on Written Record this case came before the undersigned presiding officer for the State of Florida, State Board of Administration (SBA). The Order granting the Joint Motion to Have Case Heard on Written Record advised the parties that Proposed Recommended Orders were due on or before June 26, 2017.

On May 18, 2017, Petitioner filed Petitioner's Exhibit 1 and adopted Respondent's Exhibits 1-6 as his own. Respondent's Exhibits 1 through 6 were filed March 1, 2017. All exhibits have been accepted.

On June 26, 2017, Respondent filed its Proposed Recommended Order; Petitioner made no additional filings.

## MATERIAL UNDISPUTED FACTS

1.      Petitioner was a member of the Florida Retirement System ("FRS") Investment Plan.

2.      Petitioner's Investment Plan account was placed on hold in 2008 as a result of criminal charges having been brought against him alleging a breach of the public trust by a public officer.

3.      On November 21, 2008, Petitioner was found guilty by a Fifteenth Judicial Circuit jury in and for Palm Beach, Florida of one count of Organized Scheme to Defraud and nine counts of Official Misconduct.

4.      Petitioner appealed his conviction to the Fourth District Court of Appeal which reversed the conviction for the one count of Organized Scheme to Defraud, but affirmed the

2

convictions on the nine counts of Official Misconduct brought under Section 838.022, Florida Statutes. *McCray v. State*, 121 So.3d 603 (Fla. 4th DCA 2013).

5. On July 3, 2014, the Florida Supreme Court denied review of the state's appeal of the Fourth's DCA's reversal of the Organized Scheme to Defraud conviction. *State v. McCray*, 147 So.3d 527 (Fla. 2014).

6. On October 20, 2014, the Florida Supreme Court denied Petitioner's writ of mandamus and prohibition as to the Fourth DCA affirmance of the convictions for nine counts of Official Misconduct. *McCray v. State*, 153 So.3d 907 (Fla. 2014).

7. On November 10, 2014 Petitioner was notified that his FRS rights and benefits were forfeited.

8. On December 3, 2014, Petitioner filed a Petition for Hearing contesting the forfeiture.

9. On May 18, 2017, Petitioner filed a Combined Rule 3.800 and 3.850 Motion for Post-Conviction Relief. That motion is pending.

## CONCLUSIONS OF LAW

10. The Florida Constitution makes plain that "[a]ny public officer or employee who is convicted of a felony involving a breach of the public trust shall be subject to forfeiture of rights and privileges under a public retirement system or pension plan in such manner as may be provided by law." ART. II, § 8(d), FLA. CONST. Section 112.3173, Florida Statutes, implements that part of the Florida Constitution and states, in pertinent part:

> **112.3173. Felonies involving breach of public trust and other specified offenses by public officers and employees; forfeiture of retirement benefits**
>
> (1) Intent. – It is the intent of the Legislature to implement the provisions of s. 8(d), Art. II of the State Constitution.

(2) Definitions. – As used in this section, unless the context otherwise requires, the term:

(a) "Conviction" and "convicted" mean an adjudication of guilt by a court of competent jurisdiction; a plea of guilty or of nolo contendere; a jury verdict of guilty when adjudication of guilt is withheld and the accused is placed on probation; or a conviction by the Senate of an impeachable offense.

. . .

(e) "Specified offense" means:

. . .

4. Any felony specified in chapter 838, except ss. 838.15 and 838.16;

. . .

6. The committing of any felony by a public officer or employee who, willfully and with intent to defraud the public or the public agency for which the public officer or employee acts or in which he or she is employed of the right to receive the faithful performance of his or her duty as a public officer or employee, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of the power, rights, privileges, duties, or position of his or her public office or employment position.

(3) Forfeiture.--Any public officer or employee who is convicted of a specified offense committed prior to retirement, or whose office or employment is terminated by reason of his or her admitted commission, aid, or abetment of a specified offense, *shall forfeit all rights and benefits* under any public retirement system of which he or she is a member, except for the return of his or her accumulated contributions as of the date of termination.

. . .

(5) Forfeiture determination.—

(a) Whenever the official or board responsible for paying benefits under a public retirement system receives notice pursuant to subsection (4), or otherwise has reason to believe that the rights and privileges of any person under such system are required to be forfeited under this section, such official or board shall give

4

> notice and hold a hearing in accordance with chapter 120 for the purpose of determining whether such rights and privileges are required to be forfeited. If the official or board determines that such rights and privileges are required to be forfeited, the official or board shall order such rights and privileges forfeited.
>
> (b) Any order of forfeiture of retirement system rights and privileges is appealable to the district court of appeal.
> ...

§ 112.3173, Fla.Stat. (2006)(emphasis added).

11.   An employee who is convicted of a "specified offense" committed prior to retirement from the FRS shall forfeit all rights and benefits. *Childers v. Department of Management Services*, 989 So.2d 716 (Fla. 4th DCA 2008). If this standard is met, Respondent has no discretion as to whether to proceed with forfeiture of a participant's Investment Plan benefit; under the Constitution and statute forfeiture is mandatory. Forfeiture is deemed to enforce the terms of the retirement "contract" entered into between the State and the employee. As stated in *Childers*,

> Here, the State entered into a contract with the employee, promising to pay him benefits upon his retirement. That contract included a condition precedent: the employee must refrain from committing specified offenses prior to retirement. The non-occurrence of that condition foreclosed the employee's right to performance. It is as direct and to the point as that.
>
> ...
> While forfeiture, in general, has historically been understood as punishment, courts of this state have recognized that statutes providing for forfeiture of government benefits merely enforce the terms of a contract rather than impose punishment. This statute does not require a finding of scienter.

989 So.2d 716 (internal citations omitted)(emphasis added).

12.   Because Petitioner was convicted of nine counts of Official Misconduct in violation of Section 838.022, Florida Statutes, a specified offense under Section 112.3173(2)(e)4., Florida Statutes, forfeiture is mandatory without further analysis.

00835124-1

13.     Even absent a specified offense, forfeiture in this case is mandatory under Section (2)(e)(6) as well. Section 112.3173(2)(e)6., Florida Statutes, has been referred to as the "catch-all" provision in the forfeiture statute. *Holsberry v. Department of Management Services*, 2009 WL 2237798 (Fla. Div. Admin. Hrgs. July 24, 2009). That "catch-all" section of the statute has been construed to require forfeiture for acts that were otherwise not included in the list of "specified offenses" in Section 112.3173(2)(e) 1. – 5. and 7. when a sufficient nexus is shown between the position held by the public employee and the commission of the crime such that a breach of the public trust is proven without more. *Jenne v. Dep't of Management Services, Div. of Retirement*, 36 So.3d 738 (Fla. 1st DCA 2010)(catch-all provision required forfeiture for conviction of felony for conspiracy to commit mail fraud where sheriff used his position and ability to award contracts to gain benefit for himself where illegal payments to him were made via the mail); *Holsberry*, 2009 WL 2237798 at *3 (catch-all provision required forfeiture for conviction of felony child abuse by a teacher where teacher testified he would not have met the child but for his position as a teacher at her school); *Marsland v. Department of Management Services*, 2008 WL 5451423 (Fla. Div.Admin.Hrgs. December 15, 2008)(catch-all provision required forfeiture for conviction of felony involving sexual battery by teacher on a student where sex occurred at the school and teacher testified but for his position he would not have had an opportunity to have had sex with the student); *Jacobo v. Board of Trustees of the Miami Police*, 788 So.2d 362 (Fla. 3d DCA 2001)(catch-all provision required forfeiture for conviction of "Official Misconduct" where officer falsified an arrest affidavit); *DeSoto v. Hialeah Police Pension Fund Bd. of Trustees*, 870 So.2d 844 (Fla. 3d DCA 2003)(catch-all provision required forfeiture for conviction of felonies including conspiracy to possess and distribute cocaine, commit robbery, and carry a firearm during robbery by a police officer while on suspension).

00835124-1                                              6

14.     Here, Petitioner has been convicted of nine offenses where he sought a personal gain (overtime pay) through the use of his position (administrative rights to override computer program due to his position of Lieutenant) that resulted in a breach of the public trust. Thus, under *Jenne, Holsberry, Marsland, Jacobo,* and *DeSoto,* he has forfeited his right to a retirement benefit under the Florida Retirement System. Specifically, Petitioner exploited his authority as a public officer by using his position as a Lieutenant to assign himself over 100 lucrative overtime hospital duty shifts. Accordingly, his conduct constitutes a breach of the public trust that requires forfeiture of his retirement benefits under section 112.3173(2)(e)6., Florida Statutes.

15.     Florida Statutes creating and governing the Florida Retirement System, and Petitioner's rights and responsibilities under them, are clear and the SBA cannot deviate from them. Balezentis v. Department of Management Services, Division of Retirement, 2005 WL 517476 (Fla.Div.Admin.Hrgs.).

16.     Petitioner has cited no authority for the further abatement of forfeiture proceedings pending the outcome of his Rule 3.800 and 3.850 Motion for Post-Conviction Relief.

17.     The statute governing forfeitures states, in relevant part:

**(5) Forfeiture determination.--**
(a) Whenever the official or board responsible for paying benefits under a public retirement system receives notice pursuant to subsection (4), or otherwise has reason to believe that the rights and privileges of any person under such system are required to be forfeited under this section, such official or board shall give notice and hold a hearing in accordance with chapter 120 for the purpose of determining whether such rights and privileges are required to be forfeited. If the official or board determines that such rights and privileges are required to be forfeited, the official or board shall order such rights and privileges forfeited.
(b) Any order of forfeiture of retirement system rights and privileges is appealable to the district court of appeal.
**(c) The payment of retirement benefits ordered forfeited, except payments drawn from nonemployer contributions to the retiree's account, shall be stayed pending an appeal as to a felony conviction. If such conviction is reversed, no retirement benefits shall be forfeited. If such conviction is affirmed, retirement benefits shall be forfeited as ordered in this section.**

§ 112.3173(5), Fla.Stat.

18.     As stated in the above statute, a stay of payment of benefits pending an appeal is the only stay contemplated by the Legislature. A stay of proceedings leading to the forfeiture determination is not contemplated.

19.     Additionally, the stay contemplated by Section 112.3173(5), Florida Statutes applies by its terms to an "appeal." Petitioner has already filed an appeal of his conviction, and that conviction was affirmed. Petitioner has cited no authority for the proposition that a motion for post-conviction relief is an appeal as referenced by Section 112.3173(5).

20.     Petitioner has not demonstrated that he is entitled to a stay of the proceedings beyond the *de facto* stay he has already enjoyed.

## RECOMMENDATION

Having considered the law and the undisputed facts of record, I recommend that Respondent, State Board of Administration, issue a final order denying the relief requested.

RESPECTFULLY SUBMITTED this 19th day of July, 2017.

Anne Longman, Esquire
Anne Longman
Presiding Officer
For the State Board of Administration
Lewis, Longman & Walker, P.A.
315 South Calhoun Street, Suite 830
Tallahassee, FL  32301-1872

## NOTICE OF RIGHT TO SUBMIT EXCEPTIONS: THIS IS NOT A FINAL ORDER

All parties have the right to submit written exceptions within 15 days from the date of this Recommended Order. Any exceptions must be filed with the Agency Clerk of the State Board of

8

Administration and served on opposing counsel at the addresses shown below. The SBA then will enter a Final Order which will set out the final agency decision in this case.

Filed via electronic delivery with:
Agency Clerk
Office of the General Counsel
Florida State Board of Administration
1801 Hermitage Blvd., Suite 100
Tallahassee, FL 32308
Tina.joanos@sbafla.com
nell.bowers@sbafa.com
(850) 488-4406

COPIES FURNISHED electronic mail to:

Gary E. Lippman, Esq.
4231 Quill Circle
Lake Worth, FL 33467
garyelippman@gmail.com
Attorney for Petitioner

Brian A. Newman, Esquire
Brandice D. Dickson, Esquire
Pennington, P.A.
215 S. Monroe Street, Suite 200
Tallahassee, Florida 32301
slindsey@penningtonlaw.com

Counsel for Respondent

STATE OF FLORIDA
STATE BOARD OF ADMINISTRATION

DARRIN MCCRAY,

     Petitioner,

vs.

STATE BOARD OF ADMINISTRATION,

     Respondent.

_____/

CASE NO.: 2008-1266
Presiding Officer: Anne Longman, Esq.

## PETITIONER McCRAY'S EXCEPTIONS TO RECOMMENDED ORDER

Petitioner DARRIN MCCRAY, by and through undersigned counsel and pursuant to Fla. Stat. 120.57(1)(k) submits his written exceptions to the July 14, 2017 Recommended Order in this matter, and identifies the disputed portions of said Order as follows:

1.    By her "Statement of the Issue" the Presiding Officer for the State Board of Administration ("the Board") recounted only "[t]he issue [of] whether Petitioner's Florida Retirement System (FRS) Investment Plan benefit was properly deemed forfeited by Respondent;" albeit, two (2) issues were identified in the proceeding. By her March 6, 2017 Order Continuing Hearing, the Presiding Officer for the Board specifically ruled that she "will hear Petitioner's Motion to Abate filed February 27 2017 in conjunction with the rescheduled hearing."

2.    The Recommended Order failed to address Petitioner's Motion to Abate apart from a conclusory and unsupported assertion in the final two paragraphs that Section 112.3173(5), Florida Statutes' reference to an "appeal" does not include a motion

1

for post-conviction relief. *See* Recommended Order at paragraphs 19 and 20, in pertinent part ("Petitioner has cited no authority for the proposition that a motion for post-conviction relief is an appeal as referenced by Section 112.3173(5))." *But see* Florida Rule of Criminal Procedure 3.850(f) (in pertinent part) (emphasis added) (providing for disposition "intended to result in a single, final *appealable* order[.]"); *see also id.* at 3.850(f)8(C) (in pertinent part) (emphasis added) ("The order . . . shall be considered the final order for purposes of *appeal*."); *id.* at 3.850(k), "Appeals;" *id.* at 3.850(l), "Belated Appeals and Discretionary Review."

3. By her "Preliminary Statement," the Presiding Officer erroneously declared: "On June 26, 2017, Respondent filed its Proposed Recommended Order; Petitioner made no additional filings." On June 26, 2017 Petitoner filed and served Petitioner Darrin McCray's Proposed Recommended Order. A true and correct copy of said Proposed Order, with its Certificate of Service showing its electronic service and filing June 26, 2017 is accompanying this transmission.

WHEREFORE, for the foregoing reasons excepting to the Recommended Order in this cause, and pursuant to Fla. Stat. 120.57(1)(l), Petitioner requests the Board: reject and/or modify the Recommended Order's Statement of the Issue and Preliminary Statement so as to accurately conform to the records herein; reject the Recommended Order's Conclusions of Law at paragraphs 19 and 20 and, therefore, paragraph 18 in consequence of said rejections as unreasonable; substitute its more reasonable conclusions of law; and grant Petitioner's Motion to Abate pending the disposition of his Rule 3.850 Motion, together with such other relief as the Board deems supported by competent substantial evidence on the record and consistent with proceedings complying with the essential requirements of law.

RESPECTFULLY SUBMITTED this 29th day of July, 2017.

Gary E. Lippman, Esquire
Fla. Bar No. 79121
Counsel for Petitioner
4231 Quill Circle
Lake Worth, FL 33467
Tel. 561-722-0264
garyelippman@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing PETITONER

McCRAY'S EXCEPTIONS TO RECOMMENDED ORDER has been furnished this 29th

day of July, 2017 to:

**Filed by electronic delivery with:**
Agency Clerk
Office of the General Counsel
Florida State Board of Administration
1801 Hermitage Boulevard, Suite 100
Tallahassee, FL 32308
Tina.joanos@sbafl.com
Mini.watson@sbafla.com

**Copies Furnished by electronic mail only to:**
Brian A. Newman, Esq.
brian@penningtonlaw.com
Brandice D. Dickson, Esq.
brandi@penningtonlaw.com
Counsels for Respondent
Pennington, P.A.
215 S. Monroe Street, Suite 200
P.O. Box 10095
Tallahassee, FL 32301
slindsey@penningtonlaw.com

Gary R. Lippman

3

**STATE OF FLORIDA**
**STATE BOARD OF ADMINISTRATION**

DARRIN MCCRAY,

      Petitioner,

vs.

STATE BOARD OF ADMINISTRATION,

      Respondent.

_____/

CASE NO.:  2008-1266
Presiding Officer:  Anne Longman, Esq.

## PETITIONER DARRIN McCRAY'S PROPOSED RECOMMENDED ORDER

Petitioner DARRIN MCCRAY, by and through undersigned counsel and pursuant to the Presiding Officer's May 24, Order for Hearing on Written Record files his Proposed Recommended Order as follows:

### APPEARANCES

For Petitioner:      Gary E. Lippman, Esquire
4231 Quill Circle
Lake Worth, Florida  33467

For Respondent:      Brandice D. Dickson, Esquire
and
Brian A. Newman, Esquire
Pennington P.A.
215 S. Monroe Street, Suite 200
Tallahassee, Florida  32302

### STATEMENT OF THE ISSUES

There are two (2) issues presented in this proceeding:  Whether the within forfeiture proceedings to determine if Petitioner has forfeited his right to a retirement benefit under FRS should be held in abeyance pending disposition of Petitioner McCray's Combined Defendant's Motion for Post-Conviction Relief Rule 3.800 and

1

Amended Rule 3.850 ("Rule 3.850 Motion") currently before the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida; and, if his motion to abate is denied, whether Petitioner has forfeited his right to a retirement benefit under the Florida Retirement System (FRS) pursuant to Section 112.3173, Florida Statutes.

## PRELIMINARY STATEMENT

By letter dated May 29, 2008, Respondent notified Petitioner, a former corrections officer lieutenant with the Palm Beach County Sheriff's Office, that a hold had been placed on his FRS Investment Plan account pursuant to Section 121.091(5)(j), Florida Statutes, and that distributions from his account "will not be permitted until the State Board of Administration (SBA) receives and analyzes the final disposition on all relevant criminal charges." Thereafter, by letter dated November 10, 2014 Respondent notified Petitioner that he had no further rights in the Florida Retirement System because "the Florida Supreme Court declined to hear [his] case."

On December 3, 2014 Petitioner timely filed a FRS Investment Plan Petition for Hearing pursuant to Chapter 120, Florida Statutes, and the Uniform Rules of Procedure, codified as Chapters 28-101 through 28-110, Florida Administrative Code.

On February 27, 2017 Petitioner filed a Motion to Abate requesting these proceedings be held in abeyance, and the SBA continue the hold on his FRS account until the circuit court has decided his Rule 3.850 Motion.

On May 23, 2017, the Parties filed a Joint Motion to Have Case Heard on Written Record, which Motion was granted by Order for Hearing on Written Record dated May 24, 2017. Both parties have filed proposed recommended orders.

2

## UNDISPUTED MATERIAL FACTS

1.     Darrin McCray was employed by the Palm Beach County Sheriff's Office as a Corrections Lieutenant and, therefore, was eligible for and did in fact participate in the Florida Retirement System's Investment Plan.

2.     On November 21, 2008 Mr. McCray was found guilty by a jury in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, of "Organized Scheme To Defraud" (One Count), and "Official Misconduct" (Nine Counts). Respondent's Exhibit 2 (R-2). [1]

3.     By decision dated August 7, 2013 the Fourth District Court of Appeal reversed Mr. McCray's conviction for organized scheme to defraud, determining as it had in a fellow defendant's case, "that no statutory violation occurred because the alleged 'lost . . . opportunity for other deputies to work for overtime pay . . . simply does not fit the definition of property traditionally used in criminal prosecutions . . . .' Likewise, McCray's conduct does not support a conviction for organized scheme to defraud." R-3, *McCray v. State of Florida*, Case No. 4D09-530 (citation omitted); *see Dent v. State*, 125 So.3d 205 (Fla. 4th DCA 2013) ("While Dent's manipulation of the signup system for overtime duty may have violated the **policies** of the department, and may be grounds for discipline or termination, she did not obtain 'property' traditionally used in criminal prosecutions. . . .") (emphasis added).

4.     The Fourth District Court of Appeal decision left undisturbed the official misconduct convictions.

---

[1]  By Petitioner's Notice of Filing Exhibits and Witness List, Petitioner adopted all of Respondent's Exhibits R-1 through R-6, among other things. Accordingly, all of Respondent's Exhibits are considered Joint Exhibits in this proceeding; albeit, for ease of reference they will be referred to as R-1 through R-6.

5.      Petitioner's conduct for which the jury convicted him of official misconduct arose from the same facts it used to convict him and Kathy Dent of the organized scheme to defraud; i.e., "from allegations that McCray and other Sheriff's employees manipulated the overtime assignment computer system and obtained more hospital guard assignments than allowable under the Sheriff's *policy*." *See id.* (emphasis added).

6.      Within the brief page and one-half Fourth District Court of Appeal decision, the words "policy," "policies" and "procedures" appear five (5) times.  *Id.*

7.      After the Fourth District Court of Appeal decision affirming the official misconduct conviction, beginning on September 16, 2014 Mr. McCray filed with the Florida Supreme Court petitions (for prohibition and for mandamus) and motions addressed to his sentencing, among other things.  R-6, Florida Supreme Court Case Docket regarding *Darrin L. McCray vs. State of Florida*, Case Number SC14-1810.

8.      The Florida Supreme Court Case Docket shows an entry thereon reflecting that Mr. McCray's petitions and motions were denied on October 20, 2014.  *Id.*

9.      By letter dated November 10, 2014 Respondent advised Mr. McCray that he had no further rights in the Florida Retirement System because the Fourth District Court of Appeal had affirmed his conviction for official misconduct; which conviction "stands" because "[o]n July 3, 2014, the Florida Supreme Court declined to hear your case." R-4, Notice of Forfeiture of Retirement Benefits. [2]

---

[2] Respondent's Exhibit R-6 reflects docket entries beginning more than two months later, "09/16/2014." Neither party submitted any records in support of or to contest the declarations of fact in the Respondent's November 10, 2014 Notice of Forfeiture of Retirement Benefits. Therefore it is without dispute on this record that the Florida Supreme Court declined to hear Mr. McCray's appeal(s) and, accordingly, made no findings or decisions pertaining to his conviction for official misconduct.

4

10.     By facsimile transmission December 3, 2014 Petitioner timely filed a FRS Investment Plan Petition for Hearing pursuant to Chapter 120, Florida Statutes, and the Uniform Rules of Procedure, codified as Chapters 28-101 through 28-110, Florida Administrative Code.  R-5.

11.     By his Petition for Hearing, Mr. McCray submitted that his case "is going to be appealed through the Florida Supreme Court;" that he believes "the case will be overturned by the appeals process;" he requested the SBA "allow the State Supreme Court to make its findings prior to taking action;" and he requested the SBA" allow the process (appeal) to convene prior to making any decisions." *Id.*

12.     There currently is pending before the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, Petitioner's aforementioned Rule 3.850 Motion for Post-Conviction Relief.  Petitioner's Exhibit 1 (P-1).

13.     "The Florida Supreme Court declined to hear" Petitioner's appeal and, therefore, made no findings. *See* R-4 and R-5.

14.     By Petitioner's Rule 3.850 Motion he avers violations of substantive and due process rights entitling him to be relieved of his convictions, among other things including his purported erroneous conviction of official misconduct at Count II of the Information which had been brought not against him, but against another defendant. *See e.g., id.* at pages 16 – 17.

15.     By Petitioner's Motion to Abate he has identified the Rule 3.850 Motion as the final "appeal" available to him to challenge the official misconduct convictions upon which these forfeiture proceedings are predicated.

5

## CONCLUSIONS OF LAW

16.     The FRS is a public retirement system as defined by Florida law and, as such, Respondent's proposed action to forfeit Petitioner's rights and benefits in his Investment Plan account is subject to administrative review. *See* § 112.3173(5)(a), Fla. Stat.

17.     Respondent has the burden of proving by a preponderance of the evidence that Petitioner should forfeit his FRS retirement benefits. *Holsberry v. Department of Management Services*, 2009 WL 2237798 at *4 (Fla. Div. Admin. Hrgs. July 24, 2009); *Wilson v. Dept. of Admin., Div. of Ret.*, 538 So.2d 139, 141-142 (Fla. 4th DCA 1989); *Department of Transp. v. J.W.C. Co.*, 396 So.2d 778, 788 (Fla. 1st DCA 1981).

18.     Article II, Section 8 of the Florida Constitution provides in pertinent part:

SECTION 8. Ethics in government. — A public office is a public trust. The people shall have the right to secure and sustain that trust against abuse. To assure this right:

\* \* \*

(d)     Any public officer or employee who is convicted of a felony involving a breach of public trust shall be subject to forfeiture of rights and privileges under a public retirement system or pension plan in such a manner as may be provided by law.

19.     Chapter 112, Part III, of the Florida Statutes implements Article II, Section 8(d) of the Florida Constitution in Section 112.3173. Section 112.3173(2)(e), Florida Statutes provides for the forfeiture of retirement benefits, in pertinent part, for conviction of a "specified offense" as defined therein to mean:

\* \* \*

4. Any felony specified in chapter 838, except ss. 838.15 and 838.16:

20.     Section 112.3173(3), FORFEITURE, provides:

Any public officer or employee who is convicted of a specified offense committed prior to retirement, or whose office or employment is terminated by reason of his or her

6

admitted commission, aid, or abetment of a specified offense, shall forfeit all rights and benefits under any public retirement system of which he or she is a member, except for return of his or her accumulated contributions as of the date of the termination.

21.     Because there is no evidence that petitioner was terminated by reason of his "admitted commission, aid, or abetment of a specified offense," the within forfeiture proceedings are based entirely upon Fla. Stat. 112.3173(2)(e)4; the conviction for official misconduct in violation of Fla. Stat. 838.022 remaining undisturbed by the Fourth District Court of Appeal's reversal of his conviction for organized scheme to defraud.

22.     Petitioner's Rule 3.850 Motion pending before the circuit court alleges matters pertaining to the State's misuse of evidence in violation of his *Garrity* rights, in violation of *Brady*, prosecutorial misconduct, and that the conduct for which he was convicted may not have even constituted the "policy" violations subject of testimony at his trial, among other things he avers would relieve him of the conviction upon which these forfeiture proceedings are predicated; which matters properly are pending where the adjudication of guilt was entered and, in any event, are beyond the jurisdiction of the SBA to decide.

23.     Petitioner's Rule 3.850 Motion is the final "appeal" available to challenge the convictions upon which this administrative proceeding for forfeiture is predicated; and, its disposition in the Circuit Court will exhaust the remedies available to Petitioner under Florida Law and the Florida Rules of Criminal Procedure.

24.     I note that the facts in this matter remain unchanged since the Petitioner's December 3, 2014 Petition for Hearing "requesting the SBA to allow the process (appeal) to convene prior to making any decisions" to go forward with forfeiture. *See* R-5. The Respondent has been willing to hold these proceedings in abeyance for 2½

7

years. By declining to "hear" his case the Florida Supreme Court made no "findings;" a court of competent jurisdiction to decide his remaining "appeal" has not as yet, but will, "convene" to address the merits of his "appeal" for the first time since December, 2014 in consequence of his Rule 3.850 Motion.

25.     Respondent can show no prejudice to it by awaiting a disposition of the Rule 3.850 Motion regarding Petitioner's conviction.

### RECOMMENDATION

Having considered the law and the undisputed facts of record, I recommend that Respondent, State Board of Administration issue an order granting Petitioner Darrin McCray's Motion to Abate, and directing him to advise it immediately upon the court's decision in Case No. 2008-CF-007611FXX. Based upon the foregoing recommendation, the second issue presented, of whether the Petitioner has forfeited his right to a retirement benefit, is moot at this time.

RESPECTFULLY SUBMITTED this 26th day of June, 2017.

Gary E. Lippman, Esquire
Fla. Bar No. 79121
Counsel for Petitioner
4231 Quill Circle
Lake Worth, FL 33467
Tel. 561-722-0264
garyelippman@gmail.com

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing PETITIONER

DARRIN McCRAY'S PROPOSED RECOMMENDED ORDER has been furnished this

26th day of June, 2017 by electronic mail to:

Anne Longman, Esq.
Presiding Officer
For the State Board of Administration
Lewis, Longman & Walker, P.A.
315 South Calhoun Street, Suite 830
Tallahassee, FL  32301-1872
alongman@llm-law.com

### Filed by electronic delivery only with:

Agency Clerk
Office of the General Counsel
Florida State Board of Administration
1801 Hermitage Boulevard, Suite 100
Tallahassee, FL  32308
Tina.joanos@sbafl.com
Mini.watson@sbafla.com

### Copies Furnished by electronic mail only to:

Brian A. Newman, Esq.
brian@penningtonlaw.com
Brandice D. Dickson, Esq.
brandi@penningtonlaw.com
Counsels for Respondent
Pennington, P.A.
215 S. Monroe Street, Suite 200
P.O. Box 10095
Tallahassee, FL  32301
slindsey@penningtonlaw.com

Darrin McCray
Petitioner
1474 13th Street
West Palm Beach, FL  33401
Mimi4115@comcast.net

Gary R. Lippman

9